# Exhibit A

DocuSign Envelope ID: FE9DB3C4-BC2D-48F8-AE9E-E30E8926CDBB



TEXAS ASSOCIATION OF REALTORS®

# RESIDENTIAL LEASING AND PROPERTY MANAGEMENT AGREEMENT

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2014

## 1. PARTIES:

A. The parties to this agreement are:

Owner: **APRF SP1-1 LLC**

Address: _____
City, State, Zip: _____
Hm. Phone: _____ Wk. Ph: _____ Mobile: _____
Fax: _____ E-Mail: _____
Additional Phones or Contact Information: _____

Broker: **Blavesco, LTD**
Address: **25511 Budde Road Ste #1801**
City, State, Zip: **The Woodlands, TX   77380**
Phone: **(832)850-4849** Fax: **(832)381-3768**
E-Mail: **heather@blavesco.com**

B. If Owner is not an individual, Owner is a: ☐ estate ☐ corporation ☒ limited liability company (LLC) ☐ trust ☐ partnership ☐ limited liability partnership (LLP) ☐ other _____ , which was chartered or created in _____ (State). The individual signing this agreement for the owner represents to Broker that he or she has the authority to bind Owner to this agreement, to act for Owner, and is acting under his capacity as _____ (title) for the Owner.

C. Owner appoints Broker as Owner's sole and exclusive leasing and managing agent of the real property described in Paragraph 2 and in any addendum to this agreement.

## 2. PROPERTY: "Property" means:

Address (include unit nos.) **6001 Reims Road, Houston, TX   77036**
**#903#304#307#302#1102#209#301#1101#204#508**
legally described as: **Silverfield Condo PH1 & PH2**

in **Harris** County, Texas, together with the following non-real-property
items: **Washer, Dryer, Dishwasher**
.

"Property" also includes any other Property described in any attached Multiple Property Addendum.

## 3. TERM:

A. Primary Term: The primary term of this agreement begins and ends as follows:

Commencement Date: **June 30, 2014** Expiration Date: **June 30, 2016**

B. Automatic Extension: Unless either party provides written notice of termination to the other party at least 30 days before the Expiration Date, this agreement will automatically extend on a monthly basis until either party terminates by providing at least 30 days written notice to the other party.

(TAR-2201) 1-1-14   Initialed for Identification by: Broker/Associate ___ _SL_ and Owner _____ , _____   Page 1 of 12

D21

DocuSign Envelope ID: FE9DB3C4-BC2D-48F8-AE9E-E30E8926CDBB

**6001 Reims Road**
Leasing & Management Agreement concerning: **Houston, TX 77036** ____
**#903#304#307#302#1102#209#301#1101#204#508**

C. Effective Services: If Broker determines that Broker cannot continue to effectively provide leasing and management services to Owner for any reason at any time during this agreement Broker may terminate this agreement by providing at least 30 days written notice to Owner.

D. Fees Upon Termination: At the time this agreement ends, Owner must pay Broker amounts specified in Paragraph 12.

## 4. AUTHORITY OF BROKER:

A. Leasing and Management Authority: Owner grants to Broker the following authority which Broker may exercise when and to the extent Broker determines to be in Owner's interest:
   (1) advertise the Property for lease at Owner's expense by means and methods that Broker determines are reasonably competitive, including but not limited to creating and placing advertisements with interior and exterior photographic and audio-visual images of the Property and related information in any media and the Internet;
   (2) place "For Lease" signs or other signs on the Property in accordance with applicable laws, regulations, ordinances, restrictions, and owners' association rules;
   (3) remove all other signs offering the Property for sale or lease;
   (4) submit the Property as a listing with one or more Multiple Listing Services (MLS) at any time the Property is marketed for lease and to change or terminate such listings;
   (5) authorize other brokers, their associates, inspectors, appraisers, and contractors to access the Property at reasonable times for purposes contemplated by this agreement and to lend keys and disclose security codes to such persons to enter the Property;
   (6) duplicate keys and access devices, at Owner's expense, to facilitate convenient and efficient showings of the Property and to lease the Property;
   (7) place a keybox on the Property;
   (8) employ scheduling companies to schedule showings by other brokers at any time the Property is marketed for lease;
   (9) verify information and references in rental applications from prospective tenants;
   (10) negotiate and execute leases on Owner's behalf for the Property at market rates and on competitively reasonable terms for initial terms of not less than ___**12**___ months and not more than ___**36**___ months and in accordance with any instructions in Paragraph 20;
   (11) negotiate and execute any amendments, extensions, or renewals to any leases for the Property on Owner's behalf;
   (12) terminate leases for the Property, negotiate lease terminations, and serve notices of termination;
   (13) collect and deposit for Owner rents, security deposits, and other funds related to the Property in a trust account and pay from that account: (a) any compensation and reimbursements due Broker under this agreement; and (b) other persons as this agreement may authorize.
   (14) account for security deposits that Broker holds in trust to any tenants in the Property in accordance with applicable law, this agreement, and any lease of the Property and make deductions from the deposits in accordance with the lease and applicable law;
   (15) collect administrative charges including but not limited to, application fees, returned check fees, and late charges from tenants in the Property or from prospective tenants;
   (16) institute and prosecute, at Owner's expense, actions to: (a) evict tenants in the Property; (b) recover possession of the Property; or (c) recover lost rent and other damages;
   (17) settle, compromise, or withdraw any action described in Paragraph 4A(16);
   (18) negotiate and make reasonable concessions to tenants or former tenants in the Property;
   (19) report payment histories of tenants in the Property to consumer reporting agencies;
   (20) obtain information from any holder of a note secured by a lien on the Property and any insurance company insuring all or part of the Property;

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com APRF SPI-1 LLC

DocuSign Envelope ID: FE9DB3C4-BC2D-48F8-AE9E-E30E8926CDBB

**6001 Reims Road**

Leasing & Management Agreement concerning: **Houston,   TX   77036**

**#903#304#307#302#1102#209#301#1101#204#508**

(21) hire contractors to repair, maintain, redecorate, or alter the Property provided that Broker does not expend more than $ **1,500.00** _____ for any single repair, maintenance item, redecoration, or alteration without Owner's consent;

(22) hire contractors to make emergency repairs to the Property without regard to the expense limitation in Paragraph 4A(21) that Broker determines are necessary to protect the Property or the health or safety of an ordinary tenant;

(23) contract, at Owner's expense, in either Broker's or Owner's name, for utilities and maintenance to the Property during times that the Property is vacant, including but not limited to, electricity, gas, water, alarm monitoring, cleaning, pool and spa maintenance, yard maintenance, and other regularly recurring expenses that Broker determines are reasonable to maintain and care for the Property; and

(24) perform other necessary services related to the leasing and management of the Property.

B. Record Keeping: Broker will:
  (1) maintain accurate records related to the Property and retain such records for not less than 4 years;
  (2) file reports with the Internal Revenue Service related to funds received on behalf of Owner under this agreement (for example, Form 1099); and
  (3) remit, each month, the following items to Owner: (a) funds collected by Broker for Owner under this agreement, less authorized deductions; and (b) a statement of receipts, disbursements, and charges. Owner may instruct Broker in writing to remit the items to another person or address.

C. Security Deposits:
  (1) During this agreement, Broker will maintain security deposits received from tenants in a trust account and will account to the tenants for the security deposits in accordance with the leases for the Property.
  (2) Except as stated in Paragraph 4(I), after this agreement ends, Broker will deliver to Owner or the Owner's designee the security deposit held by Broker under an effective lease of the Property, less deductions authorized by this agreement, and will send written notice to the tenant that states all of the following:
    (a) that this agreement has ended;
    (b) the exact dollar amount of the security deposit;
    (c) the contact information for the Owner or the Owner's designee; and
    (d) that Owner is responsible for accounting for and returning the tenant's security deposit.
  (3) If Broker complies with this Paragraph 4C, Owner will indemnify Broker from any claim or loss from a tenant for the return of a security deposit. This Paragraph 4C survives termination of this agreement.

D. Deductions and Offset: Broker may disburse from any funds Broker holds in a trust account for Owner:
  (1) any compensation due Broker under this agreement;
  (2) any funds Broker is authorized to expend under this agreement; and
  (3) any reimbursement Broker is entitled to receive under this agreement.

E. Insurance and Attorneys:
  (1) Broker may not file a claim for a casualty loss with the carrier insuring the Property. Broker may communicate with the carrier to facilitate the processing of any claim Owner may file or other matters that Owner instructs Broker to communicate to the carrier.
  (2) Broker may not directly or indirectly employ or pay a lawyer to represent Owner. Broker may communicate with Owner's attorney in accordance with Owner's instructions.

F. Information about Trust Accounts, MLS, and Keybox:

(TAR-2201) 1-1-14   Initialed for Identification by: Broker/Associate [ _DL_ ] _____ and Owner _____ , _____          Page 3 of 12

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          APRF SPI-1 LLC

DocuSign Envelope ID: FE9DB3C4-BC2D-48F8-AE9E-E30E8926CDBB

**6001 Reims Road**

Leasing & Management Agreement concerning: **Houston, TX   77036**
**#903#304#307#302#1102#209#301#1101#204#508**

(1) <u>Trust Accounts</u>: A trust account must be separate from Broker's operating account and must be designated as a trust, property management, or escrow account or other similar name. Broker may maintain one trust account for all properties Broker leases and manages for others.

(2) <u>MLS</u>: MLS rules require Broker to accurately and timely submit all information the MLS requires for participation including leased data. Subscribers to the MLS may use the information for market evaluation or appraisal purposes. Subscribers are other brokers and other real estate professionals such as appraisers and may include the appraisal district. Any information filed with the MLS becomes the property of the MLS for all purposes. *Submission of information to MLS ensures that persons who use and benefit from the MLS also contribute information.*

(3) <u>Keybox</u>: A keybox is a locked container placed on the Property that holds a key to the Property. A keybox makes it more convenient for brokers, their associates, inspectors, appraisers, and contractors to show, inspect, or repair the Property. The keybox is opened by a special combination, key, or programmed device, so that authorized persons may enter the Property. Using a keybox will probably increase the number of showings, but involves risks (for example, unauthorized entry, theft, property damage, or personal injury). *Neither the Association of REALTORS® nor MLS requires the use of a keybox.*

G. <u>Performance Standard</u>: Broker will:
(1) use reasonable care when exercising Broker's authority and performing under this agreement; and
(2) exercise discretion when performing under this agreement in a manner that Broker believes to be in Owner's interest, provided that Broker will treat any tenant honestly and fairly.

H. <u>Inability to Contact Owner</u>: If Broker is unable to contact Owner for ___7___ days, Broker is authorized to contact the person below for the sole purpose of attempting to reestablish contact with Owner.

Name: _____**Jeff Fisher**_____   Phone:_____
Address: _____
E-mail: _____**jeff@jefffisher.com**_____

I. <u>Foreclosure</u>: If Broker receives notice of the Owner's delinquency in the payment of: (1) any mortgage or other encumbrance secured by the Property; (2) property taxes; (3) property insurance; or (4) owners' association fees, Broker may give Owner 15 days to cure the delinquency during which period Owner authorizes Broker to freeze any funds held by Broker and no disbursements will be made to Owner related to this agreement or the Property. If after the 15 day period, the delinquency is not cured and the foreclosure process is initiated, Owner authorizes Broker to deduct from any other funds being held by Broker for Owner any remaining Broker Fees or funds due to Broker related to services performed under this agreement. Additionally, Owner authorizes Broker to return any security deposit being held by Broker to a tenant of the Property in addition to any prorated amount of rent being held by Broker and Broker may terminate this agreement. This paragraph does not preclude the Broker from seeking any other remedies under this agreement or at law that may be available to the Broker.

5. **LEGAL COMPLIANCE:** The parties will comply with all obligations, duties, and responsibilities under the Texas Property Code, fair housing laws, and any other statute, administrative rule, ordinance, or restrictive covenant applicable to the use, leasing, management, or care of the Property.

6. **RESERVES:** Upon execution of this agreement, Owner will deposit the following amount with Broker to be held in a trust account as a reserve for Owner: $**250.00**_____ for each unit within the Property or Properties managed by Broker under this agreement. Broker may, at Broker's discretion, use the reserve to pay any expense related to the leasing and management of the Property(ies) (including but not limited to Broker's fees). If the balance of the reserve becomes less than the amount stated, at any time, Broker may: (a) deduct an amount that will bring the balance to the amount stated from any subsequent rent received on behalf of Owner and deposit the amount into the reserve; or (b) notify Owner that Owner must promptly deposit additional funds with Broker to bring the balance to the amount stated.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          APRF SP1-1 LLC

DocuSign Envelope ID: FE9DB3C4-BC2D-48F8-AE9E-E30E8926CDBB

**6001 Reims Road**

Leasing & Management Agreement concerning: <u>**Houston, TX   77036**</u>
<u>**#903#304#307#302#1102#209#301#1101#204#508**</u>

7. **ADVANCES:** Owner will, in advance, provide Broker all funds necessary for the leasing and management of the Property. Broker is not obligated to advance any money to Owner or to any other person.

8. **OWNER'S REPRESENTATIONS:**

   A. <u>General</u>:
      (1) Except as disclosed in Paragraph 20, Owner represents that:
         (a) Owner has fee simple title to and peaceable possession of the Property and all its improvements and fixtures, unless rented, and the legal capacity to lease the Property;
         (b) Owner is not bound by: (i) another agreement with another broker for the sale, exchange, lease, or management of the Property that is or will be in effect during this agreement; or (ii) an agreement or covenant that prohibits owner from leasing the property;
         (c) no person or entity has any right to purchase, lease, or acquire the Property by an option, right of refusal, or other agreement;
         (d) Owner is not delinquent in the payment of any property taxes, owners' association fees, property insurance, mortgage, or any encumbrance on or affecting the Property;
         (e) the Property is not subject to the jurisdiction of any court;
         (f) the optional user fees for the use of common areas (for example, pool or tennis courts) in the Property's subdivision are: <u>**pool**</u>                                                      ; and
         (g) all information related to the Property that Owner provides to Broker is true and correct to the best of Owner's knowledge.

      (2) Broker may disclose to a tenant or to a prospective tenant any information related to the representations made in this Paragraph 8.

   B. <u>Property Condition</u>: Owner and Broker are obligated under law to disclose to a tenant or to a prospective tenant any known condition that materially and adversely affects the health or safety of an ordinary tenant. Owner is obligated under the Property Code to repair any such condition for a tenant. Owner represents that:
      (1) any pool or spa and any required enclosures, fences, gates, and latches comply with all applicable laws and ordinances; and
      (2) Owner is not aware of a condition concerning the Property that materially affects the health or safety of an ordinary tenant, except as stated below, in this agreement, or in any addendum:

   C. <u>Lead-Based Paint</u>: If the Property was built before 1978, Owner will complete and attach to this agreement an addendum regarding lead-based paint and lead-based paint hazards that will be made part of any lease of the Property. If the Property was built before 1978, federal law requires the Owner (before a tenant is obligated under a lease) to: (1) provide the tenant with the federally approved pamphlet on lead poisoning prevention; (2) disclose the presence of any known lead-based paint or hazards in the Property; and (3) deliver all records and reports to the tenant related to such paint or hazards.

9. **OWNER'S COOPERATION:** Owner agrees to:
   A. cooperate with Broker to facilitate the showing, marketing, and lease of the Property;
   B. not rent or lease the Property to anyone without Broker's prior written approval;
   C. not negotiate with any prospective tenant who might contact Owner directly, but refer all prospective tenants to Broker;
   D. not deal with or negotiate with any tenant in the Property concerning any matter related to the management or leasing of the Property but refer all such dealings to Broker;
   E. not enter into a listing agreement or property management agreement with another broker for the rental, leasing, or management of the Property to become effective during this agreement;
   F. provide Broker with copies of any existing leases or rental agreements related to the Property;
   G. provide Broker with keys and access devices to the Property;

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    APRF SPI-1 LLC

DocuSign Envelope ID: FE9DB3C4-BC2D-48F8-AE9E-E30E8926CDBB

**6001 Reims Road**

Leasing & Management Agreement concerning: **Houston, TX  77036**
**#903#304#307#302#1102#209#301#1101#204#508**

- H. provide Broker with copies of all warranties related to the Property or any item in the Property;
- I. tender to Broker any security deposits paid by any existing tenants in the Property;
- J. complete any disclosures or notices required by law or a lease of the Property;
- K. amend applicable notices and disclosures if any material change occurs during this agreement; and
- L. notify Broker if Owner becomes delinquent in the payment of: (1) any mortgage or other encumbrance secured by the Property; (2) property taxes; (3) property insurance; or (4) owners' association fees.

## 10. INSURANCE:

- A. At all times during this agreement, Owner must maintain in effect:
  - (1) a public liability insurance policy that names Broker as a co-insured or additional insured and covers losses related to the Property in an amount of not less than $ **1,000,000.00** on an occurrence basis; and
  - (2) an insurance policy for the Property in an amount equal to the reasonable replacement cost of the Property's improvements and that contains endorsements which contemplate the leasing of the Property with vacancies between lease terms.

- B. Not later than the 15th day after the Commencement Date, Owner must deliver to Broker copies of certificates of insurance evidencing the coverage required under Paragraph 10A. If the coverage changes at any time during this agreement, Owner must deliver to Broker a copy of the insurance certificate evidencing the change not later than 10 days after the change.

- C. If Owner fails to comply with Paragraphs 10A or 10B, Broker may:
  - (1) purchase insurance that will provide Broker the same coverage as the required insurance under Paragraph 10A(1) and Owner must promptly reimburse Broker for such expense; or
  - (2) exercise Broker's remedies under Paragraph 17.

**11. BROKER'S FEES:** All fees to Broker under this agreement are payable in _____ **Montgomery** _____ County, Texas. This Paragraph 11 survives termination or expiration of this agreement with regard to fees earned during this agreement which are not payable until after its termination. Broker may deduct any fees under this Paragraph 11 from any funds Broker holds in trust for Owner. If more than one property or unit is made part of and subject to this agreement, each of the provisions below will apply to each property or unit separately.

- ☒ A. Management Fees: Each month Owner will pay Broker the greater of $ **5%** _____ (minimum management fee) or: (Check one box only.)
  - ☐ (1) _____ % of the gross monthly rents collected that month.
  - ☒ (2) **5% of rent roll** _____ .
  A vacancy in the Property or failure by a tenant to pay rent does not excuse payment of the minimum management fee. Management fees under this Paragraph 11A are earned daily and are payable not later than the last day of each month.

- ☒ B. Leasing Fees for New Tenancies: Each time the Property is leased to a new tenant, Owner will pay Broker a leasing fee equal to: (Check one box only.)
  - ☒ (1) **100.000** % of one full month's rent to be paid under the lease.
  - ☐ (2) _____ % of the gross rents to be paid under the lease.
  - ☐ (3) _____ .
  The leasing fees under this Paragraph 11B are earned and payable at the time the lease is executed.

- ☒ C. Renewal or Extension Fees: Each time a tenant in the Property renews or extends a lease, Owner will pay Broker a renewal or extension fee equal to: (Check one box only.)
  - ☐ (1) _____ % of one full month's rent to be paid under the renewal or extension.
  - ☐ (2) _____ % of the gross rents to be paid under the renewal or extension.
  - ☒ (3) **$175.00** _____ .
  The renewal or extension fees under this Paragraph 11C are earned and payable at the time the renewal or extension is effective. For the purposes of this paragraph, a new lease for the same

(TAR-2201) 1-1-14   Initialed for Identification by: Broker/Associate ⁶ᴸ _____ and Owner _____ , _____          Page 6 of 12

DocuSign Envelope ID: FE9DB3C4-BC2D-48F8-AE9E-E30E8926CDBB

**6001 Reims Road**

Leasing & Management Agreement concerning: **Houston, TX  77036**

**#903#304#307#302#1102#209#301#1101#204#508**

Property with the same tenant then occupying the Property is an extension or renewal. This Paragraph 11C does not apply to month-to-month renewals or month-to-month extensions.

☒ D. <u>Service Fees</u>: Each time Broker arranges for the Property to be repaired, maintained, redecorated, or altered as permitted by this agreement, Owner will pay Broker a service fee equal to: *(Check one box only.)*

    ☒ (1) **10.000** % of the total cost of each repair, maintenance, alteration, or redecoration.
    ☐ (2) _____ .
The service fees under this Paragraph 11D are earned at the time the repair, maintenance, redecoration, or alteration is made and are payable upon Owner's receipt of Broker's invoice.

☒ E. <u>Interest on Trust Accounts</u>: Any trust account Broker maintains under this agreement may be an interest-bearing or income producing account. Broker may retain any interest or income from such account as compensation under this agreement. Broker will remove any interest or income payable under this Paragraph 11E from the trust account not later than the 30th day after the interest or income is paid.

☒ F. <u>Administrative Fees</u>: If Broker collects administrative charges from tenants or prospective tenants, including but not limited to, application fees, returned check fees, or late charges (as authorized under Paragraph 4A), Broker will retain such fees as compensation under this agreement. The administrative fees under this Paragraph 11F are earned and payable at the time Broker collects such fees.

☒ G. <u>Fees Related to Insurance and Legal Matters</u>: If Owner requests or instructs Broker to coordinate or communicate with any insurance carrier regarding any casualty to or on the Property or if Owner requests or instructs Broker to appear in any legal proceeding or deposition related to the Property (including, but not limited to, evictions, tenant disputes, security deposit disputes, and suits for damages), Owner will pay Broker $**45.00**_____ per **hour** for Broker's time expended in such matters and in preparation of such matters. Fees under this Paragraph 11G are earned at the time the services are rendered and payable upon Owner's receipt of Broker's invoice.

☒ H. <u>Fees in the Event of a Sale</u>:

    (1) <u>Fee if a Tenant Purchases Property</u>: If at any time during this agreement or within ____**90**____ days after it ends, Owner sells the Property to a tenant who occupied the Property during the term of this agreement, Owner will pay Broker a fee equal to: *(Check one box only.)*
       ☒ (a) **6.000** % of the sales price.
       ☐ (b) _____ .
    Fees under this Paragraph 11H(1) are earned at the time Owner agrees to sell the Property and are payable at the time the sale closes. Broker will waive any fees due under Paragraph 12 at the time the sale closes.

    (2) <u>Fee if Buyer is Procured through Broker</u>: If during this agreement, Owner agrees to sell the Property to a person other than a tenant who occupied the Property and Broker procures the buyer, directly or through another broker, Owner will pay Broker a fee equal to: *(Check one box only.)*
       ☒ (a) **6.000** % of the sales price.
       ☐ (b) _____ .
    Fees under this Paragraph 11H(2) are earned at the time Owner agrees to sell the Property and are payable at the time the sale closes. Broker will waive any fees due under Paragraph 12 at the time the sale closes.

    (3) <u>Sale Coordination Fees</u>: If at any time during this agreement Owner agrees to sell the Property and Broker is not paid a fee under Paragraph 11H(1) or (2), Owner will pay Broker **$1,000 per unit**_____ for Broker's time and services to coordinate showings, inspections, appraisals, repairs, and other related matters. Fees under this Paragraph 11H(3) are earned at the time such services are rendered and payable upon Owner's receipt of Broker's invoice.

    (4) <u>Definition</u>: "Sell" means to agree to sell, convey, transfer or exchange any interest in the Property whether by oral or written agreement or option.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    APRF SP1-1 LLC

DocuSign Envelope ID: FE9DB3C4-BC2D-48F8-AE9E-E30E8926CDBB

**6001 Reims Road**
Leasing & Management Agreement concerning: **Houston, TX  77036**
**#903#304#307#302#1102#209#301#1101#204#508**

    (5) <u>Separate Listing Agreement Controls</u>: If Owner sells the Property and pays Broker the fee under a separate written listing agreement between Owner and Broker: (a) this Paragraph 11H will not apply; and (b) Broker will waive any fees due under Paragraph 12 at the time the sale closes.

☐  I.  Other: _____
_____
_____ .

12. **FEES UPON TERMINATION:** At the time this agreement ends, Owner must pay Broker:
    A. all amounts due Broker under this agreement; and
    B. if the Property is leased to a tenant on the date this agreement ends and Owner terminates this agreement, an amount equal to the lesser of:
      (a) the management fees that would accrue over the remainder of the term of the lease; or
      (b) $_____ .
    If more than one property or unit is made part of and subject to this agreement, this paragraph applies only to those properties or units then leased and applies to each property or unit separately.

13. **EXPENSE REIMBURSEMENT:** Upon Owner's receipt of Broker's invoice, Owner will reimburse Broker the following expenses that are related to the leasing or management of the Property: (a) copy charges; (b) charges for long distance telephone calls or facsimile transmissions; (c) regular, express, or certified mail charges; (d) notary fees; (e) photos and videos; (f) reasonable travel expenses, including but not limited to mileage reimbursement (at the standard mileage rate published by the IRS), parking expenses, and tolls; and (g) any other expenditures Broker is authorized to make under this agreement for Owner or that Owner otherwise authorizes Broker to make for Owner.

14. **FUNDS RECEIVED AFTER TERMINATION:** Except as provided in Paragraph 4(I), if Broker receives any funds on behalf of Owner after this agreement ends (for example, rent, damages, past due amounts, and others), Broker will deposit those funds in Broker's trust account and will: (a) pay ___**15.000**___ % of the funds received to Broker as compensation for services (for example, research, accounting, communicating, and processing) rendered at that time; and (b) pay the balance of the funds to Owner. This provision survives termination of this agreement.

15. **COOPERATION WITH OTHER BROKERS:** When the Property is marketed for lease, Broker will allow other brokers to show the Property to prospective tenants. If the other broker procures a tenant who leases the Property, Broker will offer to pay the other broker a fee out of the compensation Broker receives under Paragraph 11. As of the date this agreement is signed, Broker's policy is to offer other brokers the following amounts. Broker may change the amounts disclosed below without notice, provided that Broker will offer competitively reasonable amounts to other brokers.

    A. <u>MLS Participants</u>: If the other broker is a participant in the MLS in which the listing is filed, Broker will offer to pay the other broker:

      (1) if the other broker represents the tenant *(complete only one)*: __**50.000**__ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____; and

      (2) if the other broker is a subagent *(complete only one)*: __**25.000**__ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____ .

    B. <u>Non-MLS Brokers</u>: If the other broker is not a participant in the MLS in which the listing is filed, Broker will offer to pay the other broker:

      (1) if the other broker represents the tenant *(complete only one)*: __**50.000**__ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____; and

      (2) if the other broker is a subagent *(complete only one)*: __**25.000**__ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____ .

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    APRF SPI-1 LLC

DocuSign Envelope ID: FE9DB3C4-BC2D-48F8-AE9E-E30E8926CDBB

**6001 Reims Road**

Leasing & Management Agreement concerning: **Houston, TX  77036**

**#903#304#307#302#1102#209#301#1101#204#508**

### 16. LIABILITY AND INDEMNIFICATION:

A. Broker is not responsible or liable in any manner for personal injury to any person or for loss or damage to any person's real or personal property resulting from any act or omission not caused by Broker's negligence, including but not limited to injuries or damages caused by:
   (1) other brokers, their associates, inspectors, appraisers, and contractors who are authorized to access the Property;
   (2) acts of third parties (for example, vandalism, theft, or other criminal acts);
   (3) freezing or leaking water pipes;
   (4) failure to properly water the foundation of the Property;
   (5) a dangerous condition or environmental condition on the Property; or
   (6) the Property's non-compliance with any law or ordinance.

B. Broker is not responsible or liable in any manner for:
   (1) any late fees or other charges Owner incurs to any creditor caused by late or insufficient payments by any tenant in the Property; or
   (2) damages to Owner caused by a tenant's breach of a lease.

C. Owner agrees to protect, defend, indemnify, and hold Broker harmless from any damage, costs, attorney's fees, and expenses that:
   (1) are caused by Owner, negligently or otherwise;
   (2) arise from Owner's failure to disclose any material or relevant information about the Property;
   (3) are caused by Owner giving incorrect information to any person; or
   (4) are related to the management of the Property and are not caused by Broker, negligently or otherwise.

D. Owner is responsible and liable for all contracts and obligations related to the Property (for example, maintenance, service, repair and utility agreements) entered into before or during this agreement by Owner or by Broker under Broker's authority under this agreement. Owner agrees to hold Broker harmless from all claims related to any such contracts.

### 17. DEFAULT:
A party is in default if the party fails to cure a breach within 10 days after receipt of written demand from the other party. If either party is in default, the non-defaulting party may: (a) terminate this agreement by providing at least 10 days written notice; (b) recover all amounts due to the non-defaulting party under this agreement; (c) recover reasonable collection costs and attorney's fees; and (d) exercise any other remedy available at law. Broker is also entitled to recover any compensation Broker would have been entitled to receive if Owner did not breach this agreement.

### 18. MEDIATION:
The parties agree to negotiate in good faith in an effort to resolve any dispute related to this agreement that may arise between the parties. If the dispute cannot be resolved by negotiation, the dispute will be submitted to mediation. The parties to the dispute will choose a mutually acceptable mediator and will share the cost of mediation equally.

### 19. ATTORNEY'S FEES:
If Owner or Broker is a prevailing party in any legal proceeding brought as a result of a dispute under this agreement or any transaction related to or contemplated by this agreement, such party will be entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

### 20. SPECIAL PROVISIONS:

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    APRF SPI-1 LLC

DocuSign Envelope ID: FE9DB3C4-BC2D-48F8-AE9E-E30E8926CDBB

**6001 Reims Road**

Leasing & Management Agreement concerning: <u>Houston, TX  77036</u>
<u>#903#304#307#302#1102#209#301#1101#204#508</u>

21. **ADDENDA:** Incorporated into this agreement are the following addenda, exhibits, and other information:
☑  A.  Information About Brokerage Services
☐  B.  Addendum Regarding Lead-Based Paint
☐  C.  Multiple Property Addendum
☐  D.  Owner's Notice Concerning Condition of Property under Property Management Agreement
☐  E.  Property Manager's Inventory and Condition Report
☒  F.  Addendum for Authorization to Act for Owner before Owners' Association
☒  G.  Copy of Rules and Regulations of an Owners' Association
☒  H.  Copy of the Owners' Association Bylaws and Deed Restrictions affecting the Property
☐  I.  _____

*Note: Complete and deliver to Broker IRS W-9 Form or similar form. Broker maintains a privacy policy that is available upon request.*

22. **AGREEMENT OF PARTIES:**

A.  <u>Entire Agreement</u>: This document contains the entire agreement of the parties and may not be changed except by written agreement.

B.  <u>Assignments</u>: Neither party may assign this agreement without the written consent of the other party.

C.  <u>Binding Effect</u>: Owner's obligation to pay Broker an earned fee is binding upon Owner and Owner's heirs, administrators, executors, successors, and permitted assignees.

D.  <u>Joint and Several</u>: All Owners executing this agreement are jointly and severally liable for the performance of all its terms. Any act or notice to, refund to, or signature of, any one or more of the Owners regarding any term of this agreement, its extension, its renewal, or its termination is binding on all Owners executing this agreement.

E.  <u>Governing Law</u>: Texas law governs the interpretation, validity, performance, and enforcement of this agreement.

F.  <u>Severability</u>: If a court finds any clause in this agreement invalid or unenforceable, the remainder of this agreement will not be affected and all other provisions of this agreement will remain valid and enforceable.

G.  <u>Context</u>: When the context requires, singular nouns and pronouns include the plural.

H.  <u>Notices</u>: Notices between the parties must be in writing and are effective when sent to the receiving party's address, fax, or e-mail address specified in Paragraph 1.

I.  <u>Copyright</u>: If an active REALTOR® member of the Texas Association of REALTORS® does not negotiate this agreement as a party or for one of the parties, with or without the assistance of an active member of the State Bar of Texas, this agreement is voidable at will by Owner.

23. **INFORMATION:**

A.  **Broker's fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested, or maintained by the Association of REALTORS®, MLS, or any listing service.**

B.  **In accordance with fair housing laws and the National Association of REALTORS® Code of Ethics, Broker's services must be provided and the Property must be shown and made available to all persons without regard to race, color, religion, national origin, sex, disability, familial status, sexual orientation, or gender identity. Local ordinances may provide for additional protected classes (for example, creed, status as a student, marital status, or age).**

C.  **Owner may review the information Broker submits to an MLS or other listing service.**

DocuSign Envelope ID: FE9DB3C4-BC2D-48F8-AE9E-E30E8926CDBB

**6001 Reims Road**
Leasing & Management Agreement concerning: **Houston, TX   77036**
**#903#304#307#302#1102#209#301#1101#204#508**

**D.** Broker advises Owner to remove or secure jewelry, prescription drugs, and other valuables.

**E.** The Property Code requires the Property to be equipped with certain types of locks and security devices, including (with some exceptions): (1) window latches on each window; (2) a keyed doorknob lock or keyed deadbolt lock on each exterior door; (3) a sliding door pin lock on each exterior sliding glass door of the dwelling; (4) a sliding door handle latch or a sliding door security bar on each exterior sliding glass door of the dwelling; and (5) a keyless bolting device and a door viewer on each exterior door of the dwelling. The Property Code also requires smoke alarms in certain locations. The Property Code requires the security devices to be rekeyed and the smoke alarms to be tested each time a new tenant occupies the Property.

**F.** Broker cannot give legal advice. READ THIS AGREEMENT CAREFULLY. If you do not understand the effect of this agreement, consult an attorney BEFORE signing.

| | |
|---|---|
| **Blavesco, LTD** | **APRF SP1-1 LLC** |
| Broker's Printed Name          **0443914** License No. | Owner's Printed Name |
| ☒ Broker's Signature          **06/30/2014** Date | Owner's Signature          **06/30/2014** Date |
| ☐ Broker's Associate's Signature, as an authorized agent of Broker | |
| | |
| Broker's Associate's Printed Name, if applicable | Owner's Printed Name |
| | |
| | Owner's Signature          Date |

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: FE9DB3C4-BC2D-48F8-AE9E-E30E8926CDBB

Leasing & Management Agreement concerning: **6001 Reims Road**
**Houston, TX   77036**
**#903#304#307#302#1102#209#301#1101#204#508**

## Index to Residential Leasing and Property Management Agreement

| No. | Paragraph Description | Pg. | No. | Paragraph Description | Pg. |
|---|---|---|---|---|---|
| 1. | Parties | 1 | 13. | Expense Reimbursement | 8 |
| 2. | Property | 1 | 14. | Funds Received after Termination | 8 |
| 3. | Term<br>A. Primary Term<br>B. Automatic Extension<br>C. Effective Services<br>D. Fees Upon Termination | 1<br><br><br>2 | 15. | Cooperation with Other Brokers | 8 |
|  |  |  | 16. | Liability and Indemnification | 9 |
|  |  |  | 17. | Default | 9 |
| 4. | Authority of Broker<br>A. Leasing and Management Authority<br>B. Record Keeping<br>C. Security Deposits<br>D. Deductions and Offset<br>E. Insurance and Attorneys<br>F. Information about Trust Accounts, MLS, and Keybox<br>G. Performance Standard<br>H. Inability to Contact Owner<br>I. Foreclosure | 2<br><br>3<br><br><br><br><br>4 | 18. | Mediation | 9 |
|  |  |  | 19. | Attorney's Fees | 9 |
|  |  |  | 20. | Special Provisions | 10 |
|  |  |  | 21. | Addenda | 10 |
|  |  |  | 22. | Agreement of the Parties<br>A. Entire Agreement<br>B. Assignments<br>C. Binding Effect<br>D. Joint and Several<br>E. Governing Law<br>F. Severability<br>G. Context<br>H. Notices<br>I. Copyright | 10<br><br><br><br><br><br><br><br><br>11 |
| 5. | Legal Compliance | 4 |  |  |  |
| 6. | Reserves | 4 | 23. | Information | 11 |
| 7. | Advances | 4 |  |  |  |
| 8. | Owner's Representations<br>A. General<br>B. Property Condition<br>C. Lead-Based Paint | 5 |  |  |  |
| 9. | Owner's Cooperation | 5 |  |  |  |
| 10. | Insurance | 6 |  |  |  |
| 11. | Broker's Fees<br>A. Management Fees<br>B. Leasing Fees for New Tenancies<br>C. Renewal or Extension Fees<br>D. Service Fees<br>E. Interest on Trust Accounts<br>F. Administrative Fees<br>G. Fees Related to Insurance and Legal Matters<br>H. Fees in the Event of a Sale<br>I. Other | 6<br><br><br>6<br>7<br><br><br><br><br>8 |  |  |  |
| 12. | Fees Upon Termination | 8 |  |  |  |

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          APRF SP1-1 LLC



TEXAS ASSOCIATION OF REALTORS®
**RESIDENTIAL LEASING AND PROPERTY MANAGEMENT AGREEMENT**
USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS IS NOT AUTHORIZED
©Texas Association of REALTORS®, Inc. 2014

1. **PARTIES:**

    A. The parties to this agreement are:

    Owner: **Arica Lane, LLC.**

    Address: **PO Box 9993**
    City, State, Zip: **The Woodlands, TX 77387**
    Hm. Phone: _____ Wk. Ph: **(816)646-9819** Mobile: _____
    Fax: **(832)381-3768** E-Mail: **jeff@jefffisher.com**
    Additional Phones or Contact Information: **jeff@jefffisher.com**

    Broker: **Blavesco, LTD** Heather Carlile
    Address: **25511 Budde Road Ste 1501**
    City, State, Zip: **The Woodlands, TX 77380**
    Phone: **(936)672-7671** Fax: **(832)850-4849**
    E-Mail: **heather@blavesco.com**

    B. If Owner is not an individual, Owner is a: ☐ estate ☐ corporation ☒ limited liability company (LLC)
    ☐ trust ☐ partnership ☐ limited liability partnership (LLP) ☐ other _____, which was
    chartered or created in **TEXAS** (State). The individual signing this agreement for the
    owner represents to Broker that he or she has the authority to bind Owner to this agreement, to act for
    Owner, and is acting under his capacity as **Director** (title) for the Owner.

    C. Owner appoints Broker as Owner's sole and exclusive leasing and managing agent of the real
    property described in Paragraph 2 and in any addendum to this agreement.

2. **PROPERTY:** "Property" means:

    Address (include unit nos.) **24106 Alivia Court, Spring, TX 77373**

    legally described as: **Lot 16 Block 2 Tiffany Meadows**

    in **Harris** County, Texas, together with the following non-real-property
    items: **Refridgerator, Dishwasher**

    "Property" also includes any other Property described in any attached Multiple Property Addendum.

3. **TERM:**

    A. Primary Term: The primary term of this agreement begins and ends as follows:

    Commencement Date: **June 30, 2013** Expiration Date: **June 30, 2016**

    B. Automatic Extension: Unless either party provides written notice of termination to the other party at
    least 30 days before the Expiration Date, this agreement will automatically extend on a monthly basis
    until either party terminates by providing at least 30 days written notice to the other party.

(TAR-2201) 1-1-14 Initialed for Identification by Broker/Associate _____ and Owner _____ Page 1 of 12

24106 Alivia Court
Leasing & Management Agreement concerning: **Spring, TX   77373**

C. Effective Services: If Broker determines that Broker cannot continue to effectively provide leasing and management services to Owner for any reason at any time during this agreement Broker may terminate this agreement by providing at least 30 days written notice to Owner.

D. Fees Upon Termination: At the time this agreement ends, Owner must pay Broker amounts specified in Paragraph 12.

## 4.  AUTHORITY OF BROKER:

A. Leasing and Management Authority: Owner grants to Broker the following authority which Broker may exercise when and to the extent Broker determines to be in Owner's interest:

   (1) advertise the Property for lease at Owner's expense by means and methods that Broker determines are reasonably competitive, including but not limited to creating and placing advertisements with interior and exterior photographic and audio-visual images of the Property and related information in any media and the Internet;

   (2) place "For Lease" signs or other signs on the Property in accordance with applicable laws, regulations, ordinances, restrictions, and owners' association rules;

   (3) remove all other signs offering the Property for sale or lease;

   (4) submit the Property as a listing with one or more Multiple Listing Services (MLS) at any time the Property is marketed for lease and to change or terminate such listings;

   (5) authorize other brokers, their associates, inspectors, appraisers, and contractors to access the Property at reasonable times for purposes contemplated by this agreement and to lend keys and disclose security codes to such persons to enter the Property;

   (6) duplicate keys and access devices, at Owner's expense, to facilitate convenient and efficient showings of the Property and to lease the Property;

   (7) place a keybox on the Property;

   (8) employ scheduling companies to schedule showings by other brokers at any time the Property is marketed for lease;

   (9) verify information and references in rental applications from prospective tenants;

   (10) negotiate and execute leases on Owner's behalf for the Property at market rates and on competitively reasonable terms for initial terms of not less than ____12____ months and not more than ____36____ months and in accordance with any instructions in Paragraph 20;

   (11) negotiate and execute any amendments, extensions, or renewals to any leases for the Property on Owner's behalf;

   (12) terminate leases for the Property, negotiate lease terminations, and serve notices of termination;

   (13) collect and deposit for Owner rents, security deposits, and other funds related to the Property in a trust account and pay from that account: (a) any compensation and reimbursements due Broker under this agreement; and (b) other persons as this agreement may authorize.

   (14) account for security deposits that Broker holds in trust to any tenants in the Property in accordance with applicable law, this agreement, and any lease of the Property and make deductions from the deposits in accordance with the lease and applicable law;

   (15) collect administrative charges including but not limited to, application fees, returned check fees, and late charges from tenants in the Property or from prospective tenants;

   (16) institute and prosecute, at Owner's expense, actions to: (a) evict tenants in the Property; (b) recover possession of the Property; or (c) recover lost rent and other damages;

   (17) settle, compromise, or withdraw any action described in Paragraph 4A(16);

   (18) negotiate and make reasonable concessions to tenants or former tenants in the Property;

   (19) report payment histories of tenants in the Property to consumer reporting agencies;

   (20) obtain information from any holder of a note secured by a lien on the Property and any insurance company insuring all or part of the Property;

24106 Alivia Court
Leasing & Management Agreement concerning: **Spring, TX  77373**

---

    (21) hire contractors to repair, maintain, redecorate, or alter the Property provided that Broker does not expend more than $ 150.00 _____ for any single repair, maintenance item, redecoration, or alteration without Owner's consent;

    (22) hire contractors to make emergency repairs to the Property without regard to the expense limitation in Paragraph 4A(21) that Broker determines are necessary to protect the Property or the health or safety of an ordinary tenant;

    (23) contract, at Owner's expense, in either Broker's or Owner's name, for utilities and maintenance to the Property during times that the Property is vacant, including but not limited to, electricity, gas, water, alarm monitoring, cleaning, pool and spa maintenance, yard maintenance, and other regularly recurring expenses that Broker determines are reasonable to maintain and care for the Property; and

    (24) perform other necessary services related to the leasing and management of the Property.

**B.** Record Keeping: Broker will:

    (1) maintain accurate records related to the Property and retain such records for not less than 4 years;

    (2) file reports with the Internal Revenue Service related to funds received on behalf of Owner under this agreement (for example, Form 1099); and

    (3) remit, each month, the following items to Owner: (a) funds collected by Broker for Owner under this agreement, less authorized deductions; and (b) a statement of receipts, disbursements, and charges. Owner may instruct Broker in writing to remit the items to another person or address.

**C.** Security Deposits:

    (1) During this agreement, Broker will maintain security deposits received from tenants in a trust account and will account to the tenants for the security deposits in accordance with the leases for the Property.

    (2) Except as stated in Paragraph 4(I), after this agreement ends, Broker will deliver to Owner or the Owner's designee the security deposit held by Broker under an effective lease of the Property, less deductions authorized by this agreement, and will send written notice to the tenant that states all of the following:

        (a) that this agreement has ended;

        (b) the exact dollar amount of the security deposit;

        (c) the contact information for the Owner or the Owner's designee; and

        (d) that Owner is responsible for accounting for and returning the tenant's security deposit.

    (3) If Broker complies with this Paragraph 4C, Owner will indemnify Broker from any claim or loss from a tenant for the return of a security deposit. This Paragraph 4C survives termination of this agreement.

**D.** Deductions and Offset: Broker may disburse from any funds Broker holds in a trust account for Owner:

    (1) any compensation due Broker under this agreement;

    (2) any funds Broker is authorized to expend under this agreement; and

    (3) any reimbursement Broker is entitled to receive under this agreement.

**E.** Insurance and Attorneys:

    (1) Broker may not file a claim for a casualty loss with the carrier insuring the Property. Broker may communicate with the carrier to facilitate the processing of any claim Owner may file or other matters that Owner instructs Broker to communicate to the carrier.

    (2) Broker may not directly or indirectly employ or pay a lawyer to represent Owner. Broker may communicate with Owner's attorney in accordance with Owner's instructions.

**F.** Information about Trust Accounts, MLS, and Keybox:

---

(TAR-2201) 1-1-14  Initialed for Identification by: Broker/Associate _____ and Owner _____  Page 3 of 12

24106 Alivia Court
Leasing & Management Agreement concerning: **Spring, TX  77373**

(1) <u>Trust Accounts</u>: A trust account must be separate from Broker's operating account and must be designated as a trust, property management, or escrow account or other similar name. Broker may maintain one trust account for all properties Broker leases and manages for others.

(2) <u>MLS</u>: MLS rules require Broker to accurately and timely submit all information the MLS requires for participation including leased data. Subscribers to the MLS may use the information for market evaluation or appraisal purposes. Subscribers are other brokers and other real estate professionals such as appraisers and may include the appraisal district. Any information filed with the MLS becomes the property of the MLS for all purposes. *Submission of information to MLS ensures that persons who use and benefit from the MLS also contribute information.*

(3) <u>Keybox</u>: A keybox is a locked container placed on the Property that holds a key to the Property. A keybox makes it more convenient for brokers, their associates, inspectors, appraisers, and contractors to show, inspect, or repair the Property. The keybox is opened by a special combination, key, or programmed device, so that authorized persons may enter the Property. Using a keybox will probably increase the number of showings, but involves risks (for example, unauthorized entry, theft, property damage, or personal injury). *Neither the Association of REALTORS® nor MLS requires the use of a keybox.*

G. <u>Performance Standard</u>: Broker will:
(1) use reasonable care when exercising Broker's authority and performing under this agreement; and
(2) exercise discretion when performing under this agreement in a manner that Broker believes to be in Owner's interest, provided that Broker will treat any tenant honestly and fairly.

H. <u>Inability to Contact Owner</u>: If Broker is unable to contact Owner for __14__ days, Broker is authorized to contact the person below for the sole purpose of attempting to reestablish contact with Owner.

Name: _____James Raymond Fisher_____ Phone:____(936)239-1976____
Address: _____#1 Coralvine Court The Woodlands, TX 77380____
E-mail:_____jay.fisher@blavesco.com____

I. <u>Foreclosure</u>: If Broker receives notice of the Owner's delinquency in the payment of: (1) any mortgage or other encumbrance secured by the Property; (2) property taxes; (3) property insurance; or (4) owners' association fees, Broker may give Owner 15 days to cure the delinquency during which period Owner authorizes Broker to freeze any funds held by Broker and no disbursements will be made to Owner related to this agreement or the Property. If after the 15 day period, the delinquency is not cured and the foreclosure process is initiated, Owner authorizes Broker to deduct from any other funds being held by Broker for Owner any remaining Broker Fees or funds due to Broker related to services performed under this agreement. Additionally, Owner authorizes Broker to return any security deposit being held by Broker to a tenant of the Property in addition to any prorated amount of rent being held by Broker and Broker may terminate this agreement. This paragraph does not preclude the Broker from seeking any other remedies under this agreement or at law that may be available to the Broker.

5. **LEGAL COMPLIANCE:** The parties will comply with all obligations, duties, and responsibilities under the Texas Property Code, fair housing laws, and any other statute, administrative rule, ordinance, or restrictive covenant applicable to the use, leasing, management, or care of the Property.

6. **RESERVES:** Upon execution of this agreement, Owner will deposit the following amount with Broker to be held in a trust account as a reserve for Owner: $ 250.00 _____ for each unit within the Property or Properties managed by Broker under this agreement. Broker may, at Broker's discretion, use the reserve to pay any expense related to the leasing and management of the Property(ies) (including but not limited to Broker's fees). If the balance of the reserve becomes less than the amount stated, at any time, Broker may: (a) deduct an amount that will bring the balance to the amount stated from any subsequent rent received on behalf of Owner and deposit the amount into the reserve; or (b) notify Owner that Owner must promptly deposit additional funds with Broker to bring the balance to the amount stated.

24106 Alivia Court
Leasing & Management Agreement concerning: **Spring, TX  77373**

**7.  ADVANCES:** Owner will, in advance, provide Broker all funds necessary for the leasing and management of the Property. Broker is not obligated to advance any money to Owner or to any other person.

**8.  OWNER'S REPRESENTATIONS:**

A.  General:
(1)  Except as disclosed in Paragraph 20, Owner represents that:
(a)  Owner has fee simple title to and peaceable possession of the Property and all its improvements and fixtures, unless rented, and the legal capacity to lease the Property;
(b)  Owner is not bound by: (i) another agreement with another broker for the sale, exchange, lease, or management of the Property that is or will be in effect during this agreement; or (ii) an agreement or covenant that prohibits owner from leasing the property;
(c)  no person or entity has any right to purchase, lease, or acquire the Property by an option, right of refusal, or other agreement;
(d)  Owner is not delinquent in the payment of any property taxes, owners' association fees, property insurance, mortgage, or any encumbrance on or affecting the Property;
(e)  the Property is not subject to the jurisdiction of any court;
(f)  the optional user fees for the use of common areas (for example, pool or tennis courts) in the Property's subdivision are: **n/a**_____ ; and
(g)  all information related to the Property that Owner provides to Broker is true and correct to the best of Owner's knowledge.

(2)  Broker may disclose to a tenant or to a prospective tenant any information related to the representations made in this Paragraph 8.

B.  Property Condition: Owner and Broker are obligated under law to disclose to a tenant or to a prospective tenant any known condition that materially and adversely affects the health or safety of an ordinary tenant. Owner is obligated under the Property Code to repair any such condition for a tenant. Owner represents that:
(1)  any pool or spa and any required enclosures, fences, gates, and latches comply with all applicable laws and ordinances; and
(2)  Owner is not aware of a condition concerning the Property that materially affects the health or safety of an ordinary tenant, except as stated below, in this agreement, or in any addendum.
**none**
_____
_____

C.  Lead-Based Paint: If the Property was built before 1978, Owner will complete and attach to this agreement an addendum regarding lead-based paint and lead-based paint hazards that will be made part of any lease of the Property. If the Property was built before 1978, federal law requires the Owner (before a tenant is obligated under a lease) to: (1) provide the tenant with the federally approved pamphlet on lead poisoning prevention; (2) disclose the presence of any known lead-based paint or hazards in the Property; and (3) deliver all records and reports to the tenant related to such paint or hazards.

**9.  OWNER'S COOPERATION:** Owner agrees to:
A.  cooperate with Broker to facilitate the showing, marketing, and lease of the Property;
B.  not rent or lease the Property to anyone without Broker's prior written approval;
C.  not negotiate with any prospective tenant who might contact Owner directly, but refer all prospective tenants to Broker;
D.  not deal with or negotiate with any tenant in the Property concerning any matter related to the management or leasing of the Property but refer all such dealings to Broker;
E.  not enter into a listing agreement or property management agreement with another broker for the rental, leasing, or management of the Property to become effective during this agreement;
F.  provide Broker with copies of any existing leases or rental agreements related to the Property;
G.  provide Broker with keys and access devices to the Property;

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

24106 Alivia Court
Leasing & Management Agreement concerning: **Spring, TX   77373**

H.  provide Broker with copies of all warranties related to the Property or any item in the Property.
I.   tender to Broker any security deposits paid by any existing tenants in the Property;
J.  complete any disclosures or notices required by law or a lease of the Property;
K.  amend applicable notices and disclosures if any material change occurs during this agreement; and
L.  notify Broker if Owner becomes delinquent in the payment of: (1) any mortgage or other encumbrance secured by the Property; (2) property taxes; (3) property insurance; or (4) owners' association fees.

## 10. INSURANCE:

A.  At all times during this agreement, Owner must maintain in effect:
   (1)  a public liability insurance policy that names Broker as a co-insured or additional insured and covers losses related to the Property in an amount of not less than $ __500,000.00__ on an occurrence basis; and
   (2)  an insurance policy for the Property in an amount equal to the reasonable replacement cost of the Property's improvements and that contains endorsements which contemplate the leasing of the Property with vacancies between lease terms.

B.  Not later than the 15th day after the Commencement Date, Owner must deliver to Broker copies of certificates of insurance evidencing the coverage required under Paragraph 10A. If the coverage changes at any time during this agreement, Owner must deliver to Broker a copy of the insurance certificate evidencing the change not later than 10 days after the change.

C.  If Owner fails to comply with Paragraphs 10A or 10B, Broker may:
   (1)  purchase insurance that will provide Broker the same coverage as the required insurance under Paragraph 10A(1) and Owner must promptly reimburse Broker for such expense; or
   (2)  exercise Broker's remedies under Paragraph 17.

## 11. BROKER'S FEES: All fees to Broker under this agreement are payable in _____Montgomery_____ County, Texas. This Paragraph 11 survives termination or expiration of this agreement with regard to fees earned during this agreement which are not payable until after its termination. Broker may deduct any fees under this Paragraph 11 from any funds Broker holds in trust for Owner. If more than one property or unit is made part of and subject to this agreement, each of the provisions below will apply to each property or unit separately.

A.  Management Fees: Each month Owner will pay Broker the greater of $ _____ (minimum management fee) or: (Check one box only.)
   ☒ (1) __5.000__ % of the gross monthly rents collected that month.
   ☐ (2) _____
   A vacancy in the Property or failure by a tenant to pay rent does not excuse payment of the minimum management fee. Management fees under this Paragraph 11A are earned daily and are payable not later than the last day of each month.

B.  Leasing Fees for New Tenancies: Each time the Property is leased to a new tenant, Owner will pay Broker a leasing fee equal to: (Check one box only.)
   ☐ (1) __100.000__ % of one full month's rent to be paid under the lease.
   ☐ (2) _____ % of the gross rents to be paid under the lease.
   ☒ (3) __50 % paid to Blavesco if no outside agent__
   The leasing fees under this Paragraph 11B are earned and payable at the time the lease is executed.

C.  Renewal or Extension Fees: Each time a tenant in the Property renews or extends a lease, Owner will pay Broker a renewal or extension fee equal to: (Check one box only.)
   ☐ (1) _____ % of one full month's rent to be paid under the renewal or extension.
   ☐ (2) _____ % of the gross rents to be paid under the renewal or extension.
   ☒ (3) __150__
   The renewal or extension fees under this Paragraph 11C are earned and payable at the time the renewal or extension is effective. For the purposes of this paragraph, a new lease for the same

(TAR-2201) 1-1-14   Initialed for Identification by: Broker/Associate _____ and Owner _____   Page 6 of 12

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

**24106 Alivia Court**

Leasing & Management Agreement concerning: **Spring, TX   77373**

Property with the same tenant then occupying the Property is an extension or renewal. This Paragraph 11C does not apply to month-to-month renewals or month-to-month extensions.

☐ D. <u>Service Fees</u>: Each time Broker arranges for the Property to be repaired, maintained, redecorated, or altered as permitted by this agreement, Owner will pay Broker a service fee equal to: *(Check one box only.)*

  ☐ (1) _____ % of the total cost of each repair, maintenance, alteration, or redecoration.
  ☐ (2) _____
  The service fees under this Paragraph 11D are earned at the time the repair, maintenance, redecoration, or alteration is made and are payable upon Owner's receipt of Broker's invoice.

☒ E. <u>Interest on Trust Accounts</u>: Any trust account Broker maintains under this agreement may be an interest-bearing or income producing account. Broker may retain any interest or income from such account as compensation under this agreement. Broker will remove any interest or income payable under this Paragraph 11E from the trust account not later than the 30th day after the interest or income is paid.

☒ F. <u>Administrative Fees</u>: If Broker collects administrative charges from tenants or prospective tenants, including but not limited to, application fees, returned check fees, or late charges (as authorized under Paragraph 4A), Broker will retain such fees as compensation under this agreement. The administrative fees under this Paragraph 11F are earned and payable at the time Broker collects such fees.

☒ G. <u>Fees Related to Insurance and Legal Matters</u>: If Owner requests or instructs Broker to coordinate or communicate with any insurance carrier regarding any casualty to or on the Property or if Owner requests or instructs Broker to appear in any legal proceeding or deposition related to the Property (including, but not limited to, evictions, tenant disputes, security deposit disputes, and suits for damages), Owner will pay Broker $30.00 _____ per __hour__ for Broker's time expended in such matters and in preparation of such matters. Fees under this Paragraph 11G are earned at the time the services are rendered and payable upon Owner's receipt of Broker's invoice.

☒ H. <u>Fees in the Event of a Sale</u>:

  (1) <u>Fee if a Tenant Purchases Property</u>: If at any time during this agreement or within _____ days after it ends, Owner sells the Property to a tenant who occupied the Property during the term of this agreement, Owner will pay Broker a fee equal to: *(Check one box only.)*
    ☐ (a) __3.000__ % of the sales price.
    ☐ (b) _____
    Fees under this Paragraph 11H(1) are earned at the time Owner agrees to sell the Property and are payable at the time the sale closes. Broker will waive any fees due under Paragraph 12 at the time the sale closes.

  (2) <u>Fee if Buyer is Procured through Broker</u>: If during this agreement, Owner agrees to sell the Property to a person other than a tenant who occupied the Property and Broker procures the buyer, directly or through another broker, Owner will pay Broker a fee equal to: *(Check one box only.)*
    ☒ (a) __3.000__ % of the sales price.
    ☐ (b) _____
    Fees under this Paragraph 11H(2) are earned at the time Owner agrees to sell the Property and are payable at the time the sale closes. Broker will waive any fees due under Paragraph 12 at the time the sale closes.

  (3) <u>Sale Coordination Fees</u>: If at any time during this agreement Owner agrees to sell the Property and Broker is not paid a fee under Paragraph 11H(1) or (2), Owner will pay Broker **500** _____ for Broker's time and services to coordinate showings, inspections, appraisals, repairs, and other related matters. Fees under this Paragraph 11H(3) are earned at the time such services are rendered and payable upon Owner's receipt of Broker's invoice.

  (4) <u>Definition</u>: "Sell" means to agree to sell, convey, transfer or exchange any interest in the Property whether by oral or written agreement or option.

24106 Alivia Court

Leasing & Management Agreement concerning: **Spring, TX   77373**

    (5) Separate Listing Agreement Controls: If Owner sells the Property and pays Broker the fee under a separate written listing agreement between Owner and Broker: (a) this Paragraph 11H will not apply; and (b) Broker will waive any fees due under Paragraph 12 at the time the sale closes.

☐   I.   Other: _____

    _____

    _____

12. **FEES UPON TERMINATION:** At the time this agreement ends, Owner must pay Broker:
    A.  all amounts due Broker under this agreement; and
    B.  if the Property is leased to a tenant on the date this agreement ends and Owner terminates this agreement, an amount equal to the lesser of:
        (a) the management fees that would accrue over the remainder of the term of the lease; or
        (b) $none _____.
    If more than one property or unit is made part of and subject to this agreement, this paragraph applies only to those properties or units then leased and applies to each property or unit separately.

13. **EXPENSE REIMBURSEMENT:** Upon Owner's receipt of Broker's invoice, Owner will reimburse Broker the following expenses that are related to the leasing or management of the Property: (a) copy charges; (b) charges for long distance telephone calls or facsimile transmissions; (c) regular, express, or certified mail charges; (d) notary fees; (e) photos and videos; (f) reasonable travel expenses, including but not limited to mileage reimbursement (at the standard mileage rate published by the IRS), parking expenses, and tolls; and (g) any other expenditures Broker is authorized to make under this agreement for Owner or that Owner otherwise authorizes Broker to make for Owner.

14. **FUNDS RECEIVED AFTER TERMINATION:** Except as provided in Paragraph 4(I), if Broker receives any funds on behalf of Owner after this agreement ends (for example, rent, damages, past due amounts, and others), Broker will deposit those funds in Broker's trust account and will: (a) pay ____5.000____ % of the funds received to Broker as compensation for services (for example, research, accounting, communicating, and processing) rendered at that time; and (b) pay the balance of the funds to Owner. This provision survives termination of this agreement.

15. **COOPERATION WITH OTHER BROKERS:** When the Property is marketed for lease, Broker will allow other brokers to show the Property to prospective tenants. If the other broker procures a tenant who leases the Property, Broker will offer to pay the other broker a fee out of the compensation Broker receives under Paragraph 11. As of the date this agreement is signed, Broker's policy is to offer other brokers the following amounts. Broker may change the amounts disclosed below without notice, provided that Broker will offer competitively reasonable amounts to other brokers.

    A.  MLS Participants: If the other broker is a participant in the MLS in which the listing is filed, Broker will offer to pay the other broker:

        (1) if the other broker represents the tenant *(complete only one)*: __50.000__ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____ . and

        (2) if the other broker is a subagent *(complete only one)*: _____ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____ .

    B.  Non-MLS Brokers: If the other broker is not a participant in the MLS in which the listing is filed, Broker will offer to pay the other broker:

        (1) if the other broker represents the tenant *(complete only one)*: __50.000__ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____ . and

        (2) if the other broker is a subagent *(complete only one)*: _____ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____ .

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    Property

24106 Alivia Court
Leasing & Management Agreement concerning: **Spring, TX   77373**

**16. LIABILITY AND INDEMNIFICATION:**

    A. Broker is not responsible or liable in any manner for personal injury to any person or for loss or damage to any person's real or personal property resulting from any act or omission not caused by Broker's negligence, including but not limited to injuries or damages caused by:
      (1) other brokers, their associates, inspectors, appraisers, and contractors who are authorized to access the Property;
      (2) acts of third parties (for example, vandalism, theft, or other criminal acts);
      (3) freezing or leaking water pipes;
      (4) failure to properly water the foundation of the Property;
      (5) a dangerous condition or environmental condition on the Property; or
      (6) the Property's non-compliance with any law or ordinance.

    B. Broker is not responsible or liable in any manner for:
      (1) any late fees or other charges Owner incurs to any creditor caused by late or insufficient payments by any tenant in the Property; or
      (2) damages to Owner caused by a tenant's breach of a lease.

    C. Owner agrees to protect, defend, indemnify, and hold Broker harmless from any damage, costs, attorney's fees, and expenses that:
      (1) are caused by Owner, negligently or otherwise;
      (2) arise from Owner's failure to disclose any material or relevant information about the Property;
      (3) are caused by Owner giving incorrect information to any person; or
      (4) are related to the management of the Property and are not caused by Broker, negligently or otherwise.

    D. Owner is responsible and liable for all contracts and obligations related to the Property (for example, maintenance, service, repair and utility agreements) entered into before or during this agreement by Owner or by Broker under Broker's authority under this agreement. Owner agrees to hold Broker harmless from all claims related to any such contracts.

**17. DEFAULT:** A party is in default if the party fails to cure a breach within 10 days after receipt of written demand from the other party. If either party is in default, the non-defaulting party may: (a) terminate this agreement by providing at least 10 days written notice; (b) recover all amounts due to the non-defaulting party under this agreement; (c) recover reasonable collection costs and attorney's fees; and (d) exercise any other remedy available at law. Broker is also entitled to recover any compensation Broker would have been entitled to receive if Owner did not breach this agreement.

**18. MEDIATION:** The parties agree to negotiate in good faith in an effort to resolve any dispute related to this agreement that may arise between the parties. If the dispute cannot be resolved by negotiation, the dispute will be submitted to mediation. The parties to the dispute will choose a mutually acceptable mediator and will share the cost of mediation equally.

**19. ATTORNEY'S FEES:** If Owner or Broker is a prevailing party in any legal proceeding brought as a result of a dispute under this agreement or any transaction related to or contemplated by this agreement, such party will be entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

**20. SPECIAL PROVISIONS:**

24106 Alivia Court
Leasing & Management Agreement concerning: **Spring, TX   77373**

21. **ADDENDA:** Incorporated into this agreement are the following addenda, exhibits, and other information:
☑ A. Information About Brokerage Services
☐ B. Addendum Regarding Lead-Based Paint
☐ C. Multiple Property Addendum
☐ D. Owner's Notice Concerning Condition of Property under Property Management Agreement
☐ E. Property Manager's Inventory and Condition Report
☐ F. Addendum for Authorization to Act for Owner before Owners' Association
☐ G. Copy of Rules and Regulations of an Owners' Association
☐ H. Copy of the Owners' Association Bylaws and Deed Restrictions affecting the Property
☐ I. _____

Note: Complete and deliver to Broker IRS W-9 Form or similar form. Broker maintains a privacy policy that is available upon request.

22. **AGREEMENT OF PARTIES:**

A. Entire Agreement: This document contains the entire agreement of the parties and may not be changed except by written agreement.

B. Assignments: Neither party may assign this agreement without the written consent of the other party.

C. Binding Effect: Owner's obligation to pay Broker an earned fee is binding upon Owner and Owner's heirs, administrators, executors, successors, and permitted assignees.

D. Joint and Several: All Owners executing this agreement are jointly and severally liable for the performance of all its terms. Any act or notice to, refund to, or signature of, any one or more of the Owners regarding any term of this agreement, its extension, its renewal, or its termination is binding on all Owners executing this agreement.

E. Governing Law: Texas law governs the interpretation, validity, performance, and enforcement of this agreement.

F. Severability: If a court finds any clause in this agreement invalid or unenforceable, the remainder of this agreement will not be affected and all other provisions of this agreement will remain valid and enforceable.

G. Context: When the context requires, singular nouns and pronouns include the plural.

H. Notices: Notices between the parties must be in writing and are effective when sent to the receiving party's address, fax, or e-mail address specified in Paragraph 1.

I. Copyright: If an active REALTOR® member of the Texas Association of REALTORS® does not negotiate this agreement as a party or for one of the parties, with or without the assistance of an active member of the State Bar of Texas, this agreement is voidable at will by Owner.

23. **INFORMATION:**

A. **Broker's fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested, or maintained by the Association of REALTORS®, MLS, or any listing service.**

B. **In accordance with fair housing laws and the National Association of REALTORS® Code of Ethics, Broker's services must be provided and the Property must be shown and made available to all persons without regard to race, color, religion, national origin, sex, disability, familial status, sexual orientation, or gender identity. Local ordinances may provide for additional protected classes (for example, creed, status as a student, marital status, or age).**

C. **Owner may review the information Broker submits to an MLS or other listing service.**

(TAR-2201) 1-1-14   Initialed for Identification by: Broker/Associate _____ and Owner _____, _____     Page 10 of 12

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     Property

24106 Alivia Court
Leasing & Management Agreement concerning: Spring, TX  77373

D. Broker advises Owner to remove or secure jewelry, prescription drugs, and other valuables.

E. The Property Code requires the Property to be equipped with certain types of locks and security devices, including (with some exceptions): (1) window latches on each window; (2) a keyed doorknob lock or keyed deadbolt lock on each exterior door; (3) a sliding door pin lock on each exterior sliding glass door of the dwelling; (4) a sliding door handle latch or a sliding door security bar on each exterior sliding glass door of the dwelling; and (5) a keyless bolting device and a door viewer on each exterior door of the dwelling. The Property Code also requires smoke alarms in certain locations. The Property Code requires the security devices to be rekeyed and the smoke alarms to be tested each time a new tenant occupies the Property.

F. Broker cannot give legal advice. READ THIS AGREEMENT CAREFULLY. If you do not understand the effect of this agreement, consult an attorney BEFORE signing.

Blavesco  LTD
Broker's Printed Name                    0443914 License No.

Arica Lane, LLC
Owner's Printed Name

06/30/2013
[x] Broker's Signature                              Date
[ ] Broker's Associate's Signature, as an authorized agent of Broker

06/30/2013
Owner's Signature                              Date

Heather L Carlile
Broker's Associate's Printed Name, if applicable

Jeff Fisher
Owner's Printed Name

Owner's Signature                              Date

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

**24106 Alivia Court**
Leasing & Management Agreement concerning **Spring, TX  77373**

## Index to Residential Leasing and Property Management Agreement

| No. | Paragraph Description | Pg. | No. | Paragraph Description | Pg. |
|---|---|---|---|---|---|
| 1. | Parties | 1 | 13. | Expense Reimbursement | 8 |
| 2. | Property | 1 | 14. | Funds Received after Termination | 8 |
| 3. | Term | 1 | 15. | Cooperation with Other Brokers | 8 |
| | A. Primary Term | | | | |
| | B. Automatic Extension | | 16. | Liability and Indemnification | 9 |
| | C. Effective Services | 2 | | | |
| | D. Fees Upon Termination | | 17. | Default | 9 |
| 4. | Authority of Broker | 2 | 18. | Mediation | 9 |
| | A. Leasing and Management Authority | | | | |
| | B. Record Keeping | 3 | 19. | Attorney's Fees | 9 |
| | C. Security Deposits | | | | |
| | D. Deductions and Offset | | 20. | Special Provisions | 10 |
| | E. Insurance and Attorneys | | | | |
| | F. Information about Trust Accounts, MLS, and Keybox | | 21. | Addenda | 10 |
| | G. Performance Standard | 4 | 22. | Agreement of the Parties | 10 |
| | H. Inability to Contact Owner | | | A. Entire Agreement | |
| | I. Foreclosure | | | B. Assignments | |
| | | | | C. Binding Effect | |
| 5. | Legal Compliance | 4 | | D. Joint and Several | |
| | | | | E. Governing Law | |
| 6. | Reserves | 4 | | F. Severability | |
| | | | | G. Context | |
| 7. | Advances | 4 | | H. Notices | |
| | | | | I. Copyright | 11 |
| 8. | Owner's Representations | 5 | | | |
| | A. General | | 23. | Information | 11 |
| | B. Property Condition | | | | |
| | C. Lead-Based Paint | | | | |
| 9. | Owner's Cooperation | 5 | | | |
| 10. | Insurance | 6 | | | |
| 11. | Broker's Fees | 6 | | | |
| | A. Management Fees | | | | |
| | B. Leasing Fees for New Tenancies | | | | |
| | C. Renewal or Extension Fees | 6 | | | |
| | D. Service Fees | 7 | | | |
| | E. Interest on Trust Accounts | | | | |
| | F. Administrative Fees | | | | |
| | G. Fees Related to Insurance and Legal Matters | | | | |
| | H. Fees in the Event of a Sale | | | | |
| | I. Other | 8 | | | |
| 12. | Fees Upon Termination | 8 | | | |

(TAR-2201) 1-1-14   Initialed for Identification by Broker/Associate _____ and Owner _____   Page 12 of 12

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com   Property

DocuSign Envelope ID: 1180FC20-4BA4-43AD-AAE8-3C6C7BEC1794



TEXAS ASSOCIATION OF REALTORS®
## RESIDENTIAL LEASING AND PROPERTY MANAGEMENT AGREEMENT

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2014

1. **PARTIES:**

    A. The parties to this agreement are:

    Owner: **Austin Road Partners, LLC**

    Address: **PO Box 9993**
    City, State, Zip: **The Woodlands, TX 77387**
    Hm. Phone: _____ Wk. Ph: **(816) 646-9819** _____ Mobile: _____
    Fax: **(832) 381-3768** _____ E-Mail: **jeff@jefffisher.com**
    Additional Phones or Contact Information: **jeff@jefffisher.com**


    Broker: **Blavesco. LTD**
    Address: **25511 Budde Road Ste 1501**
    City, State, Zip: **The Woodlands, TX   77380**
    Phone: **(832) 850-4849** _____ Fax: **(832) 381-3768**
    E-Mail: **heather@blavesco.com**

    B. If Owner is not an individual, Owner is a: ☐ estate ☐ corporation ☒ limited liability company (LLC)
    ☐ trust ☐ partnership ☐ limited liability partnership (LLP) ☐ other _____ , which was
    chartered or created in _____ **TEXAS** _____ (State). The individual signing this agreement for the
    owner represents to Broker that he or she has the authority to bind Owner to this agreement, to act for
    Owner, and is acting under his capacity as _____ **Director** _____ (title) for the Owner.

    C. Owner appoints Broker as Owner's sole and exclusive leasing and managing agent of the real
    property described in Paragraph 2 and in any addendum to this agreement.

2. **PROPERTY:** "Property" means:

    Address *(include unit nos.)* **See Exhibit A, , Tx**

    legally described as: **Multiple Properties Per EXH A**

    in _____ **Harris & Montgomery** _____ County, Texas, together with the following non-real-property
    items: **Range, Dishwashers, Mini Blinds**

    "Property" also includes any other Property described in any attached Multiple Property Addendum.

3. **TERM:**

    A. Primary Term: The primary term of this agreement begins and ends as follows:

    Commencement Date: _____ **June 30, 2013** _____ Expiration Date: _____ **June 30, 2016**

    B. Automatic Extension: Unless either party provides written notice of termination to the other party at
    least 30 days before the Expiration Date, this agreement will automatically extend on a monthly basis
    until either party terminates by providing at least 30 days written notice to the other party.

Blavesco, LTD, 25511 Budde Road, Ste 1801 The Woodlands, TX 77380                    Phone: 936-672-7671    Fax: 832-381-3768
Heather Carkhe                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

PBIGAD 800-631-6993

DocuSign Envelope ID: 1180FC20-4BA4-43AD-AAE8-3C6C7BEC1794

**See Exhibit A**

Leasing & Management Agreement concerning: _____

C. <u>Effective Services</u>: If Broker determines that Broker cannot continue to effectively provide leasing and management services to Owner for any reason at any time during this agreement Broker may terminate this agreement by providing at least 30 days written notice to Owner.

D. <u>Fees Upon Termination</u>: At the time this agreement ends, Owner must pay Broker amounts specified in Paragraph 12.

## 4. AUTHORITY OF BROKER:

A. <u>Leasing and Management Authority</u>: Owner grants to Broker the following authority which Broker may exercise when and to the extent Broker determines to be in Owner's interest:
   (1) advertise the Property for lease at Owner's expense by means and methods that Broker determines are reasonably competitive, including but not limited to creating and placing advertisements with interior and exterior photographic and audio-visual images of the Property and related information in any media and the Internet;
   (2) place "For Lease" signs or other signs on the Property in accordance with applicable laws, regulations, ordinances, restrictions, and owners' association rules;
   (3) remove all other signs offering the Property for sale or lease;
   (4) submit the Property as a listing with one or more Multiple Listing Services (MLS) at any time the Property is marketed for lease and to change or terminate such listings;
   (5) authorize other brokers, their associates, inspectors, appraisers, and contractors to access the Property at reasonable times for purposes contemplated by this agreement and to lend keys and disclose security codes to such persons to enter the Property;
   (6) duplicate keys and access devices, at Owner's expense, to facilitate convenient and efficient showings of the Property and to lease the Property;
   (7) place a keybox on the Property;
   (8) employ scheduling companies to schedule showings by other brokers at any time the Property is marketed for lease;
   (9) verify information and references in rental applications from prospective tenants;
   (10) negotiate and execute leases on Owner's behalf for the Property at market rates and on competitively reasonable terms for initial terms of not less than ____12____ months and not more than ____36____ months and in accordance with any instructions in Paragraph 20;
   (11) negotiate and execute any amendments, extensions, or renewals to any leases for the Property on Owner's behalf;
   (12) terminate leases for the Property, negotiate lease terminations, and serve notices of termination;
   (13) collect and deposit for Owner rents, security deposits, and other funds related to the Property in a trust account and pay from that account: (a) any compensation and reimbursements due Broker under this agreement; and (b) other persons as this agreement may authorize.
   (14) account for security deposits that Broker holds in trust to any tenants in the Property in accordance with applicable law, this agreement, and any lease of the Property and make deductions from the deposits in accordance with the lease and applicable law;
   (15) collect administrative charges including but not limited to, application fees, returned check fees, and late charges from tenants in the Property or from prospective tenants;
   (16) institute and prosecute, at Owner's expense, actions to: (a) evict tenants in the Property; (b) recover possession of the Property; or (c) recover lost rent and other damages;
   (17) settle, compromise, or withdraw any action described in Paragraph 4A(16);
   (18) negotiate and make reasonable concessions to tenants or former tenants in the Property;
   (19) report payment histories of tenants in the Property to consumer reporting agencies;
   (20) obtain information from any holder of a note secured by a lien on the Property and any insurance company insuring all or part of the Property;

(TAR-2201) 1-1-14   Initialed for Identification by: Broker/Associate _____ and Owner _____ , _____          Page 2 of 12

DocuSign Envelope ID: 1180FC20-4BA4-43AD-AAE8-3C6C7BEC1794

**See Exhibit A**

Leasing & Management Agreement concerning: _____

(21) hire contractors to repair, maintain, redecorate, or alter the Property provided that Broker does not expend more than $ **500.00** _____ for any single repair, maintenance item, redecoration, or alteration without Owner's consent;

(22) hire contractors to make emergency repairs to the Property without regard to the expense limitation in Paragraph 4A(21) that Broker determines are necessary to protect the Property or the health or safety of an ordinary tenant;

(23) contract, at Owner's expense, in either Broker's or Owner's name, for utilities and maintenance to the Property during times that the Property is vacant, including but not limited to, electricity, gas, water, alarm monitoring, cleaning, pool and spa maintenance, yard maintenance, and other regularly recurring expenses that Broker determines are reasonable to maintain and care for the Property; and

(24) perform other necessary services related to the leasing and management of the Property.

B. Record Keeping: Broker will:
(1) maintain accurate records related to the Property and retain such records for not less than 4 years;
(2) file reports with the Internal Revenue Service related to funds received on behalf of Owner under this agreement (for example, Form 1099); and
(3) remit, each month, the following items to Owner: (a) funds collected by Broker for Owner under this agreement, less authorized deductions; and (b) a statement of receipts, disbursements, and charges. Owner may instruct Broker in writing to remit the items to another person or address.

C. Security Deposits:
(1) During this agreement, Broker will maintain security deposits received from tenants in a trust account and will account to the tenants for the security deposits in accordance with the leases for the Property.
(2) Except as stated in Paragraph 4(I), after this agreement ends, Broker will deliver to Owner or the Owner's designee the security deposit held by Broker under an effective lease of the Property, less deductions authorized by this agreement, and will send written notice to the tenant that states all of the following:
   (a) that this agreement has ended;
   (b) the exact dollar amount of the security deposit;
   (c) the contact information for the Owner or the Owner's designee; and
   (d) that Owner is responsible for accounting for and returning the tenant's security deposit.
(3) If Broker complies with this Paragraph 4C, Owner will indemnify Broker from any claim or loss from a tenant for the return of a security deposit. This Paragraph 4C survives termination of this agreement.

D. Deductions and Offset: Broker may disburse from any funds Broker holds in a trust account for Owner:
(1) any compensation due Broker under this agreement;
(2) any funds Broker is authorized to expend under this agreement; and
(3) any reimbursement Broker is entitled to receive under this agreement.

E. Insurance and Attorneys:
(1) Broker may not file a claim for a casualty loss with the carrier insuring the Property. Broker may communicate with the carrier to facilitate the processing of any claim Owner may file or other matters that Owner instructs Broker to communicate to the carrier.
(2) Broker may not directly or indirectly employ or pay a lawyer to represent Owner. Broker may communicate with Owner's attorney in accordance with Owner's instructions.

F. Information about Trust Accounts, MLS, and Keybox:

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Property

DocuSign Envelope ID: 1180FC20-4BA4-43AD-AAE8-3C6C7BEC1794

**See Exhibit A**

Leasing & Management Agreement concerning: _____

(1) <u>Trust Accounts</u>: A trust account must be separate from Broker's operating account and must be designated as a trust, property management, or escrow account or other similar name. Broker may maintain one trust account for all properties Broker leases and manages for others.

(2) <u>MLS</u>: MLS rules require Broker to accurately and timely submit all information the MLS requires for participation including leased data. Subscribers to the MLS may use the information for market evaluation or appraisal purposes. Subscribers are other brokers and other real estate professionals such as appraisers and may include the appraisal district. Any information filed with the MLS becomes the property of the MLS for all purposes. *Submission of information to MLS ensures that persons who use and benefit from the MLS also contribute information.*

(3) <u>Keybox</u>: A keybox is a locked container placed on the Property that holds a key to the Property. A keybox makes it more convenient for brokers, their associates, inspectors, appraisers, and contractors to show, inspect, or repair the Property. The keybox is opened by a special combination, key, or programmed device, so that authorized persons may enter the Property. Using a keybox will probably increase the number of showings, but involves risks (for example, unauthorized entry, theft, property damage, or personal injury). *Neither the Association of REALTORS® nor MLS requires the use of a keybox.*

G. <u>Performance Standard</u>: Broker will:
(1) use reasonable care when exercising Broker's authority and performing under this agreement; and
(2) exercise discretion when performing under this agreement in a manner that Broker believes to be in Owner's interest, provided that Broker will treat any tenant honestly and fairly.

H. <u>Inability to Contact Owner</u>: If Broker is unable to contact Owner for __**14**__ days, Broker is authorized to contact the person below for the sole purpose of attempting to reestablish contact with Owner.

Name: _____**James Raymond Fisher**_____ Phone:____**(936)239-1976**____
Address: _____**#1 Coralvine Court The Woodlands, TX 77380**_____
E-mail:_____**jay.fisher@blavesco.com**_____

I. <u>Foreclosure</u>: If Broker receives notice of the Owner's delinquency in the payment of: (1) any mortgage or other encumbrance secured by the Property; (2) property taxes; (3) property insurance; or (4) owners' association fees, Broker may give Owner 15 days to cure the delinquency during which period Owner authorizes Broker to freeze any funds held by Broker and no disbursements will be made to Owner related to this agreement or the Property. If after the 15 day period, the delinquency is not cured and the foreclosure process is initiated, Owner authorizes Broker to deduct from any other funds being held by Broker for Owner any remaining Broker Fees or funds due to Broker related to services performed under this agreement. Additionally, Owner authorizes Broker to return any security deposit being held by Broker to a tenant of the Property in addition to any prorated amount of rent being held by Broker and Broker may terminate this agreement. This paragraph does not preclude the Broker from seeking any other remedies under this agreement or at law that may be available to the Broker.

5. **LEGAL COMPLIANCE:** The parties will comply with all obligations, duties, and responsibilities under the Texas Property Code, fair housing laws, and any other statute, administrative rule, ordinance, or restrictive covenant applicable to the use, leasing, management, or care of the Property.

6. **RESERVES:** Upon execution of this agreement, Owner will deposit the following amount with Broker to be held in a trust account as a reserve for Owner: $**250.00**_____ for each unit within the Property or Properties managed by Broker under this agreement. Broker may, at Broker's discretion, use the reserve to pay any expense related to the leasing and management of the Property(ies) (including but not limited to Broker's fees). If the balance of the reserve becomes less than the amount stated, at any time, Broker may: (a) deduct an amount that will bring the balance to the amount stated from any subsequent rent received on behalf of Owner and deposit the amount into the reserve; or (b) notify Owner that Owner must promptly deposit additional funds with Broker to bring the balance to the amount stated.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   Property

DocuSign Envelope ID: 1180FC20-4BA4-43AD-AAE8-3C6C7BEC1794

**See Exhibit A**

Leasing & Management Agreement concerning: _____

7.  **ADVANCES:** Owner will, in advance, provide Broker all funds necessary for the leasing and management of the Property. Broker is not obligated to advance any money to Owner or to any other person.

8.  **OWNER'S REPRESENTATIONS:**

   A. <u>General</u>:

     (1) Except as disclosed in Paragraph 20, Owner represents that:

       (a) Owner has fee simple title to and peaceable possession of the Property and all its improvements and fixtures, unless rented, and the legal capacity to lease the Property;

       (b) Owner is not bound by: (i) another agreement with another broker for the sale, exchange, lease, or management of the Property that is or will be in effect during this agreement; or (ii) an agreement or covenant that prohibits owner from leasing the property;

       (c) no person or entity has any right to purchase, lease, or acquire the Property by an option, right of refusal, or other agreement;

       (d) Owner is not delinquent in the payment of any property taxes, owners' association fees, property insurance, mortgage, or any encumbrance on or affecting the Property;

       (e) the Property is not subject to the jurisdiction of any court;

       (f) the optional user fees for the use of common areas (for example, pool or tennis courts) in the Property's subdivision are: <u>n/a</u>_____ ; and

       (g) all information related to the Property that Owner provides to Broker is true and correct to the best of Owner's knowledge.

     (2) Broker may disclose to a tenant or to a prospective tenant any information related to the representations made in this Paragraph 8.

   B. <u>Property Condition</u>: Owner and Broker are obligated under law to disclose to a tenant or to a prospective tenant any known condition that materially and adversely affects the health or safety of an ordinary tenant. Owner is obligated under the Property Code to repair any such condition for a tenant. Owner represents that:

     (1) any pool or spa and any required enclosures, fences, gates, and latches comply with all applicable laws and ordinances; and

     (2) Owner is not aware of a condition concerning the Property that materially affects the health or safety of an ordinary tenant, except as stated below, in this agreement, or in any addendum:
<u>none</u>_____
_____
_____ .

   C. <u>Lead-Based Paint</u>: If the Property was built before 1978, Owner will complete and attach to this agreement an addendum regarding lead-based paint and lead-based paint hazards that will be made part of any lease of the Property. If the Property was built before 1978, federal law requires the Owner (before a tenant is obligated under a lease) to: (1) provide the tenant with the federally approved pamphlet on lead poisoning prevention; (2) disclose the presence of any known lead-based paint or hazards in the Property; and (3) deliver all records and reports to the tenant related to such paint or hazards.

9.  **OWNER'S COOPERATION:** Owner agrees to:

   A. cooperate with Broker to facilitate the showing, marketing, and lease of the Property;

   B. not rent or lease the Property to anyone without Broker's prior written approval;

   C. not negotiate with any prospective tenant who might contact Owner directly, but refer all prospective tenants to Broker;

   D. not deal with or negotiate with any tenant in the Property concerning any matter related to the management or leasing of the Property but refer all such dealings to Broker;

   E. not enter into a listing agreement or property management agreement with another broker for the rental, leasing, or management of the Property to become effective during this agreement;

   F. provide Broker with copies of any existing leases or rental agreements related to the Property;

   G. provide Broker with keys and access devices to the Property;

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    Property

DocuSign Envelope ID: 1180FC20-4BA4-43AD-AAE8-3C6C7BEC1794

**See Exhibit A**

Leasing & Management Agreement concerning: _____

    H.  provide Broker with copies of all warranties related to the Property or any item in the Property;

    I.  tender to Broker any security deposits paid by any existing tenants in the Property;

    J.  complete any disclosures or notices required by law or a lease of the Property;

    K.  amend applicable notices and disclosures if any material change occurs during this agreement; and

    L.  notify Broker if Owner becomes delinquent in the payment of: (1) any mortgage or other encumbrance secured by the Property; (2) property taxes; (3) property insurance; or (4) owners' association fees.

## 10. INSURANCE:

    A.  At all times during this agreement, Owner must maintain in effect:

        (1)  a public liability insurance policy that names Broker as a co-insured or additional insured and covers losses related to the Property in an amount of not less than $ <u>500,000.00</u>_____ on an occurrence basis; and

        (2)  an insurance policy for the Property in an amount equal to the reasonable replacement cost of the Property's improvements and that contains endorsements which contemplate the leasing of the Property with vacancies between lease terms.

    B.  Not later than the 15th day after the Commencement Date, Owner must deliver to Broker copies of certificates of insurance evidencing the coverage required under Paragraph 10A. If the coverage changes at any time during this agreement, Owner must deliver to Broker a copy of the insurance certificate evidencing the change not later than 10 days after the change.

    C.  If Owner fails to comply with Paragraphs 10A or 10B, Broker may:

        (1)  purchase insurance that will provide Broker the same coverage as the required insurance under Paragraph 10A(1) and Owner must promptly reimburse Broker for such expense; or

        (2)  exercise Broker's remedies under Paragraph 17.

**11. BROKER'S FEES:** All fees to Broker under this agreement are payable in _____<u>Montgomery</u>_____ County, Texas. This Paragraph 11 survives termination or expiration of this agreement with regard to fees earned during this agreement which are not payable until after its termination. Broker may deduct any fees under this Paragraph 11 from any funds Broker holds in trust for Owner. <u>If more than one property or unit is made part of and subject to this agreement, each of the provisions below will apply to each property or unit separately.</u>

☒  A.  <u>Management Fees:</u> Each month Owner will pay Broker the greater of $ _____ (minimum management fee) or: *(Check one box only.)*

    ☒  (1)  <u>5.000</u> % of the gross monthly rents collected that month.

    ☐  (2)  _____ .

        A vacancy in the Property or failure by a tenant to pay rent does not excuse payment of the minimum management fee. Management fees under this Paragraph 11A are earned daily and are payable not later than the last day of each month.

☒  B.  <u>Leasing Fees for New Tenancies:</u> Each time the Property is leased to a new tenant, Owner will pay Broker a leasing fee equal to: *(Check one box only.)*

    ☐  (1)  <u>100.000</u> % of one full month's rent to be paid under the lease.

    ☐  (2)  _____ % of the gross rents to be paid under the lease.

    ☐  (3)  _____ .

        The leasing fees under this Paragraph 11B are earned and payable at the time the lease is executed.

☒  C.  <u>Renewal or Extension Fees:</u> Each time a tenant in the Property renews or extends a lease, Owner will pay Broker a renewal or extension fee equal to: *(Check one box only.)*

    ☐  (1)  _____ % of one full month's rent to be paid under the renewal or extension.

    ☐  (2)  _____ % of the gross rents to be paid under the renewal or extension.

    ☒  (3)  <u>150</u>_____ .

        The renewal or extension fees under this Paragraph 11C are earned and payable at the time the renewal or extension is effective. For the purposes of this paragraph, a new lease for the same

(TAR-2201) 1-1-14   Initialed for Identification by: Broker/Associate <u>BL</u> and Owner <u>MM</u> , _____    Page 6 of 12

DocuSign Envelope ID: 1180FC20-4BA4-43AD-AAE8-3C6C7BEC1794

**See Exhibit A**

Leasing & Management Agreement concerning: _____

Property with the same tenant then occupying the Property is an extension or renewal. This Paragraph 11C does not apply to month-to-month renewals or month-to-month extensions.

☒ D. <u>Service Fees</u>: Each time Broker arranges for the Property to be repaired, maintained, redecorated, or altered as permitted by this agreement, Owner will pay Broker a service fee equal to: *(Check one box only.)*
   ☐ (1) _____ % of the total cost of each repair, maintenance, alteration, or redecoration.
   ☐ (2) _____ .
   The service fees under this Paragraph 11D are earned at the time the repair, maintenance, redecoration, or alteration is made and are payable upon Owner's receipt of Broker's invoice.

☒ E. <u>Interest on Trust Accounts</u>: Any trust account Broker maintains under this agreement may be an interest-bearing or income producing account. Broker may retain any interest or income from such account as compensation under this agreement. Broker will remove any interest or income payable under this Paragraph 11E from the trust account not later than the 30th day after the interest or income is paid.

☒ F. <u>Administrative Fees</u>: If Broker collects administrative charges from tenants or prospective tenants, including but not limited to, application fees, returned check fees, or late charges (as authorized under Paragraph 4A), Broker will retain such fees as compensation under this agreement. The administrative fees under this Paragraph 11F are earned and payable at the time Broker collects such fees.

☒ G. <u>Fees Related to Insurance and Legal Matters</u>: If Owner requests or instructs Broker to coordinate or communicate with any insurance carrier regarding any casualty to or on the Property or if Owner requests or instructs Broker to appear in any legal proceeding or deposition related to the Property (including, but not limited to, evictions, tenant disputes, security deposit disputes, and suits for damages), Owner will pay Broker $**30.00**_____ per __**hour**__ for Broker's time expended in such matters and in preparation of such matters. Fees under this Paragraph 11G are earned at the time the services are rendered and payable upon Owner's receipt of Broker's invoice.

☒ H. <u>Fees in the Event of a Sale</u>:
   (1) <u>Fee if a Tenant Purchases Property</u>: If at any time during this agreement or within ____**60**____ days after it ends, Owner sells the Property to a tenant who occupied the Property during the term of this agreement, Owner will pay Broker a fee equal to: *(Check one box only.)*
      ☐ (a) _**6.000**_ % of the sales price.
      ☐ (b) _____ .
      Fees under this Paragraph 11H(1) are earned at the time Owner agrees to sell the Property and are payable at the time the sale closes. Broker will waive any fees due under Paragraph 12 at the time the sale closes.

   (2) <u>Fee if Buyer is Procured through Broker</u>: If during this agreement, Owner agrees to sell the Property to a person other than a tenant who occupied the Property and Broker procures the buyer, directly or through another broker, Owner will pay Broker a fee equal to: *(Check one box only.)*
      ☒ (a) _**6.000**_ % of the sales price.
      ☐ (b) _____ .
      Fees under this Paragraph 11H(2) are earned at the time Owner agrees to sell the Property and are payable at the time the sale closes. Broker will waive any fees due under Paragraph 12 at the time the sale closes.

   (3) <u>Sale Coordination Fees</u>: If at any time during this agreement Owner agrees to sell the Property and Broker is not paid a fee under Paragraph 11H(1) or (2), Owner will pay Broker **500**_____ _____ for Broker's time and services to coordinate showings, inspections, appraisals, repairs, and other related matters. Fees under this Paragraph 11H(3) are earned at the time such services are rendered and payable upon Owner's receipt of Broker's invoice.

   (4) <u>Definition</u>: "Sell" means to agree to sell, convey, transfer or exchange any interest in the Property whether by oral or written agreement or option.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com      Property

DocuSign Envelope ID: 1180FC20-4BA4-43AD-AAE8-3C6C7BEC1794

**See Exhibit A**

Leasing & Management Agreement concerning: _____

    (5) <u>Separate Listing Agreement Controls</u>: If Owner sells the Property and pays Broker the fee under a separate written listing agreement between Owner and Broker: (a) this Paragraph 11H will not apply; and (b) Broker will waive any fees due under Paragraph 12 at the time the sale closes.

☐ I. Other: _____
_____
_____
_____ .

12. **FEES UPON TERMINATION:** At the time this agreement ends, Owner must pay Broker:
    A. all amounts due Broker under this agreement; and
    B. if the Property is leased to a tenant on the date this agreement ends and Owner terminates this agreement, an amount equal to the lesser of:
      (a) the management fees that would accrue over the remainder of the term of the lease; or
      (b) $**none**_____ .
    If more than one property or unit is made part of and subject to this agreement, this paragraph applies only to those properties or units then leased and applies to each property or unit separately.

13. **EXPENSE REIMBURSEMENT:** Upon Owner's receipt of Broker's invoice, Owner will reimburse Broker the following expenses that are related to the leasing or management of the Property: (a) copy charges; (b) charges for long distance telephone calls or facsimile transmissions; (c) regular, express, or certified mail charges; (d) notary fees; (e) photos and videos; (f) reasonable travel expenses, including but not limited to mileage reimbursement (at the standard mileage rate published by the IRS), parking expenses, and tolls; and (g) any other expenditures Broker is authorized to make under this agreement for Owner or that Owner otherwise authorizes Broker to make for Owner.

14. **FUNDS RECEIVED AFTER TERMINATION:** Except as provided in Paragraph 4(I), if Broker receives any funds on behalf of Owner after this agreement ends (for example, rent, damages, past due amounts, and others), Broker will deposit those funds in Broker's trust account and will: (a) pay _____**5.000**_____ % of the funds received to Broker as compensation for services (for example, research, accounting, communicating, and processing) rendered at that time; and (b) pay the balance of the funds to Owner. This provision survives termination of this agreement.

15. **COOPERATION WITH OTHER BROKERS:** When the Property is marketed for lease, Broker will allow other brokers to show the Property to prospective tenants. If the other broker procures a tenant who leases the Property, Broker will offer to pay the other broker a fee out of the compensation Broker receives under Paragraph 11. As of the date this agreement is signed, Broker's policy is to offer other brokers the following amounts. Broker may change the amounts disclosed below without notice, provided that Broker will offer competitively reasonable amounts to other brokers.

    A. <u>MLS Participants</u>: If the other broker is a participant in the MLS in which the listing is filed, Broker will offer to pay the other broker:

      (1) if the other broker represents the tenant *(complete only one)*: **50.000** % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____; and

      (2) if the other broker is a subagent *(complete only one)*: _____ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____ .

    B. <u>Non-MLS Brokers</u>: If the other broker is not a participant in the MLS in which the listing is filed, Broker will offer to pay the other broker:

      (1) if the other broker represents the tenant *(complete only one)*: **50.000** % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____; and

      (2) if the other broker is a subagent *(complete only one)*: _____ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____ .

DocuSign Envelope ID: 1180FC20-4BA4-43AD-AAE8-3C6C7BEC1794

See Exhibit A

Leasing & Management Agreement concerning: _____

**16. LIABILITY AND INDEMNIFICATION:**

    A. Broker is not responsible or liable in any manner for personal injury to any person or for loss or damage to any person's real or personal property resulting from any act or omission not caused by Broker's negligence, including but not limited to injuries or damages caused by:

        (1) other brokers, their associates, inspectors, appraisers, and contractors who are authorized to access the Property;

        (2) acts of third parties (for example, vandalism, theft, or other criminal acts);

        (3) freezing or leaking water pipes;

        (4) failure to properly water the foundation of the Property;

        (5) a dangerous condition or environmental condition on the Property; or

        (6) the Property's non-compliance with any law or ordinance.

    B. Broker is not responsible or liable in any manner for:

        (1) any late fees or other charges Owner incurs to any creditor caused by late or insufficient payments by any tenant in the Property; or

        (2) damages to Owner caused by a tenant's breach of a lease.

    C. Owner agrees to protect, defend, indemnify, and hold Broker harmless from any damage, costs, attorney's fees, and expenses that:

        (1) are caused by Owner, negligently or otherwise;

        (2) arise from Owner's failure to disclose any material or relevant information about the Property;

        (3) are caused by Owner giving incorrect information to any person; or

        (4) are related to the management of the Property and are not caused by Broker, negligently or otherwise.

    D. Owner is responsible and liable for all contracts and obligations related to the Property (for example, maintenance, service, repair and utility agreements) entered into before or during this agreement by Owner or by Broker under Broker's authority under this agreement. Owner agrees to hold Broker harmless from all claims related to any such contracts.

**17. DEFAULT:** A party is in default if the party fails to cure a breach within 10 days after receipt of written demand from the other party. If either party is in default, the non-defaulting party may: (a) terminate this agreement by providing at least 10 days written notice; (b) recover all amounts due to the non-defaulting party under this agreement; (c) recover reasonable collection costs and attorney's fees; and (d) exercise any other remedy available at law. Broker is also entitled to recover any compensation Broker would have been entitled to receive if Owner did not breach this agreement.

**18. MEDIATION:** The parties agree to negotiate in good faith in an effort to resolve any dispute related to this agreement that may arise between the parties. If the dispute cannot be resolved by negotiation, the dispute will be submitted to mediation. The parties to the dispute will choose a mutually acceptable mediator and will share the cost of mediation equally.

**19. ATTORNEY'S FEES:** If Owner or Broker is a prevailing party in any legal proceeding brought as a result of a dispute under this agreement or any transaction related to or contemplated by this agreement, such party will be entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

**20. SPECIAL PROVISIONS:**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: 1180FC20-4BA4-43AD-AAE8-3C6C7BEC1794

**See Exhibit A**

Leasing & Management Agreement concerning: _____

21. **ADDENDA:** Incorporated into this agreement are the following addenda, exhibits, and other information:
☑ A. Information About Brokerage Services
☐ B. Addendum Regarding Lead-Based Paint
☐ C. Multiple Property Addendum
☐ D. Owner's Notice Concerning Condition of Property under Property Management Agreement
☐ E. Property Manager's Inventory and Condition Report
☐ F. Addendum for Authorization to Act for Owner before Owners' Association
☐ G. Copy of Rules and Regulations of an Owners' Association
☐ H. Copy of the Owners' Association Bylaws and Deed Restrictions affecting the Property
☐ I. _____

*Note: Complete and deliver to Broker IRS W-9 Form or similar form. Broker maintains a privacy policy that is available upon request.*

22. **AGREEMENT OF PARTIES:**

A. <u>Entire Agreement</u>: This document contains the entire agreement of the parties and may not be changed except by written agreement.

B. <u>Assignments</u>: Neither party may assign this agreement without the written consent of the other party.

C. <u>Binding Effect</u>: Owner's obligation to pay Broker an earned fee is binding upon Owner and Owner's heirs, administrators, executors, successors, and permitted assignees.

D. <u>Joint and Several</u>: All Owners executing this agreement are jointly and severally liable for the performance of all its terms. Any act or notice to, refund to, or signature of, any one or more of the Owners regarding any term of this agreement, its extension, its renewal, or its termination is binding on all Owners executing this agreement.

E. <u>Governing Law</u>: Texas law governs the interpretation, validity, performance, and enforcement of this agreement.

F. <u>Severability</u>: If a court finds any clause in this agreement invalid or unenforceable, the remainder of this agreement will not be affected and all other provisions of this agreement will remain valid and enforceable.

G. <u>Context</u>: When the context requires, singular nouns and pronouns include the plural.

H. <u>Notices</u>: Notices between the parties must be in writing and are effective when sent to the receiving party's address, fax, or e-mail address specified in Paragraph 1.

I. <u>Copyright</u>: If an active REALTOR® member of the Texas Association of REALTORS® does not negotiate this agreement as a party or for one of the parties, with or without the assistance of an active member of the State Bar of Texas, this agreement is voidable at will by Owner.

23. **INFORMATION:**

A. **Broker's fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested, or maintained by the Association of REALTORS®, MLS, or any listing service.**

B. **In accordance with fair housing laws and the National Association of REALTORS® Code of Ethics, Broker's services must be provided and the Property must be shown and made available to all persons without regard to race, color, religion, national origin, sex, disability, familial status, sexual orientation, or gender identity. Local ordinances may provide for additional protected classes (for example, creed, status as a student, marital status, or age).**

C. **Owner may review the information Broker submits to an MLS or other listing service.**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: 1180FC20-4BA4-43AD-AAE8-3C6C7BEC1794

**See Exhibit A**

Leasing & Management Agreement concerning: _____

    **D.** Broker advises Owner to remove or secure jewelry, prescription drugs, and other valuables.

    **E.** The Property Code requires the Property to be equipped with certain types of locks and security devices, including (with some exceptions): (1) window latches on each window; (2) a keyed doorknob lock or keyed deadbolt lock on each exterior door; (3) a sliding door pin lock on each exterior sliding glass door of the dwelling; (4) a sliding door handle latch or a sliding door security bar on each exterior sliding glass door of the dwelling; and (5) a keyless bolting device and a door viewer on each exterior door of the dwelling. The Property Code also requires smoke alarms in certain locations. The Property Code requires the security devices to be rekeyed and the smoke alarms to be tested each time a new tenant occupies the Property.

    **F.** Broker cannot give legal advice. READ THIS AGREEMENT CAREFULLY. If you do not understand the effect of this agreement, consult an attorney BEFORE signing.

| | |
|---|---|
| **Blavesco, LTD** | **Austin Road Partners, LLC** |
| Broker's Printed Name      **0443914** License No. | Owner's Printed Name |
| ☒ Broker's Signature      **06/30/2013** Date | Owner's Signature      **06/30/2013** Date |
| ☐ Broker's Associate's Signature, as an authorized agent of Broker | |
| **Heather L Carlile** | **Jeff Fisher** |
| Broker's Associate's Printed Name, if applicable | Owner's Printed Name |
| | Owner's Signature      Date |

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Property

DocuSign Envelope ID: 1180FC20-4BA4-43AD-AAE8-3C6C7BEC1794

**See Exhibit A**

Leasing & Management Agreement concerning: _____

## Index to Residential Leasing and Property Management Agreement

| No. | Paragraph Description | Pg. | No. | Paragraph Description | Pg. |
|-----|-----------------------|-----|-----|-----------------------|-----|
| 1. | Parties | 1 | 13. | Expense Reimbursement | 8 |
| 2. | Property | 1 | 14. | Funds Received after Termination | 8 |
| 3. | Term | 1 | 15. | Cooperation with Other Brokers | 8 |
|  | A. Primary Term |  | 16. | Liability and Indemnification | 9 |
|  | B. Automatic Extension |  |  |  |  |
|  | C. Effective Services | 2 | 17. | Default | 9 |
|  | D. Fees Upon Termination |  | 18. | Mediation | 9 |
| 4. | Authority of Broker | 2 | 19. | Attorney's Fees | 9 |
|  | A. Leasing and Management Authority |  | 20. | Special Provisions | 10 |
|  | B. Record Keeping | 3 |  |  |  |
|  | C. Security Deposits |  | 21. | Addenda | 10 |
|  | D. Deductions and Offset |  | 22. | Agreement of the Parties | 10 |
|  | E. Insurance and Attorneys |  |  | A. Entire Agreement |  |
|  | F. Information about Trust Accounts, MLS, and Keybox |  |  | B. Assignments |  |
|  | G. Performance Standard | 4 |  | C. Binding Effect |  |
|  | H. Inability to Contact Owner |  |  | D. Joint and Several |  |
|  | I. Foreclosure |  |  | E. Governing Law |  |
| 5. | Legal Compliance | 4 |  | F. Severability |  |
| 6. | Reserves | 4 |  | G. Context |  |
| 7. | Advances | 4 |  | H. Notices |  |
| 8. | Owner's Representations | 5 |  | I. Copyright | 11 |
|  | A. General |  | 23. | Information | 11 |
|  | B. Property Condition |  |  |  |  |
|  | C. Lead-Based Paint |  |  |  |  |
| 9. | Owner's Cooperation | 5 |  |  |  |
| 10. | Insurance | 6 |  |  |  |
| 11. | Broker's Fees | 6 |  |  |  |
|  | A. Management Fees |  |  |  |  |
|  | B. Leasing Fees for New Tenancies |  |  |  |  |
|  | C. Renewal or Extension Fees | 6 |  |  |  |
|  | D. Service Fees | 7 |  |  |  |
|  | E. Interest on Trust Accounts |  |  |  |  |
|  | F. Administrative Fees |  |  |  |  |
|  | G. Fees Related to Insurance and Legal Matters |  |  |  |  |
|  | H. Fees in the Event of a Sale |  |  |  |  |
|  | I. Other | 8 |  |  |  |
| 12. | Fees Upon Termination | 8 |  |  |  |

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Property

*ZERO FEE*

DocuSign Envelope ID: 135ECAC7-BF7A-4CC6-99BB-9779DDC15592



## TEXAS ASSOCIATION OF REALTORS®
## **RESIDENTIAL LEASING AND PROPERTY MANAGEMENT AGREEMENT**

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2014

### 1. PARTIES:

A. The parties to this agreement are:

Owner: **Hazelwood Brownstone, LLC**

Address: **PO Box 9993**
City, State, Zip: **The Woodlands, TX 77387**
Hm. Phone: _____  Wk. Ph: **(832)850-4849**  Mobile: _____
Fax: **(832)747-9923**  E-Mail: **jeff@jefffisher.com**
Additional Phones or Contact Information:_____


Broker: **Blavesco, LTD**
Address: **25511 Budde Road Ste 1801**
City, State, Zip: **The Woodlands, TX  77380**
Phone: **(832)850-4849**  Fax: **(832)747-9923**
E-Mail: **heather@blavesco.com**

B. If Owner is not an individual, Owner is a: ☐ estate ☐ corporation ☒ limited liability company (LLC) ☐ trust ☐ partnership ☐ limited liability partnership (LLP) ☐ other _____ , which was chartered or created in ____**Texas**____ (State). The individual signing this agreement for the owner represents to Broker that he or she has the authority to bind Owner to this agreement, to act for Owner, and is acting under his capacity as ____**Managing Member**____ (title) for the Owner.

C. Owner appoints Broker as Owner's sole and exclusive leasing and managing agent of the real property described in Paragraph 2 and in any addendum to this agreement.

### 2. PROPERTY: "Property" means:

Address *(include unit nos.)* **25511 Budde Road - Bldg 30, The Woodlands, TX  77380**

legally described as: **Building 30 - Brownstone Office Condominiums Ph 02**

in ____**Montgomery**____ County, Texas, together with the following non-real-property items: _____ .

"Property" also includes any other Property described in any attached Multiple Property Addendum.

### 3. TERM:

A. Primary Term: The primary term of this agreement begins and ends as follows:

Commencement Date: ____**August 1, 2015**____  Expiration Date: ____**July 31, 2018**____

B. Automatic Extension: Unless either party provides written notice of termination to the other party at least 30 days before the Expiration Date, this agreement will automatically extend on a monthly basis until either party terminates by providing at least 30 days written notice to the other party.

(TAR-2201) 1-1-14  Initialed for Identification by: Broker/Associate _____ and Owner _____

**EXHIBIT**

tabbies

DocuSign Envelope ID: 135ECAC7-BF7A-4CC6-99BB-9779DDC15592

**25511 Budde Road - Bldg 30**
Leasing & Management Agreement concerning: **The Woodlands, TX   77380** _____

    C. <u>Effective Services</u>: If Broker determines that Broker cannot continue to effectively provide leasing and management services to Owner for any reason at any time during this agreement Broker may terminate this agreement by providing at least 30 days written notice to Owner.

    D. <u>Fees Upon Termination</u>: At the time this agreement ends, Owner must pay Broker amounts specified in Paragraph 12.

**4.  AUTHORITY OF BROKER:**

    A. <u>Leasing and Management Authority</u>: Owner grants to Broker the following authority which Broker may exercise when and to the extent Broker determines to be in Owner's interest:
      (1)  advertise the Property for lease at Owner's expense by means and methods that Broker determines are reasonably competitive, including but not limited to creating and placing advertisements with interior and exterior photographic and audio-visual images of the Property and related information in any media and the Internet;
      (2)  place "For Lease" signs or other signs on the Property in accordance with applicable laws, regulations, ordinances, restrictions, and owners' association rules;
      (3)  remove all other signs offering the Property for sale or lease;
      (4)  submit the Property as a listing with one or more Multiple Listing Services (MLS) at any time the Property is marketed for lease and to change or terminate such listings;
      (5)  authorize other brokers, their associates, inspectors, appraisers, and contractors to access the Property at reasonable times for purposes contemplated by this agreement and to lend keys and disclose security codes to such persons to enter the Property;
      (6)  duplicate keys and access devices, at Owner's expense, to facilitate convenient and efficient showings of the Property and to lease the Property;
      (7)  place a keybox on the Property;
      (8)  employ scheduling companies to schedule showings by other brokers at any time the Property is marketed for lease;
      (9)  verify information and references in rental applications from prospective tenants;
    (10)  negotiate and execute leases on Owner's behalf for the Property at market rates and on competitively reasonable terms for initial terms of not less than _____**12**_____ months and not more than _____**36**_____ months and in accordance with any instructions in Paragraph 20;
    (11)  negotiate and execute any amendments, extensions, or renewals to any leases for the Property on Owner's behalf;
    (12)  terminate leases for the Property, negotiate lease terminations, and serve notices of termination;
    (13)  collect and deposit for Owner rents, security deposits, and other funds related to the Property in a trust account and pay from that account: (a) any compensation and reimbursements due Broker under this agreement; and (b) other persons as this agreement may authorize.
    (14)  account for security deposits that Broker holds in trust to any tenants in the Property in accordance with applicable law, this agreement, and any lease of the Property and make deductions from the deposits in accordance with the lease and applicable law;
    (15)  collect administrative charges including but not limited to, application fees, returned check fees, and late charges from tenants in the Property or from prospective tenants;
    (16)  institute and prosecute, at Owner's expense, actions to: (a) evict tenants in the Property; (b) recover possession of the Property; or (c) recover lost rent and other damages;
    (17)  settle, compromise, or withdraw any action described in Paragraph 4A(16);
    (18)  negotiate and make reasonable concessions to tenants or former tenants in the Property;
    (19)  report payment histories of tenants in the Property to consumer reporting agencies;
    (20)  obtain information from any holder of a note secured by a lien on the Property and any insurance company insuring all or part of the Property;

(TAR-2201) 1-1-14   Initialed for Identification by: Broker/Associate _____ and Owner _____ , _____      Page 2 of 12

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    Hazelwood

DocuSign Envelope ID: 135ECAC7-BF7A-4CC6-99BB-9779DDC15592

25511 Budde Road - Bldg 30

Leasing & Management Agreement concerning: <u>**The Woodlands, TX   77380**</u>

(21) hire contractors to repair, maintain, redecorate, or alter the Property provided that Broker does not expend more than $ **1,000.00** for any single repair, maintenance item, redecoration, or alteration without Owner's consent;

(22) hire contractors to make emergency repairs to the Property without regard to the expense limitation in Paragraph 4A(21) that Broker determines are necessary to protect the Property or the health or safety of an ordinary tenant;

(23) contract, at Owner's expense, in either Broker's or Owner's name, for utilities and maintenance to the Property during times that the Property is vacant, including but not limited to, electricity, gas, water, alarm monitoring, cleaning, pool and spa maintenance, yard maintenance, and other regularly recurring expenses that Broker determines are reasonable to maintain and care for the Property; and

(24) perform other necessary services related to the leasing and management of the Property.

B. <u>Record Keeping</u>: Broker will:

(1) maintain accurate records related to the Property and retain such records for not less than 4 years;

(2) file reports with the Internal Revenue Service related to funds received on behalf of Owner under this agreement (for example, Form 1099); and

(3) remit, each month, the following items to Owner: (a) funds collected by Broker for Owner under this agreement, less authorized deductions; and (b) a statement of receipts, disbursements, and charges. Owner may instruct Broker in writing to remit the items to another person or address.

C. <u>Security Deposits</u>:

(1) During this agreement, Broker will maintain security deposits received from tenants in a trust account and will account to the tenants for the security deposits in accordance with the leases for the Property.

(2) Except as stated in Paragraph 4(I), after this agreement ends, Broker will deliver to Owner or the Owner's designee the security deposit held by Broker under an effective lease of the Property, less deductions authorized by this agreement, and will send written notice to the tenant that states all of the following:

(a) that this agreement has ended;

(b) the exact dollar amount of the security deposit;

(c) the contact information for the Owner or the Owner's designee; and

(d) that Owner is responsible for accounting for and returning the tenant's security deposit.

(3) If Broker complies with this Paragraph 4C, Owner will indemnify Broker from any claim or loss from a tenant for the return of a security deposit. This Paragraph 4C survives termination of this agreement.

D. <u>Deductions and Offset</u>: Broker may disburse from any funds Broker holds in a trust account for Owner:

(1) any compensation due Broker under this agreement;

(2) any funds Broker is authorized to expend under this agreement; and

(3) any reimbursement Broker is entitled to receive under this agreement.

E. <u>Insurance and Attorneys</u>:

(1) Broker may not file a claim for a casualty loss with the carrier insuring the Property. Broker may communicate with the carrier to facilitate the processing of any claim Owner may file or other matters that Owner instructs Broker to communicate to the carrier.

(2) Broker may not directly or indirectly employ or pay a lawyer to represent Owner. Broker may communicate with Owner's attorney in accordance with Owner's instructions.

F. <u>Information about Trust Accounts, MLS, and Keybox</u>:

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Hazelwood

DocuSign Envelope ID: 135ECAC7-BF7A-4CC6-99BB-9779DDC15592

25511 Budde Road - Bldg 30
Leasing & Management Agreement concerning: The Woodlands, TX  77380

(1) <u>Trust Accounts</u>: A trust account must be separate from Broker's operating account and must be designated as a trust, property management, or escrow account or other similar name. Broker may maintain one trust account for all properties Broker leases and manages for others.

(2) <u>MLS</u>: MLS rules require Broker to accurately and timely submit all information the MLS requires for participation including leased data. Subscribers to the MLS may use the information for market evaluation or appraisal purposes. Subscribers are other brokers and other real estate professionals such as appraisers and may include the appraisal district. Any information filed with the MLS becomes the property of the MLS for all purposes. *Submission of information to MLS ensures that persons who use and benefit from the MLS also contribute information.*

(3) <u>Keybox</u>: A keybox is a locked container placed on the Property that holds a key to the Property. A keybox makes it more convenient for brokers, their associates, inspectors, appraisers, and contractors to show, inspect, or repair the Property. The keybox is opened by a special combination, key, or programmed device, so that authorized persons may enter the Property. Using a keybox will probably increase the number of showings, but involves risks (for example, unauthorized entry, theft, property damage, or personal injury). *Neither the Association of REALTORS® nor MLS requires the use of a keybox.*

G. <u>Performance Standard</u>: Broker will:
(1) use reasonable care when exercising Broker's authority and performing under this agreement; and
(2) exercise discretion when performing under this agreement in a manner that Broker believes to be in Owner's interest, provided that Broker will treat any tenant honestly and fairly.

H. <u>Inability to Contact Owner</u>: If Broker is unable to contact Owner for __14__ days, Broker is authorized to contact the person below for the sole purpose of attempting to reestablish contact with Owner.

Name: _____ Phone: _____
Address: _____
E-mail: _____

I. <u>Foreclosure</u>: If Broker receives notice of the Owner's delinquency in the payment of: (1) any mortgage or other encumbrance secured by the Property; (2) property taxes; (3) property insurance; or (4) owners' association fees, Broker may give Owner 15 days to cure the delinquency during which period Owner authorizes Broker to freeze any funds held by Broker and no disbursements will be made to Owner related to this agreement or the Property. If after the 15 day period, the delinquency is not cured and the foreclosure process is initiated, Owner authorizes Broker to deduct from any other funds being held by Broker for Owner any remaining Broker Fees or funds due to Broker related to services performed under this agreement. Additionally, Owner authorizes Broker to return any security deposit being held by Broker to a tenant of the Property in addition to any prorated amount of rent being held by Broker and Broker may terminate this agreement. This paragraph does not preclude the Broker from seeking any other remedies under this agreement or at law that may be available to the Broker.

5. **LEGAL COMPLIANCE:** The parties will comply with all obligations, duties, and responsibilities under the Texas Property Code, fair housing laws, and any other statute, administrative rule, ordinance, or restrictive covenant applicable to the use, leasing, management, or care of the Property.

6. **RESERVES:** Upon execution of this agreement, Owner will deposit the following amount with Broker to be held in a trust account as a reserve for Owner: $ N/A _____ for each unit within the Property or Properties managed by Broker under this agreement. Broker may, at Broker's discretion, use the reserve to pay any expense related to the leasing and management of the Property(ies) (including but not limited to Broker's fees). If the balance of the reserve becomes less than the amount stated, at any time, Broker may: (a) deduct an amount that will bring the balance to the amount stated from any subsequent rent received on behalf of Owner and deposit the amount into the reserve; or (b) notify Owner that Owner must promptly deposit additional funds with Broker to bring the balance to the amount stated.

(TAR-2201) 1-1-14  Initialed for Identification by: Broker/Associate _XLC_ and Owner _JF_ , _____    Page 4 of 12

DocuSign Envelope ID: 135ECAC7-BF7A-4CC6-99BB-9779DDC15592

25511 Budde Road – Bldg 30
Leasing & Management Agreement concerning: <u>The Woodlands, TX   77380</u>

7. **ADVANCES:** Owner will, in advance, provide Broker all funds necessary for the leasing and management of the Property. Broker is not obligated to advance any money to Owner or to any other person.

8. **OWNER'S REPRESENTATIONS:**

   A. <u>General:</u>
      (1) Except as disclosed in Paragraph 20, Owner represents that:
         (a) Owner has fee simple title to and peaceable possession of the Property and all its improvements and fixtures, unless rented, and the legal capacity to lease the Property;
         (b) Owner is not bound by: (i) another agreement with another broker for the sale, exchange, lease, or management of the Property that is or will be in effect during this agreement; or (ii) an agreement or covenant that prohibits owner from leasing the property;
         (c) no person or entity has any right to purchase, lease, or acquire the Property by an option, right of refusal, or other agreement;
         (d) Owner is not delinquent in the payment of any property taxes, owners' association fees, property insurance, mortgage, or any encumbrance on or affecting the Property;
         (e) the Property is not subject to the jurisdiction of any court;
         (f) the optional user fees for the use of common areas (for example, pool or tennis courts) in the Property's subdivision are: <u>n/a</u> ; and
         (g) all information related to the Property that Owner provides to Broker is true and correct to the best of Owner's knowledge.

      (2) Broker may disclose to a tenant or to a prospective tenant any information related to the representations made in this Paragraph 8.

   B. <u>Property Condition:</u> Owner and Broker are obligated under law to disclose to a tenant or to a prospective tenant any known condition that materially and adversely affects the health or safety of an ordinary tenant. Owner is obligated under the Property Code to repair any such condition for a tenant. Owner represents that:
      (1) any pool or spa and any required enclosures, fences, gates, and latches comply with all applicable laws and ordinances; and
      (2) Owner is not aware of a condition concerning the Property that materially affects the health or safety of an ordinary tenant, except as stated below, in this agreement, or in any addendum: <u>none</u>

   C. <u>Lead-Based Paint:</u> If the Property was built before 1978, Owner will complete and attach to this agreement an addendum regarding lead-based paint and lead-based paint hazards that will be made part of any lease of the Property. If the Property was built before 1978, federal law requires the Owner (before a tenant is obligated under a lease) to: (1) provide the tenant with the federally approved pamphlet on lead poisoning prevention; (2) disclose the presence of any known lead-based paint or hazards in the Property; and (3) deliver all records and reports to the tenant related to such paint or hazards.

9. **OWNER'S COOPERATION:** Owner agrees to:
   A. cooperate with Broker to facilitate the showing, marketing, and lease of the Property;
   B. not rent or lease the Property to anyone without Broker's prior written approval;
   C. not negotiate with any prospective tenant who might contact Owner directly, but refer all prospective tenants to Broker;
   D. not deal with or negotiate with any tenant in the Property concerning any matter related to the management or leasing of the Property but refer all such dealings to Broker;
   E. not enter into a listing agreement or property management agreement with another broker for the rental, leasing, or management of the Property to become effective during this agreement;
   F. provide Broker with copies of any existing leases or rental agreements related to the Property;
   G. provide Broker with keys and access devices to the Property;

(TAR-2201) 1-1-14   Initialed for Identification by: Broker/Associate _____ and Owner _____ , _____   Page 5 of 12

DocuSign Envelope ID: 135ECAC7-BF7A-4CC6-99BB-9779DDC15592

**25511 Budde Road - Bldg 30**

Leasing & Management Agreement concerning: **The Woodlands, TX   77380**

H.  provide Broker with copies of all warranties related to the Property or any item in the Property;

I.  tender to Broker any security deposits paid by any existing tenants in the Property;

J.  complete any disclosures or notices required by law or a lease of the Property;

K.  amend applicable notices and disclosures if any material change occurs during this agreement; and

L.  notify Broker if Owner becomes delinquent in the payment of: (1) any mortgage or other encumbrance secured by the Property; (2) property taxes; (3) property insurance; or (4) owners' association fees.

## 10. INSURANCE:

A.  At all times during this agreement, Owner must maintain in effect:

   (1)  a public liability insurance policy that names Broker as a co-insured or additional insured and covers losses related to the Property in an amount of not less than $ **500,000.00**_____ on an occurrence basis; and

   (2)  an insurance policy for the Property in an amount equal to the reasonable replacement cost of the Property's improvements and that contains endorsements which contemplate the leasing of the Property with vacancies between lease terms.

B.  Not later than the 15th day after the Commencement Date, Owner must deliver to Broker copies of certificates of insurance evidencing the coverage required under Paragraph 10A. If the coverage changes at any time during this agreement, Owner must deliver to Broker a copy of the insurance certificate evidencing the change not later than 10 days after the change.

C.  If Owner fails to comply with Paragraphs 10A or 10B, Broker may:

   (1)  purchase insurance that will provide Broker the same coverage as the required insurance under Paragraph 10A(1) and Owner must promptly reimburse Broker for such expense; or

   (2)  exercise Broker's remedies under Paragraph 17.

## 11. BROKER'S FEES:
All fees to Broker under this agreement are payable in _____ **Montgomery** County, Texas. This Paragraph 11 survives termination or expiration of this agreement with regard to fees earned during this agreement which are not payable until after its termination. Broker may deduct any fees under this Paragraph 11 from any funds Broker holds in trust for Owner. If more than one property or unit is made part of and subject to this agreement, each of the provisions below will apply to each property or unit separately.

☒  A.  Management Fees: Each month Owner will pay Broker the greater of $ _____ (minimum management fee) or: (Check one box only.)

☐  (1)  _____ % of the gross monthly rents collected that month.

☒  (2)  **$100.00 per month, flat fee**_____ .

   A vacancy in the Property or failure by a tenant to pay rent does not excuse payment of the minimum management fee. Management fees under this Paragraph 11A are earned daily and are payable not later than the last day of each month.

☒  B.  Leasing Fees for New Tenancies: Each time the Property is leased to a new tenant, Owner will pay Broker a leasing fee equal to: (Check one box only.)

☐  (1)  **100.000** % of one full month's rent to be paid under the lease.

☐  (2)  _____ % of the gross rents to be paid under the lease.

☐  (3)  _____ .

   The leasing fees under this Paragraph 11B are earned and payable at the time the lease is executed.

☒  C.  Renewal or Extension Fees: Each time a tenant in the Property renews or extends a lease, Owner will pay Broker a renewal or extension fee equal to: (Check one box only.)

☐  (1)  _____ % of one full month's rent to be paid under the renewal or extension.

☐  (2)  _____ % of the gross rents to be paid under the renewal or extension.

☒  (3)  **$200.00 for each lease renewal**_____ .

   The renewal or extension fees under this Paragraph 11C are earned and payable at the time the renewal or extension is effective. For the purposes of this paragraph, a new lease for the same

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Hazelwood

DocuSign Envelope ID: 135ECAC7-BF7A-4CC6-99BB-9779DDC15592

**25511 Budde Road - Bldg 30**

Leasing & Management Agreement concerning: **The Woodlands, TX  77380**

Property with the same tenant then occupying the Property is an extension or renewal. This Paragraph 11C does not apply to month-to-month renewals or month-to-month extensions.

☐ D. <u>Service Fees</u>: Each time Broker arranges for the Property to be repaired, maintained, redecorated, or altered as permitted by this agreement, Owner will pay Broker a service fee equal to: *(Check one box only.)*
    ☒ (1) **10.000** % of the total cost of each repair, maintenance, alteration, or redecoration.
    ☐ (2) _____ .
    The service fees under this Paragraph 11D are earned at the time the repair, maintenance, redecoration, or alteration is made and are payable upon Owner's receipt of Broker's invoice.

☒ E. <u>Interest on Trust Accounts</u>: Any trust account Broker maintains under this agreement may be an interest-bearing or income producing account. Broker may retain any interest or income from such account as compensation under this agreement. Broker will remove any interest or income payable under this Paragraph 11E from the trust account not later than the 30th day after the interest or income is paid.

☒ F. <u>Administrative Fees</u>: If Broker collects administrative charges from tenants or prospective tenants, including but not limited to, application fees, returned check fees, or late charges (as authorized under Paragraph 4A), Broker will retain such fees as compensation under this agreement. The administrative fees under this Paragraph 11F are earned and payable at the time Broker collects such fees.

☒ G. <u>Fees Related to Insurance and Legal Matters</u>: If Owner requests or instructs Broker to coordinate or communicate with any insurance carrier regarding any casualty to or on the Property or if Owner requests or instructs Broker to appear in any legal proceeding or deposition related to the Property (including, but not limited to, evictions, tenant disputes, security deposit disputes, and suits for damages), Owner will pay Broker $**30.00** per **hour** for Broker's time expended in such matters and in preparation of such matters. Fees under this Paragraph 11G are earned at the time the services are rendered and payable upon Owner's receipt of Broker's invoice.

☒ H. <u>Fees in the Event of a Sale</u>:

    (1) <u>Fee if a Tenant Purchases Property</u>: If at any time during this agreement or within _____ days after it ends, Owner sells the Property to a tenant who occupied the Property during the term of this agreement, Owner will pay Broker a fee equal to: *(Check one box only.)*
        ☒ (a) **6.000** % of the sales price.
        ☐ (b) _____ .
        Fees under this Paragraph 11H(1) are earned at the time Owner agrees to sell the Property and are payable at the time the sale closes. Broker will waive any fees due under Paragraph 12 at the time the sale closes.

    (2) <u>Fee if Buyer is Procured through Broker</u>: If during this agreement, Owner agrees to sell the Property to a person other than a tenant who occupied the Property and Broker procures the buyer, directly or through another broker, Owner will pay Broker a fee equal to: *(Check one box only.)*
        ☒ (a) **6.000** % of the sales price.
        ☐ (b) _____ .
        Fees under this Paragraph 11H(2) are earned at the time Owner agrees to sell the Property and are payable at the time the sale closes. Broker will waive any fees due under Paragraph 12 at the time the sale closes.

    (3) <u>Sale Coordination Fees</u>: If at any time during this agreement Owner agrees to sell the Property and Broker is not paid a fee under Paragraph 11H(1) or (2), Owner will pay Broker **500** _____ for Broker's time and services to coordinate showings, inspections, appraisals, repairs, and other related matters. Fees under this Paragraph 11H(3) are earned at the time such services are rendered and payable upon Owner's receipt of Broker's invoice.

    (4) <u>Definition</u>: "Sell" means to agree to sell, convey, transfer or exchange any interest in the Property whether by oral or written agreement or option.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Hazelwood

DocuSign Envelope ID: 135ECAC7-BF7A-4CC6-99BB-9779DDC15552

25511 Budde Road - Bldg 30

Leasing & Management Agreement concerning: **The Woodlands, TX   77380** _____

(5) Separate Listing Agreement Controls: If Owner sells the Property and pays Broker the fee under a separate written listing agreement between Owner and Broker: (a) this Paragraph 11H will not apply; and (b) Broker will waive any fees due under Paragraph 12 at the time the sale closes.

☐ I. Other:_____
_____
_____
_____ .

12. **FEES UPON TERMINATION:** At the time this agreement ends, Owner must pay Broker:
   A. all amounts due Broker under this agreement; and
   B. if the Property is leased to a tenant on the date this agreement ends and Owner terminates this agreement, an amount equal to the lesser of:
      (a) the management fees that would accrue over the remainder of the term of the lease; or
      (b) **$none** _____ .
   If more than one property or unit is made part of and subject to this agreement, this paragraph applies only to those properties or units then leased and applies to each property or unit separately.

13. **EXPENSE REIMBURSEMENT:** Upon Owner's receipt of Broker's invoice, Owner will reimburse Broker the following expenses that are related to the leasing or management of the Property: (a) copy charges; (b) charges for long distance telephone calls or facsimile transmissions; (c) regular, express, or certified mail charges; (d) notary fees; (e) photos and videos; (f) reasonable travel expenses, including but not limited to mileage reimbursement (at the standard mileage rate published by the IRS), parking expenses, and tolls; and (g) any other expenditures Broker is authorized to make under this agreement for Owner or that Owner otherwise authorizes Broker to make for Owner.

14. **FUNDS RECEIVED AFTER TERMINATION:** Except as provided in Paragraph 4(I), if Broker receives any funds on behalf of Owner after this agreement ends (for example, rent, damages, past due amounts, and others), Broker will deposit those funds in Broker's trust account and will: (a) pay ____**5.000**____ % of the funds received to Broker as compensation for services (for example, research, accounting, communicating, and processing) rendered at that time; and (b) pay the balance of the funds to Owner. This provision survives termination of this agreement.

15. **COOPERATION WITH OTHER BROKERS:** When the Property is marketed for lease, Broker will allow other brokers to show the Property to prospective tenants. If the other broker procures a tenant who leases the Property, Broker will offer to pay the other broker a fee out of the compensation Broker receives under Paragraph 11. As of the date this agreement is signed, Broker's policy is to offer other brokers the following amounts. Broker may change the amounts disclosed below without notice, provided that Broker will offer competitively reasonable amounts to other brokers.

   A. MLS Participants: If the other broker is a participant in the MLS in which the listing is filed, Broker will offer to pay the other broker:

      (1) if the other broker represents the tenant *(complete only one)*:__**50.000**__ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____; and

      (2) if the other broker is a subagent *(complete only one)*:__**50.000**__ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____ .

   B. Non-MLS Brokers: If the other broker is not a participant in the MLS in which the listing is filed, Broker will offer to pay the other broker:

      (1) if the other broker represents the tenant *(complete only one)*:__**50.000**__ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____; and

      (2) if the other broker is a subagent *(complete only one)*:__**50.000**__ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____ .

DocuSign Envelope ID: 135ECAC7-BF7A-4CC6-99BB-9779DDC15592

25511 Budde Road - Bldg 30
Leasing & Management Agreement concerning: **The Woodlands, TX  77380**

### 16. LIABILITY AND INDEMNIFICATION:

A. Broker is not responsible or liable in any manner for personal injury to any person or for loss or damage to any person's real or personal property resulting from any act or omission not caused by Broker's negligence, including but not limited to injuries or damages caused by:
   (1) other brokers, their associates, inspectors, appraisers, and contractors who are authorized to access the Property;
   (2) acts of third parties (for example, vandalism, theft, or other criminal acts);
   (3) freezing or leaking water pipes;
   (4) failure to properly water the foundation of the Property;
   (5) a dangerous condition or environmental condition on the Property; or
   (6) the Property's non-compliance with any law or ordinance.

B. Broker is not responsible or liable in any manner for:
   (1) any late fees or other charges Owner incurs to any creditor caused by late or insufficient payments by any tenant in the Property; or
   (2) damages to Owner caused by a tenant's breach of a lease.

C. Owner agrees to protect, defend, indemnify, and hold Broker harmless from any damage, costs, attorney's fees, and expenses that:
   (1) are caused by Owner, negligently or otherwise;
   (2) arise from Owner's failure to disclose any material or relevant information about the Property;
   (3) are caused by Owner giving incorrect information to any person; or
   (4) are related to the management of the Property and are not caused by Broker, negligently or otherwise.

D. Owner is responsible and liable for all contracts and obligations related to the Property (for example, maintenance, service, repair and utility agreements) entered into before or during this agreement by Owner or by Broker under Broker's authority under this agreement. Owner agrees to hold Broker harmless from all claims related to any such contracts.

### 17. DEFAULT: 
A party is in default if the party fails to cure a breach within 10 days after receipt of written demand from the other party. If either party is in default, the non-defaulting party may: (a) terminate this agreement by providing at least 10 days written notice; (b) recover all amounts due to the non-defaulting party under this agreement; (c) recover reasonable collection costs and attorney's fees; and (d) exercise any other remedy available at law. Broker is also entitled to recover any compensation Broker would have been entitled to receive if Owner did not breach this agreement.

### 18. MEDIATION: 
The parties agree to negotiate in good faith in an effort to resolve any dispute related to this agreement that may arise between the parties. If the dispute cannot be resolved by negotiation, the dispute will be submitted to mediation. The parties to the dispute will choose a mutually acceptable mediator and will share the cost of mediation equally.

### 19. ATTORNEY'S FEES: 
If Owner or Broker is a prevailing party in any legal proceeding brought as a result of a dispute under this agreement or any transaction related to or contemplated by this agreement, such party will be entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

### 20. SPECIAL PROVISIONS:

(TAR-2201) 1-1-14    Initialed for Identification by: Broker/Associate _XVC_ and Owner _JF_ , _____    Page 9 of 12

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    Hazelwood

DocuSign Envelope ID: 135ECAC7-BF7A-4CC6-99BB-9779DDC15592

25511 Budde Road - Bldg 30
Leasing & Management Agreement concerning: **The Woodlands, TX   77380**

21. **ADDENDA:** Incorporated into this agreement are the following addenda, exhibits, and other information:
☑ A. Information About Brokerage Services
☐ B. Addendum Regarding Lead-Based Paint
☐ C. Multiple Property Addendum
☐ D. Owner's Notice Concerning Condition of Property under Property Management Agreement
☐ E. Property Manager's Inventory and Condition Report
☐ F. Addendum for Authorization to Act for Owner before Owners' Association
☐ G. Copy of Rules and Regulations of an Owners' Association
☐ H. Copy of the Owners' Association Bylaws and Deed Restrictions affecting the Property
☐ I. _____

*Note: Complete and deliver to Broker IRS W-9 Form or similar form. Broker maintains a privacy policy that is available upon request.*

22. **AGREEMENT OF PARTIES:**

A. <u>Entire Agreement</u>: This document contains the entire agreement of the parties and may not be changed except by written agreement.

B. <u>Assignments</u>: Neither party may assign this agreement without the written consent of the other party.

C. <u>Binding Effect</u>: Owner's obligation to pay Broker an earned fee is binding upon Owner and Owner's heirs, administrators, executors, successors, and permitted assignees.

D. <u>Joint and Several</u>: All Owners executing this agreement are jointly and severally liable for the performance of all its terms. Any act or notice to, refund to, or signature of, any one or more of the Owners regarding any term of this agreement, its extension, its renewal, or its termination is binding on all Owners executing this agreement.

E. <u>Governing Law</u>: Texas law governs the interpretation, validity, performance, and enforcement of this agreement.

F. <u>Severability</u>: If a court finds any clause in this agreement invalid or unenforceable, the remainder of this agreement will not be affected and all other provisions of this agreement will remain valid and enforceable.

G. <u>Context</u>: When the context requires, singular nouns and pronouns include the plural.

H. <u>Notices</u>: Notices between the parties must be in writing and are effective when sent to the receiving party's address, fax, or e-mail address specified in Paragraph 1.

I. <u>Copyright</u>: If an active REALTOR® member of the Texas Association of REALTORS® does not negotiate this agreement as a party or for one of the parties, with or without the assistance of an active member of the State Bar of Texas, this agreement is voidable at will by Owner.

23. **INFORMATION:**

A. **Broker's fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested, or maintained by the Association of REALTORS®, MLS, or any listing service.**

B. **In accordance with fair housing laws and the National Association of REALTORS® Code of Ethics, Broker's services must be provided and the Property must be shown and made available to all persons without regard to race, color, religion, national origin, sex, disability, familial status, sexual orientation, or gender identity. Local ordinances may provide for additional protected classes (for example, creed, status as a student, marital status, or age).**

C. **Owner may review the information Broker submits to an MLS or other listing service.**

**25511 Budde Road - Bldg 30**
Leasing & Management Agreement concerning: **The Woodlands, TX   77380**

D. **Broker advises Owner to remove or secure jewelry, prescription drugs, and other valuables.**

E. **The Property Code requires the Property to be equipped with certain types of locks and security devices, including (with some exceptions): (1) window latches on each window; (2) a keyed doorknob lock or keyed deadbolt lock on each exterior door; (3) a sliding door pin lock on each exterior sliding glass door of the dwelling; (4) a sliding door handle latch or a sliding door security bar on each exterior sliding glass door of the dwelling; and (5) a keyless bolting device and a door viewer on each exterior door of the dwelling. The Property Code also requires smoke alarms in certain locations. The Property Code requires the security devices to be rekeyed and the smoke alarms to be tested each time a new tenant occupies the Property.**

F. **Broker cannot give legal advice. READ THIS AGREEMENT CAREFULLY. If you do not understand the effect of this agreement, consult an attorney BEFORE signing.**

---

**Blavesco, LTD**
Broker's Printed Name        **9003447** License No.

*Heather Carlile*        7/29/2015
☒ Broker's Signature        Date
☐ Broker's Associate's Signature, as an authorized agent of Broker

**Heather L Carlile    (832) 850.4849**
Broker's Associate's Printed Name, if applicable

**Jeff Fisher**
Owner's Printed Name

*Jeff Fisher*        7/27/2015    **07/27/2015**
Owner's Signature        Date

Owner's Printed Name

Owner's Signature        Date

---

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com        Hazelwood

DocuSign Envelope ID: 135ECAC7-BF7A-4CC6-99BB-9779DDC15592

Leasing & Management Agreement concerning: **25511 Budde Road – Bldg 30**
**The Woodlands, TX   77380** _____

## Index to Residential Leasing and Property Management Agreement

| No. | Paragraph Description | Pg. | No. | Paragraph Description | Pg. |
|---|---|---|---|---|---|
| 1. | Parties | 1 | 13. | Expense Reimbursement | 8 |
| 2. | Property | 1 | 14. | Funds Received after Termination | 8 |
| 3. | Term | 1 | 15. | Cooperation with Other Brokers | 8 |
|  | A. Primary Term |  | 16. | Liability and Indemnification | 9 |
|  | B. Automatic Extension |  | | | |
|  | C. Effective Services | 2 | 17. | Default | 9 |
|  | D. Fees Upon Termination |  | 18. | Mediation | 9 |
| 4. | Authority of Broker | 2 | 19. | Attorney's Fees | 9 |
|  | A. Leasing and Management Authority |  | 20. | Special Provisions | 10 |
|  | B. Record Keeping | 3 | | | |
|  | C. Security Deposits |  | 21. | Addenda | 10 |
|  | D. Deductions and Offset |  | 22. | Agreement of the Parties | 10 |
|  | E. Insurance and Attorneys |  | | A. Entire Agreement | |
|  | F. Information about Trust Accounts, MLS, and Keybox |  | | B. Assignments | |
|  | G. Performance Standard | 4 | | C. Binding Effect | |
|  | H. Inability to Contact Owner |  | | D. Joint and Several | |
|  | I. Foreclosure |  | | E. Governing Law | |
| 5. | Legal Compliance | 4 | | F. Severability | |
| 6. | Reserves | 4 | | G. Context | |
| 7. | Advances | 4 | | H. Notices | |
| 8. | Owner's Representations | 5 | | I. Copyright | 11 |
|  | A. General |  | 23. | Information | 11 |
|  | B. Property Condition |  | | | |
|  | C. Lead-Based Paint |  | | | |
| 9. | Owner's Cooperation | 5 | | | |
| 10. | Insurance | 6 | | | |
| 11. | Broker's Fees | 6 | | | |
|  | A. Management Fees |  | | | |
|  | B. Leasing Fees for New Tenancies |  | | | |
|  | C. Renewal or Extension Fees | 6 | | | |
|  | D. Service Fees | 7 | | | |
|  | E. Interest on Trust Accounts |  | | | |
|  | F. Administrative Fees |  | | | |
|  | G. Fees Related to Insurance and Legal Matters |  | | | |
|  | H. Fees in the Event of a Sale |  | | | |
|  | I. Other | 8 | | | |
| 12. | Fees Upon Termination | 8 | | | |

(TAR-2201) 1-1-14   Initialed for Identification by: Broker/Associate _____ and Owner _____ , _____   Page 12 of 12

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   Hazelwood

DocuSign Envelope ID: 968B282F-9C40-4968-881D-72C6A1E9B9D2



TEXAS ASSOCIATION OF REALTORS®
# RESIDENTIAL LEASING AND PROPERTY MANAGEMENT AGREEMENT
USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2014

**1. PARTIES:**

A. The parties to this agreement are:

Owner: **Hazelwood Management Services, LLC**

Address: **PO Box 9993**
City, State, Zip: **The Woodlands, TX 77387**
Hm. Phone: _____ Wk. Ph: **(816) 646-9819** _____ Mobile: _____
Fax: **(832) 381-3768** _____ E-Mail: **jeff@jefffisher.com**
Additional Phones or Contact Information: **jeff@jefffisher.com**

Broker: **Blavesco. LTD**
Address: **25511 Budde Road Ste 1501**
City, State, Zip: **The Woodlands, TX   77380**
Phone: **(832) 850-4849** _____ Fax: **(832) 381-3768**
E-Mail: **heather@blavesco.com**

B. If Owner is not an individual, Owner is a: ☐ estate  ☐ corporation  ☒ limited liability company (LLC)  ☐ trust  ☐ partnership  ☐ limited liability partnership (LLP)  ☐ other _____ , which was chartered or created in _____**TEXAS**_____ (State). The individual signing this agreement for the owner represents to Broker that he or she has the authority to bind Owner to this agreement, to act for Owner, and is acting under his capacity as _____**Director**_____ (title) for the Owner.

C. Owner appoints Broker as Owner's sole and exclusive leasing and managing agent of the real property described in Paragraph 2 and in any addendum to this agreement.

**2. PROPERTY:** "Property" means:

Address (include unit nos.) **EXH A, , TX**

legally described as: **Per Exhibit A**

in _____**Harris/Montgomery**_____ County, Texas, together with the following non-real-property items: **Range, Dishwasher, Mini Blinds** .

"Property" also includes any other Property described in any attached Multiple Property Addendum.

**3. TERM:**

A. Primary Term: The primary term of this agreement begins and ends as follows:

Commencement Date: _____**June 30, 2013**_____ Expiration Date: _____**June 30, 2016**_____

B. Automatic Extension: Unless either party provides written notice of termination to the other party at least 30 days before the Expiration Date, this agreement will automatically extend on a monthly basis until either party terminates by providing at least 30 days written notice to the other party.

Blavesco, LTD, 25511 Budde Road, Ste 1801 The Woodlands, TX 77380                     Phone: 936-672-7671          Fax: 832-381-3768
Heather Carlisle                     Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    Property

DocuSign Envelope ID: 968B282F-9C40-4968-881D-72C6A1E9B9D2

**EXH A**

Leasing & Management Agreement concerning: _____

C. <u>Effective Services</u>: If Broker determines that Broker cannot continue to effectively provide leasing and management services to Owner for any reason at any time during this agreement Broker may terminate this agreement by providing at least 30 days written notice to Owner.

D. <u>Fees Upon Termination</u>: At the time this agreement ends, Owner must pay Broker amounts specified in Paragraph 12.

**4. AUTHORITY OF BROKER:**

A. <u>Leasing and Management Authority</u>: Owner grants to Broker the following authority which Broker may exercise when and to the extent Broker determines to be in Owner's interest:
(1) advertise the Property for lease at Owner's expense by means and methods that Broker determines are reasonably competitive, including but not limited to creating and placing advertisements with interior and exterior photographic and audio-visual images of the Property and related information in any media and the Internet;
(2) place "For Lease" signs or other signs on the Property in accordance with applicable laws, regulations, ordinances, restrictions, and owners' association rules;
(3) remove all other signs offering the Property for sale or lease;
(4) submit the Property as a listing with one or more Multiple Listing Services (MLS) at any time the Property is marketed for lease and to change or terminate such listings;
(5) authorize other brokers, their associates, inspectors, appraisers, and contractors to access the Property at reasonable times for purposes contemplated by this agreement and to lend keys and disclose security codes to such persons to enter the Property;
(6) duplicate keys and access devices, at Owner's expense, to facilitate convenient and efficient showings of the Property and to lease the Property;
(7) place a keybox on the Property;
(8) employ scheduling companies to schedule showings by other brokers at any time the Property is marketed for lease;
(9) verify information and references in rental applications from prospective tenants;
(10) negotiate and execute leases on Owner's behalf for the Property at market rates and on competitively reasonable terms for initial terms of not less than ____12____ months and not more than ____36____ months and in accordance with any instructions in Paragraph 20;
(11) negotiate and execute any amendments, extensions, or renewals to any leases for the Property on Owner's behalf;
(12) terminate leases for the Property, negotiate lease terminations, and serve notices of termination;
(13) collect and deposit for Owner rents, security deposits, and other funds related to the Property in a trust account and pay from that account: (a) any compensation and reimbursements due Broker under this agreement; and (b) other persons as this agreement may authorize.
(14) account for security deposits that Broker holds in trust to any tenants in the Property in accordance with applicable law, this agreement, and any lease of the Property and make deductions from the deposits in accordance with the lease and applicable law;
(15) collect administrative charges including but not limited to, application fees, returned check fees, and late charges from tenants in the Property or from prospective tenants;
(16) institute and prosecute, at Owner's expense, actions to: (a) evict tenants in the Property; (b) recover possession of the Property; or (c) recover lost rent and other damages;
(17) settle, compromise, or withdraw any action described in Paragraph 4A(16);
(18) negotiate and make reasonable concessions to tenants or former tenants in the Property;
(19) report payment histories of tenants in the Property to consumer reporting agencies;
(20) obtain information from any holder of a note secured by a lien on the Property and any insurance company insuring all or part of the Property;

**EXH A**

Leasing & Management Agreement concerning: _____

(21) hire contractors to repair, maintain, redecorate, or alter the Property provided that Broker does not expend more than $ <u>500.00</u> for any single repair, maintenance item, redecoration, or alteration without Owner's consent;

(22) hire contractors to make emergency repairs to the Property without regard to the expense limitation in Paragraph 4A(21) that Broker determines are necessary to protect the Property or the health or safety of an ordinary tenant;

(23) contract, at Owner's expense, in either Broker's or Owner's name, for utilities and maintenance to the Property during times that the Property is vacant, including but not limited to, electricity, gas, water, alarm monitoring, cleaning, pool and spa maintenance, yard maintenance, and other regularly recurring expenses that Broker determines are reasonable to maintain and care for the Property; and

(24) perform other necessary services related to the leasing and management of the Property.

B. <u>Record Keeping</u>: Broker will:
(1) maintain accurate records related to the Property and retain such records for not less than 4 years;
(2) file reports with the Internal Revenue Service related to funds received on behalf of Owner under this agreement (for example, Form 1099); and
(3) remit, each month, the following items to Owner: (a) funds collected by Broker for Owner under this agreement, less authorized deductions; and (b) a statement of receipts, disbursements, and charges. Owner may instruct Broker in writing to remit the items to another person or address.

C. <u>Security Deposits</u>:
(1) During this agreement, Broker will maintain security deposits received from tenants in a trust account and will account to the tenants for the security deposits in accordance with the leases for the Property.
(2) Except as stated in Paragraph 4(I), after this agreement ends, Broker will deliver to Owner or the Owner's designee the security deposit held by Broker under an effective lease of the Property, less deductions authorized by this agreement, and will send written notice to the tenant that states all of the following:
(a) that this agreement has ended;
(b) the exact dollar amount of the security deposit;
(c) the contact information for the Owner or the Owner's designee; and
(d) that Owner is responsible for accounting for and returning the tenant's security deposit.
(3) If Broker complies with this Paragraph 4C, Owner will indemnify Broker from any claim or loss from a tenant for the return of a security deposit. This Paragraph 4C survives termination of this agreement.

D. <u>Deductions and Offset</u>: Broker may disburse from any funds Broker holds in a trust account for Owner:
(1) any compensation due Broker under this agreement;
(2) any funds Broker is authorized to expend under this agreement; and
(3) any reimbursement Broker is entitled to receive under this agreement.

E. <u>Insurance and Attorneys</u>:
(1) Broker may not file a claim for a casualty loss with the carrier insuring the Property. Broker may communicate with the carrier to facilitate the processing of any claim Owner may file or other matters that Owner instructs Broker to communicate to the carrier.
(2) Broker may not directly or indirectly employ or pay a lawyer to represent Owner. Broker may communicate with Owner's attorney in accordance with Owner's instructions.

F. <u>Information about Trust Accounts, MLS, and Keybox</u>:

DocuSign Envelope ID: 968B282F-9C40-4968-881D-72C6A1E9B9D2

**EXH A**

Leasing & Management Agreement concerning: _____

    (1) <u>Trust Accounts</u>: A trust account must be separate from Broker's operating account and must be designated as a trust, property management, or escrow account or other similar name. Broker may maintain one trust account for all properties Broker leases and manages for others.

    (2) <u>MLS</u>: MLS rules require Broker to accurately and timely submit all information the MLS requires for participation including leased data. Subscribers to the MLS may use the information for market evaluation or appraisal purposes. Subscribers are other brokers and other real estate professionals such as appraisers and may include the appraisal district. Any information filed with the MLS becomes the property of the MLS for all purposes. *Submission of information to MLS ensures that persons who use and benefit from the MLS also contribute information.*

    (3) <u>Keybox</u>: A keybox is a locked container placed on the Property that holds a key to the Property. A keybox makes it more convenient for brokers, their associates, inspectors, appraisers, and contractors to show, inspect, or repair the Property. The keybox is opened by a special combination, key, or programmed device, so that authorized persons may enter the Property. Using a keybox will probably increase the number of showings, but involves risks (for example, unauthorized entry, theft, property damage, or personal injury). *Neither the Association of REALTORS® nor MLS requires the use of a keybox.*

G. <u>Performance Standard</u>: Broker will:
    (1) use reasonable care when exercising Broker's authority and performing under this agreement; and
    (2) exercise discretion when performing under this agreement in a manner that Broker believes to be in Owner's interest, provided that Broker will treat any tenant honestly and fairly.

H. <u>Inability to Contact Owner</u>: If Broker is unable to contact Owner for __**14**__ days, Broker is authorized to contact the person below for the sole purpose of attempting to reestablish contact with Owner.

    Name: _____**James Raymond Fisher**_____ Phone: ___**(936)239-1976**___
    Address: _____**#1 Coralvine Court The Woodlands, TX 77380**_____
    E-mail: _____**jay.fisher@blavesco.com**_____

I. <u>Foreclosure</u>: If Broker receives notice of the Owner's delinquency in the payment of: (1) any mortgage or other encumbrance secured by the Property; (2) property taxes; (3) property insurance; or (4) owners' association fees, Broker may give Owner 15 days to cure the delinquency during which period Owner authorizes Broker to freeze any funds held by Broker and no disbursements will be made to Owner related to this agreement or the Property. If after the 15 day period, the delinquency is not cured and the foreclosure process is initiated, Owner authorizes Broker to deduct from any other funds held by Broker for Owner any remaining Broker Fees or funds due to Broker related to services performed under this agreement. Additionally, Owner authorizes Broker to return any security deposit being held by Broker to a tenant of the Property in addition to any prorated amount of rent being held by Broker and Broker may terminate this agreement. This paragraph does not preclude the Broker from seeking any other remedies under this agreement or at law that may be available to the Broker.

**5. LEGAL COMPLIANCE:** The parties will comply with all obligations, duties, and responsibilities under the Texas Property Code, fair housing laws, and any other statute, administrative rule, ordinance, or restrictive covenant applicable to the use, leasing, management, or care of the Property.

**6. RESERVES:** Upon execution of this agreement, Owner will deposit the following amount with Broker to be held in a trust account as a reserve for Owner: $__**250.00**__ for each unit within the Property or Properties managed by Broker under this agreement. Broker may, at Broker's discretion, use the reserve to pay any expense related to the leasing and management of the Property(ies) (including but not limited to Broker's fees). If the balance of the reserve becomes less than the amount stated, at any time, Broker may: (a) deduct an amount that will bring the balance to the amount stated from any subsequent rent received on behalf of Owner and deposit the amount into the reserve; or (b) notify Owner that Owner must promptly deposit additional funds with Broker to bring the balance to the amount stated.

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com   Property

DocuSign Envelope ID: 968B282F-9C40-4968-881D-72C6A1E9B9D2

**EXH A**

Leasing & Management Agreement concerning: _____

**7. ADVANCES:** Owner will, in advance, provide Broker all funds necessary for the leasing and management of the Property. Broker is not obligated to advance any money to Owner or to any other person.

**8. OWNER'S REPRESENTATIONS:**

A. <u>General</u>:
   (1) Except as disclosed in Paragraph 20, Owner represents that:
      (a) Owner has fee simple title to and peaceable possession of the Property and all its improvements and fixtures, unless rented, and the legal capacity to lease the Property;
      (b) Owner is not bound by: (i) another agreement with another broker for the sale, exchange, lease, or management of the Property that is or will be in effect during this agreement; or (ii) an agreement or covenant that prohibits owner from leasing the property;
      (c) no person or entity has any right to purchase, lease, or acquire the Property by an option, right of refusal, or other agreement;
      (d) Owner is not delinquent in the payment of any property taxes, owners' association fees, property insurance, mortgage, or any encumbrance on or affecting the Property;
      (e) the Property is not subject to the jurisdiction of any court;
      (f) the optional user fees for the use of common areas (for example, pool or tennis courts) in the Property's subdivision are: <u>n/a</u>_____ ; and
      (g) all information related to the Property that Owner provides to Broker is true and correct to the best of Owner's knowledge.

   (2) Broker may disclose to a tenant or to a prospective tenant any information related to the representations made in this Paragraph 8.

B. <u>Property Condition</u>: Owner and Broker are obligated under law to disclose to a tenant or to a prospective tenant any known condition that materially and adversely affects the health or safety of an ordinary tenant. Owner is obligated under the Property Code to repair any such condition for a tenant. Owner represents that:
   (1) any pool or spa and any required enclosures, fences, gates, and latches comply with all applicable laws and ordinances; and
   (2) Owner is not aware of a condition concerning the Property that materially affects the health or safety of an ordinary tenant, except as stated below, in this agreement, or in any addendum:
   <u>none</u>_____
   _____
   _____ .

C. <u>Lead-Based Paint</u>: If the Property was built before 1978, Owner will complete and attach to this agreement an addendum regarding lead-based paint and lead-based paint hazards that will be made part of any lease of the Property. If the Property was built before 1978, federal law requires the Owner (before a tenant is obligated under a lease) to: (1) provide the tenant with the federally approved pamphlet on lead poisoning prevention; (2) disclose the presence of any known lead-based paint or hazards in the Property; and (3) deliver all records and reports to the tenant related to such paint or hazards.

**9. OWNER'S COOPERATION:** Owner agrees to:
A. cooperate with Broker to facilitate the showing, marketing, and lease of the Property;
B. not rent or lease the Property to anyone without Broker's prior written approval;
C. not negotiate with any prospective tenant who might contact Owner directly, but refer all prospective tenants to Broker;
D. not deal with or negotiate with any tenant in the Property concerning any matter related to the management or leasing of the Property but refer all such dealings to Broker;
E. not enter into a listing agreement or property management agreement with another broker for the rental, leasing, or management of the Property to become effective during this agreement;
F. provide Broker with copies of any existing leases or rental agreements related to the Property;
G. provide Broker with keys and access devices to the Property;

(TAR-2201) 1-1-14    Initialed for Identification by: Broker/Associate _BL_ and Owner _ML_ , _____    Page 5 of 12

DocuSign Envelope ID: 968B282F-9C40-4968-881D-72C6A1E9B9D2

**EXH A**

Leasing & Management Agreement concerning: _____

H.  provide Broker with copies of all warranties related to the Property or any item in the Property;
I.  tender to Broker any security deposits paid by any existing tenants in the Property;
J.  complete any disclosures or notices required by law or a lease of the Property;
K.  amend applicable notices and disclosures if any material change occurs during this agreement; and
L.  notify Broker if Owner becomes delinquent in the payment of: (1) any mortgage or other encumbrance secured by the Property; (2) property taxes; (3) property insurance; or (4) owners' association fees.

**10. INSURANCE:**

A.  At all times during this agreement, Owner must maintain in effect:
(1)  a public liability insurance policy that names Broker as a co-insured or additional insured and covers losses related to the Property in an amount of not less than $ <u>500,000.00</u> on an occurrence basis; and
(2)  an insurance policy for the Property in an amount equal to the reasonable replacement cost of the Property's improvements and that contains endorsements which contemplate the leasing of the Property with vacancies between lease terms.

B.  Not later than the 15th day after the Commencement Date, Owner must deliver to Broker copies of certificates of insurance evidencing the coverage required under Paragraph 10A. If the coverage changes at any time during this agreement, Owner must deliver to Broker a copy of the insurance certificate evidencing the change not later than 10 days after the change.

C.  If Owner fails to comply with Paragraphs 10A or 10B, Broker may:
(1)  purchase insurance that will provide Broker the same coverage as the required insurance under Paragraph 10A(1) and Owner must promptly reimburse Broker for such expense; or
(2)  exercise Broker's remedies under Paragraph 17.

**11. BROKER'S FEES:** All fees to Broker under this agreement are payable in <u>Montgomery</u> County, Texas. This Paragraph 11 survives termination or expiration of this agreement with regard to fees earned during this agreement which are not payable until after its termination. Broker may deduct any fees under this Paragraph 11 from any funds Broker holds in trust for Owner. <u>If more than one property or unit is made part of and subject to this agreement, each of the provisions below will apply to each property or unit separately.</u>

☒  A.  <u>Management Fees:</u> Each month Owner will pay Broker the greater of $ _____ (minimum management fee) or: *(Check one box only.)*
   ☒  (1)  <u>5.000</u> % of the gross monthly rents collected that month.
   ☐  (2)  _____ .
   A vacancy in the Property or failure by a tenant to pay rent does not excuse payment of the minimum management fee. Management fees under this Paragraph 11A are earned daily and are payable not later than the last day of each month.

☒  B.  <u>Leasing Fees for New Tenancies:</u> Each time the Property is leased to a new tenant, Owner will pay Broker a leasing fee equal to: *(Check one box only.)*
   ☒  (1)  <u>100.000</u> % of one full month's rent to be paid under the lease.
   ☐  (2)  _____ % of the gross rents to be paid under the lease.
   ☐  (3)  _____ .
   The leasing fees under this Paragraph 11B are earned and payable at the time the lease is executed.

☒  C.  <u>Renewal or Extension Fees:</u> Each time a tenant in the Property renews or extends a lease, Owner will pay Broker a renewal or extension fee equal to: *(Check one box only.)*
   ☐  (1)  _____ % of one full month's rent to be paid under the renewal or extension.
   ☐  (2)  _____ % of the gross rents to be paid under the renewal or extension.
   ☒  (3)  <u>150</u>_____ .
   The renewal or extension fees under this Paragraph 11C are earned and payable at the time the renewal or extension is effective. For the purposes of this paragraph, a new lease for the same

(TAR-2201) 1-1-14    Initialed for Identification by: Broker/Associate ___ and Owner ___ , _____    Page 6 of 12

DocuSign Envelope ID: 968B282F-9C40-4968-881D-72C6A1E9B9D2

**EXH A**

Leasing & Management Agreement concerning: _____

Property with the same tenant then occupying the Property is an extension or renewal. This Paragraph 11C does not apply to month-to-month renewals or month-to-month extensions.

☒ D. <u>Service Fees</u>: Each time Broker arranges for the Property to be repaired, maintained, redecorated, or altered as permitted by this agreement, Owner will pay Broker a service fee equal to: *(Check one box only.)*
  - ☐ (1) _____ % of the total cost of each repair, maintenance, alteration, or redecoration.
  - ☐ (2) _____ .
  The service fees under this Paragraph 11D are earned at the time the repair, maintenance, redecoration, or alteration is made and are payable upon Owner's receipt of Broker's invoice.

☒ E. <u>Interest on Trust Accounts</u>: Any trust account Broker maintains under this agreement may be an interest-bearing or income producing account. Broker may retain any interest or income from such account as compensation under this agreement. Broker will remove any interest or income payable under this Paragraph 11E from the trust account not later than the 30th day after the interest or income is paid.

☒ F. <u>Administrative Fees</u>: If Broker collects administrative charges from tenants or prospective tenants, including but not limited to, application fees, returned check fees, or late charges (as authorized under Paragraph 4A), Broker will retain such fees as compensation under this agreement. The administrative fees under this Paragraph 11F are earned and payable at the time Broker collects such fees.

☒ G. <u>Fees Related to Insurance and Legal Matters</u>: If Owner requests or instructs Broker to coordinate or communicate with any insurance carrier regarding any casualty to or on the Property or if Owner requests or instructs Broker to appear in any legal proceeding or deposition related to the Property (including, but not limited to, evictions, tenant disputes, security deposit disputes, and suits for damages), Owner will pay Broker $ <u>30.00</u> per <u>hour</u> for Broker's time expended in such matters and in preparation of such matters. Fees under this Paragraph 11G are earned at the time the services are rendered and payable upon Owner's receipt of Broker's invoice.

☒ H. <u>Fees in the Event of a Sale</u>:
  - (1) <u>Fee if a Tenant Purchases Property</u>: If at any time during this agreement or within _____ days after it ends, Owner sells the Property to a tenant who occupied the Property during the term of this agreement, Owner will pay Broker a fee equal to: *(Check one box only.)*
    - ☐ (a) <u>6.000</u> % of the sales price.
    - ☐ (b) _____ .
    Fees under this Paragraph 11H(1) are earned at the time Owner agrees to sell the Property and are payable at the time the sale closes. Broker will waive any fees due under Paragraph 12 at the time the sale closes.
  - (2) <u>Fee if Buyer is Procured through Broker</u>: If during this agreement, Owner agrees to sell the Property to a person other than a tenant who occupied the Property and Broker procures the buyer, directly or through another broker, Owner will pay Broker a fee equal to: *(Check one box only.)*
    - ☒ (a) <u>6.000</u> % of the sales price.
    - ☐ (b) _____ .
    Fees under this Paragraph 11H(2) are earned at the time Owner agrees to sell the Property and are payable at the time the sale closes. Broker will waive any fees due under Paragraph 12 at the time the sale closes.
  - (3) <u>Sale Coordination Fees</u>: If at any time during this agreement Owner agrees to sell the Property and Broker is not paid a fee under Paragraph 11H(1) or (2), Owner will pay Broker <u>500</u> _____ for Broker's time and services to coordinate showings, inspections, appraisals, repairs, and other related matters. Fees under this Paragraph 11H(3) are earned at the time such services are rendered and payable upon Owner's receipt of Broker's invoice.
  - (4) <u>Definition</u>: "Sell" means to agree to sell, convey, transfer or exchange any interest in the Property whether by oral or written agreement or option.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 968B282F-9C40-4968-881D-72C6A1E9B9D2

**EXH A**

Leasing & Management Agreement concerning: _____

    (5) <u>Separate Listing Agreement Controls</u>: If Owner sells the Property and pays Broker the fee under a separate written listing agreement between Owner and Broker: (a) this Paragraph 11H will not apply; and (b) Broker will waive any fees due under Paragraph 12 at the time the sale closes.

☐   I.   <u>Other</u>:_____
_____
_____
_____ .

12. **FEES UPON TERMINATION:** At the time this agreement ends, Owner must pay Broker:
    A. all amounts due Broker under this agreement; and
    B. if the Property is leased to a tenant on the date this agreement ends and Owner terminates this agreement, an amount equal to the lesser of:
        (a) the management fees that would accrue over the remainder of the term of the lease; or
        (b) $<u>none               </u> .
    If more than one property or unit is made part of and subject to this agreement, this paragraph applies only to those properties or units then leased and applies to each property or unit separately.

13. **EXPENSE REIMBURSEMENT:** Upon Owner's receipt of Broker's invoice, Owner will reimburse Broker the following expenses that are related to the leasing or management of the Property: (a) copy charges; (b) charges for long distance telephone calls or facsimile transmissions; (c) regular, express, or certified mail charges; (d) notary fees; (e) photos and videos; (f) reasonable travel expenses, including but not limited to mileage reimbursement (at the standard mileage rate published by the IRS), parking expenses, and tolls; and (g) any other expenditures Broker is authorized to make under this agreement for Owner or that Owner otherwise authorizes Broker to make for Owner.

14. **FUNDS RECEIVED AFTER TERMINATION:** Except as provided in Paragraph 4(I), if Broker receives any funds on behalf of Owner after this agreement ends (for example, rent, damages, past due amounts, and others), Broker will deposit those funds in Broker's trust account and will: (a) pay ____<u>5.000</u>____ % of the funds received to Broker as compensation for services (for example, research, accounting, communicating, and processing) rendered at that time; and (b) pay the balance of the funds to Owner. This provision survives termination of this agreement.

15. **COOPERATION WITH OTHER BROKERS:** When the Property is marketed for lease, Broker will allow other brokers to show the Property to prospective tenants. If the other broker procures a tenant who leases the Property, Broker will offer to pay the other broker a fee out of the compensation Broker receives under Paragraph 11. As of the date this agreement is signed, Broker's policy is to offer other brokers the following amounts. Broker may change the amounts disclosed below without notice, provided that Broker will offer competitively reasonable amounts to other brokers.

    A. <u>MLS Participants</u>: If the other broker is a participant in the MLS in which the listing is filed, Broker will offer to pay the other broker:

        (1) if the other broker represents the tenant *(complete only one)*: __<u>50.000</u>__ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____; and

        (2) if the other broker is a subagent *(complete only one)*:_____ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____ .

    B. <u>Non-MLS Brokers</u>: If the other broker is not a participant in the MLS in which the listing is filed, Broker will offer to pay the other broker:

        (1) if the other broker represents the tenant *(complete only one)*: __<u>50.000</u>__ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____; and

        (2) if the other broker is a subagent *(complete only one)*:_____ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____ .

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Property

DocuSign Envelope ID: 968B282F-9C40-4968-881D-72C6A1E9B9D2

**EXH A**

Leasing & Management Agreement concerning: _____

**16. LIABILITY AND INDEMNIFICATION:**

   **A.** Broker is not responsible or liable in any manner for personal injury to any person or for loss or damage to any person's real or personal property resulting from any act or omission not caused by Broker's negligence, including but not limited to injuries or damages caused by:
     (1) other brokers, their associates, inspectors, appraisers, and contractors who are authorized to access the Property;
     (2) acts of third parties (for example, vandalism, theft, or other criminal acts);
     (3) freezing or leaking water pipes;
     (4) failure to properly water the foundation of the Property;
     (5) a dangerous condition or environmental condition on the Property; or
     (6) the Property's non-compliance with any law or ordinance.

   **B.** Broker is not responsible or liable in any manner for:
     (1) any late fees or other charges Owner incurs to any creditor caused by late or insufficient payments by any tenant in the Property; or
     (2) damages to Owner caused by a tenant's breach of a lease.

   **C.** Owner agrees to protect, defend, indemnify, and hold Broker harmless from any damage, costs, attorney's fees, and expenses that:
     (1) are caused by Owner, negligently or otherwise;
     (2) arise from Owner's failure to disclose any material or relevant information about the Property;
     (3) are caused by Owner giving incorrect information to any person; or
     (4) are related to the management of the Property and are not caused by Broker, negligently or otherwise.

   **D.** Owner is responsible and liable for all contracts and obligations related to the Property (for example, maintenance, service, repair and utility agreements) entered into before or during this agreement by Owner or by Broker under Broker's authority under this agreement. Owner agrees to hold Broker harmless from all claims related to any such contracts.

**17. DEFAULT:** A party is in default if the party fails to cure a breach within 10 days after receipt of written demand from the other party. If either party is in default, the non-defaulting party may: (a) terminate this agreement by providing at least 10 days written notice; (b) recover all amounts due to the non-defaulting party under this agreement; (c) recover reasonable collection costs and attorney's fees; and (d) exercise any other remedy available at law. Broker is also entitled to recover any compensation Broker would have been entitled to receive if Owner did not breach this agreement.

**18. MEDIATION:** The parties agree to negotiate in good faith in an effort to resolve any dispute related to this agreement that may arise between the parties. If the dispute cannot be resolved by negotiation, the dispute will be submitted to mediation. The parties to the dispute will choose a mutually acceptable mediator and will share the cost of mediation equally.

**19. ATTORNEY'S FEES:** If Owner or Broker is a prevailing party in any legal proceeding brought as a result of a dispute under this agreement or any transaction related to or contemplated by this agreement, such party will be entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

**20. SPECIAL PROVISIONS:**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 968B282F-9C40-4968-881D-72C6A1E9B9D2

**EXH A**

Leasing & Management Agreement concerning: _____

**21. ADDENDA:** Incorporated into this agreement are the following addenda, exhibits, and other information:
- ☑ A. Information About Brokerage Services
- ☐ B. Addendum Regarding Lead-Based Paint
- ☐ C. Multiple Property Addendum
- ☐ D. Owner's Notice Concerning Condition of Property under Property Management Agreement
- ☐ E. Property Manager's Inventory and Condition Report
- ☐ F. Addendum for Authorization to Act for Owner before Owners' Association
- ☐ G. Copy of Rules and Regulations of an Owners' Association
- ☐ H. Copy of the Owners' Association Bylaws and Deed Restrictions affecting the Property
- ☐ I. _____

*Note: Complete and deliver to Broker IRS W-9 Form or similar form. Broker maintains a privacy policy that is available upon request.*

**22. AGREEMENT OF PARTIES:**

A. <u>Entire Agreement</u>: This document contains the entire agreement of the parties and may not be changed except by written agreement.

B. <u>Assignments</u>: Neither party may assign this agreement without the written consent of the other party.

C. <u>Binding Effect</u>: Owner's obligation to pay Broker an earned fee is binding upon Owner and Owner's heirs, administrators, executors, successors, and permitted assignees.

D. <u>Joint and Several</u>: All Owners executing this agreement are jointly and severally liable for the performance of all its terms. Any act or notice to, refund to, or signature of, any one or more of the Owners regarding any term of this agreement, its extension, its renewal, or its termination is binding on all Owners executing this agreement.

E. <u>Governing Law</u>: Texas law governs the interpretation, validity, performance, and enforcement of this agreement.

F. <u>Severability</u>: If a court finds any clause in this agreement invalid or unenforceable, the remainder of this agreement will not be affected and all other provisions of this agreement will remain valid and enforceable.

G. <u>Context</u>: When the context requires, singular nouns and pronouns include the plural.

H. <u>Notices</u>: Notices between the parties must be in writing and are effective when sent to the receiving party's address, fax, or e-mail address specified in Paragraph 1.

I. <u>Copyright</u>: If an active REALTOR® member of the Texas Association of REALTORS® does not negotiate this agreement as a party or for one of the parties, with or without the assistance of an active member of the State Bar of Texas, this agreement is voidable at will by Owner.

**23. INFORMATION:**

**A. Broker's fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested, or maintained by the Association of REALTORS®, MLS, or any listing service.**

**B. In accordance with fair housing laws and the National Association of REALTORS® Code of Ethics, Broker's services must be provided and the Property must be shown and made available to all persons without regard to race, color, religion, national origin, sex, disability, familial status, sexual orientation, or gender identity. Local ordinances may provide for additional protected classes (for example, creed, status as a student, marital status, or age).**

**C. Owner may review the information Broker submits to an MLS or other listing service.**

DocuSign Envelope ID: 968B282F-9C40-4968-881D-72C6A1E9B9D2

**EXH A**

Leasing & Management Agreement concerning: _____

    **D. Broker advises Owner to remove or secure jewelry, prescription drugs, and other valuables.**

    **E. The Property Code requires the Property to be equipped with certain types of locks and security devices, including (with some exceptions): (1) window latches on each window; (2) a keyed doorknob lock or keyed deadbolt lock on each exterior door; (3) a sliding door pin lock on each exterior sliding glass door of the dwelling; (4) a sliding door handle latch or a sliding door security bar on each exterior sliding glass door of the dwelling; and (5) a keyless bolting device and a door viewer on each exterior door of the dwelling. The Property Code also requires smoke alarms in certain locations. The Property Code requires the security devices to be rekeyed and the smoke alarms to be tested each time a new tenant occupies the Property.**

    **F. Broker cannot give legal advice. READ THIS AGREEMENT CAREFULLY. If you do not understand the effect of this agreement, consult an attorney BEFORE signing.**

| | |
|---|---|
| Blavesco. LTD | Arica Lane, LLC |
| Broker's Printed Name      0443914 License No. | Owner's Printed Name |
| ☒ Broker's Signature      06/30/2013   Date | Owner's Signature      06/30/2013   Date |
| ☐ Broker's Associate's Signature, as an authorized agent of Broker | |
| | |
| Heather L Carlile | Jeff Fisher |
| Broker's Associate's Printed Name, if applicable | Owner's Printed Name |
| | |
| | Owner's Signature      Date |

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Property

DocuSign Envelope ID: 968B282F-9C40-4968-881D-72C6A1E9B9D2

**EXH A**

Leasing & Management Agreement concerning: _____

### Index to Residential Leasing and Property Management Agreement

| **No.** | **Paragraph Description** | **Pg.** | **No.** | **Paragraph Description** | **Pg.** |
|---|---|---|---|---|---|
| 1. | Parties | 1 | 13. | Expense Reimbursement | 8 |
| 2. | Property | 1 | 14. | Funds Received after Termination | 8 |
| 3. | Term | 1 | 15. | Cooperation with Other Brokers | 8 |
|  | A. Primary Term |  | 16. | Liability and Indemnification | 9 |
|  | B. Automatic Extension |  |  |  |  |
|  | C. Effective Services | 2 | 17. | Default | 9 |
|  | D. Fees Upon Termination |  | 18. | Mediation | 9 |
| 4. | Authority of Broker | 2 | 19. | Attorney's Fees | 9 |
|  | A. Leasing and Management Authority |  | 20. | Special Provisions | 10 |
|  | B. Record Keeping | 3 | 21. | Addenda | 10 |
|  | C. Security Deposits |  | 22. | Agreement of the Parties | 10 |
|  | D. Deductions and Offset |  |  | A. Entire Agreement |  |
|  | E. Insurance and Attorneys |  |  | B. Assignments |  |
|  | F. Information about Trust Accounts, MLS, and Keybox |  |  | C. Binding Effect |  |
|  | G. Performance Standard | 4 |  | D. Joint and Several |  |
|  | H. Inability to Contact Owner |  |  | E. Governing Law |  |
|  | I. Foreclosure |  |  | F. Severability |  |
| 5. | Legal Compliance | 4 |  | G. Context |  |
| 6. | Reserves | 4 |  | H. Notices |  |
| 7. | Advances | 4 |  | I. Copyright | 11 |
| 8. | Owner's Representations | 5 | 23. | Information | 11 |
|  | A. General |  |  |  |  |
|  | B. Property Condition |  |  |  |  |
|  | C. Lead-Based Paint |  |  |  |  |
| 9. | Owner's Cooperation | 5 |  |  |  |
| 10. | Insurance | 6 |  |  |  |
| 11. | Broker's Fees | 6 |  |  |  |
|  | A. Management Fees |  |  |  |  |
|  | B. Leasing Fees for New Tenancies |  |  |  |  |
|  | C. Renewal or Extension Fees | 6 |  |  |  |
|  | D. Service Fees | 7 |  |  |  |
|  | E. Interest on Trust Accounts |  |  |  |  |
|  | F. Administrative Fees |  |  |  |  |
|  | G. Fees Related to Insurance and Legal Matters |  |  |  |  |
|  | H. Fees in the Event of a Sale |  |  |  |  |
|  | I. Other | 8 |  |  |  |
| 12. | Fees Upon Termination | 8 |  |  |  |

(TAR-2201) 1-1-14   Initialed for Identification by: Broker/Associate _____ and Owner _____ , _____

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Property

DocuSign Envelope ID: 968B282F-9C40-4968-881D-72C6A1E9B9D2



**BLAVESCO**
Brokerage | Investment | Property Management

## EXHIBIT A

| | | |
|---|---|---|
| 1616A Hazelwood Street | 1616A Hazelwood Street Conroe, TX 77301 | |
| 1616B Hazelwood Street | 1616B Hazelwood Street Conroe, TX 77301 | |
| 1733 Hazelwood Street | 1733 Hazelwood Street Conroe, TX 77301 | |
| 1735 Hazelwood Street | 1735 Hazelwood Street Conroe, TX 77301 | |
| 1736 Hazelwood Street | 1736 Hazelwood Street Conroe, TX 77301 | |
| 1737 Hazelwood Street | 1737 Hazelwood Street Conroe, TX 77301 | |
| 1738 Hazelwood Street | 1738 Hazelwood Street Conroe, TX 77301 | |
| 1739 Hazelwood Street | 1739 Hazelwood Street Conroe, TX 77301 | |
| 5625 Antoine # 203 | 5625 Antoine Drive Unit 203 Houston, TX 77091 | |
| 5625 Antoine #1106 | 5625 Antoine Drive Unit #1106 Houston, TX 77091 | |
| 5625 Antoine 702 | 5625 Antoine Drive Unit 702 Houston, TX 77091 | |

25511 Budde Rd Ste 1801 ~ The Woodlands, TX ~ 77387
Phone: 832.850-4849 Fax: 832-381-3768

DocuSign Envelope ID: 968B282F-9C40-4968-881D-72C6A1E9B9D2



**Approved by the Texas Real Estate Commission for Voluntary Use**
*Texas law requires all real estate licensees to give the following information about brokerage services to prospective buyers, tenants, sellers and landlords.*

10-10-11

# Information About Brokerage Services

Before working with a real estate broker, you should know that the duties of a broker depend on whom the broker represents. If you are a prospective seller or landlord (owner) or a prospective buyer or tenant (buyer), you should know that the broker who lists the property for sale or lease is the owner's agent. A broker who acts as a subagent represents the owner in cooperation with the listing broker. A broker who acts as a buyer's agent represents the buyer. A broker may act as an intermediary between the parties if the parties consent in writing. A broker can assist you in locating a property, preparing a contract or lease, or obtaining financing without representing you. A broker is obligated by law to treat you honestly.

**IF THE BROKER REPRESENTS THE OWNER:**
The broker becomes the owner's agent by entering into an agreement with the owner, usually through a written - listing agreement, or by agreeing to act as a subagent by accepting an offer of subagency from the listing broker. A subagent may work in a different real estate office. A listing broker or subagent can assist the buyer but does not represent the buyer and must place the interests of the owner first. The buyer should not tell the owner's agent anything the buyer would not want the owner to know because an owner's agent must disclose to the owner any material information known to the agent.

**IF THE BROKER REPRESENTS THE BUYER:**
The broker becomes the buyer's agent by entering into an agreement to represent the buyer, usually through a written buyer representation agreement. A buyer's agent can assist the owner but does not represent the owner and must place the interests of the buyer first. The owner should not tell a buyer's agent anything the owner would not want the buyer to know because a buyer's agent must disclose to the buyer any material information known to the agent.

**IF THE BROKER ACTS AS AN INTERMEDIARY:**
A broker may act as an intermediary between the parties if the broker complies with The Texas Real Estate License Act. The broker must obtain the written consent of each party to the transaction to act as an intermediary. The written consent must state who will pay the broker and, in conspicuous bold or underlined print, set forth the broker's obligations as an intermediary. The broker is required to treat each party honestly and fairly and to comply with The Texas Real Estate License Act. A broker who acts as an intermediary in a transaction:

(1) shall treat all parties honestly;

(2) may not disclose that the owner will accept a price less than the asking price unless authorized in writing to do so by the owner;

(3) may not disclose that the buyer will pay a price greater than the price submitted in a written offer unless authorized in writing to do so by the buyer; and

(4) may not disclose any confidential information or any information that a party specifically instructs the broker in writing not to disclose unless authorized in writing to disclose the information or required to do so by The Texas Real Estate License Act or a court order or if the information materially relates to the condition of the property.

With the parties' consent, a broker acting as an intermediary between the parties may appoint a person who is licensed under The Texas Real Estate License Act and associated with the broker to communicate with and carry out instructions of one party and another person who is licensed under that Act and associated with the broker to communicate with and carry out instructions of the other party.

**If you choose to have a broker represent you,** you should enter into a written agreement with the broker that clearly establishes the broker's obligations and your obligations. The agreement should state how and by whom the broker will be paid. You have the right to choose the type of representation, if any, you wish to receive. Your payment of a fee to a broker does not necessarily establish that the broker represents you. If you have any questions regarding the duties and responsibilities of the broker, you should resolve those questions before proceeding.

Real estate licensee asks that you acknowledge receipt of this information about brokerage services for the licensee's records.

*Arica Lane, LLC*
_____     June 30, 2013
Buyer, Seller, Landlord or Tenant                              Date
Arica Lane, LLC, Jeff Fisher

Texas Real Estate Brokers and Salespersons are licensed and regulated by the Texas Real Estate Commission (TREC). If you have a question or complaint regarding a real estate licensee, you should contact TREC at P.O. Box 12188, Austin, Texas 78711-2188 , 512-936-3000 (http://www.trec.texas.gov)

TREC No. OP-K

*30 DAY TERMINATION*

DocuSign Envelope ID: 8A2FF8C1-8AA4-47BF-AFA9-81AA545A801A



TEXAS ASSOCIATION OF REALTORS®

## RESIDENTIAL LEASING AND PROPERTY MANAGEMENT AGREEMENT

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2014

1. **PARTIES:**

   A. The parties to this agreement are:

   Owner: **Reims Holdings, LLC**

   Address: **PO Box 9993**
   City, State, Zip: **The Woodlands, TX 77387**
   Hm. Phone: _____ Wk. Ph: **(816) 646-9819** _____ Mobile: _____
   Fax: **(832) 381-3768** _____ E-Mail: **jeff@jefffisher.com**
   Additional Phones or Contact Information: **jeff@jefffisher.com**


   Broker: **Blavesco. LTD**                                          **Heather Carlile**
   Address: **25511 Budde Road Ste 1501**
   City, State, Zip: **The Woodlands, TX 77380**
   Phone: **(396) 672-7671** _____ Fax: **(832) 850-4849**
   E-Mail: **heather@blavesco.com**

   B. If Owner is not an individual, Owner is a: ☐ estate ☐ corporation ☒ limited liability company (LLC) ☐ trust ☐ partnership ☐ limited liability partnership (LLP) ☐ other _____ , which was chartered or created in _____ **TEXAS** _____ (State). The individual signing this agreement for the owner represents to Broker that he or she has the authority to bind Owner to this agreement, to act for Owner, and is acting under his capacity as _____ **Director** _____ (title) for the Owner.

   C. Owner appoints Broker as Owner's sole and exclusive leasing and managing agent of the real property described in Paragraph 2 and in any addendum to this agreement.

2. **PROPERTY:** "Property" means:

   Address *(include unit nos.)* **6001 Reims , Houston, TX 77036**

   legally described as: **Units 204,209,301,302,304,307,508,1101,909 Of Silverfield Condominiums**
   in _____ **Harris** _____ County, Texas, together with the following non-real-property items: **Refridgerators, Washer & Dryer**

   "Property" also includes any other Property described in any attached Multiple Property Addendum.

3. **TERM:**

   A. <u>Primary Term</u>: The primary term of this agreement begins and ends as follows:

   Commencement Date: ____ **June 30, 2013** ____ Expiration Date: ____ **June 30, 2016**

   B. <u>Automatic Extension</u>: Unless either party provides written notice of termination to the other party at least 30 days before the Expiration Date, this agreement will automatically extend on a monthly basis until either party terminates by providing at least 30 days written notice to the other party.

(TAR-2201) 1-1-14   Initialed for Identification by: Broker/Associate [DS] **BL** and Owner **RHL** ____, ____   Page 1 of 12

Texas Associates,25511 Budde Road, Ste 1801 The Woodlands,TX 77380                     Phone 936-672-7671         Fax 832-381-3768
Heather Carlile                          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

PENGAD 800-631-6989

DocuSign Envelope ID: 8A2FF8C1-8AA4-47BF-AFA9-81AA545A801A

**6001 Reims**

Leasing & Management Agreement concerning: **Houston, TX  77036**

     C. <u>Effective Services</u>: If Broker determines that Broker cannot continue to effectively provide leasing and management services to Owner for any reason at any time during this agreement Broker may terminate this agreement by providing at least 30 days written notice to Owner.

     D. <u>Fees Upon Termination</u>: At the time this agreement ends, Owner must pay Broker amounts specified in Paragraph 12.

## 4. AUTHORITY OF BROKER:

     A. <u>Leasing and Management Authority</u>: Owner grants to Broker the following authority which Broker may exercise when and to the extent Broker determines to be in Owner's interest:

     (1)  advertise the Property for lease at Owner's expense by means and methods that Broker determines are reasonably competitive, including but not limited to creating and placing advertisements with interior and exterior photographic and audio-visual images of the Property and related information in any media and the Internet;

     (2)  place "For Lease" signs or other signs on the Property in accordance with applicable laws, regulations, ordinances, restrictions, and owners' association rules;

     (3)  remove all other signs offering the Property for sale or lease;

     (4)  submit the Property as a listing with one or more Multiple Listing Services (MLS) at any time the Property is marketed for lease and to change or terminate such listings;

     (5)  authorize other brokers, their associates, inspectors, appraisers, and contractors to access the Property at reasonable times for purposes contemplated by this agreement and to lend keys and disclose security codes to such persons to enter the Property;

     (6)  duplicate keys and access devices, at Owner's expense, to facilitate convenient and efficient showings of the Property and to lease the Property;

     (7)  place a keybox on the Property;

     (8)  employ scheduling companies to schedule showings by other brokers at any time the Property is marketed for lease;

     (9)  verify information and references in rental applications from prospective tenants;

     (10) negotiate and execute leases on Owner's behalf for the Property at market rates and on competitively reasonable terms for initial terms of not less than _____**12**_____ months and not more than _____**36**_____ months and in accordance with any instructions in Paragraph 20;

     (11) negotiate and execute any amendments, extensions, or renewals to any leases for the Property on Owner's behalf;

     (12) terminate leases for the Property, negotiate lease terminations, and serve notices of termination;

     (13) collect and deposit for Owner rents, security deposits, and other funds related to the Property in a trust account and pay from that account: (a) any compensation and reimbursements due Broker under this agreement; and (b) other persons as this agreement may authorize;

     (14) account for security deposits that Broker holds in trust to any tenants in the Property in accordance with applicable law, this agreement, and any lease of the Property and make deductions from the deposits in accordance with the lease and applicable law;

     (15) collect administrative charges including but not limited to, application fees, returned check fees, and late charges from tenants in the Property or from prospective tenants;

     (16) institute and prosecute, at Owner's expense, actions to: (a) evict tenants in the Property; (b) recover possession of the Property; or (c) recover lost rent and other damages;

     (17) settle, compromise, or withdraw any action described in Paragraph 4A(16);

     (18) negotiate and make reasonable concessions to tenants or former tenants in the Property;

     (19) report payment histories of tenants in the Property to consumer reporting agencies;

     (20) obtain information from any holder of a note secured by a lien on the Property and any insurance company insuring all or part of the Property;

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                                   Property

DocuSign Envelope ID: 8A2FF8C1-8AA4-47BF-AFA9-81AA545A801A

**6001 Reims**

Leasing & Management Agreement concerning: **Houston, TX   77036**

(21) hire contractors to repair, maintain, redecorate, or alter the Property provided that Broker does not expend more than $ **150.00** _____ for any single repair, maintenance item, redecoration, or alteration without Owner's consent;

(22) hire contractors to make emergency repairs to the Property without regard to the expense limitation in Paragraph 4A(21) that Broker determines are necessary to protect the Property or the health or safety of an ordinary tenant;

(23) contract, at Owner's expense, in either Broker's or Owner's name, for utilities and maintenance to the Property during times that the Property is vacant, including but not limited to, electricity, gas, water, alarm monitoring, cleaning, pool and spa maintenance, yard maintenance, and other regularly recurring expenses that Broker determines are reasonable to maintain and care for the Property; and

(24) perform other necessary services related to the leasing and management of the Property.

B. Record Keeping: Broker will:

(1) maintain accurate records related to the Property and retain such records for not less than 4 years;

(2) file reports with the Internal Revenue Service related to funds received on behalf of Owner under this agreement (for example, Form 1099); and

(3) remit, each month, the following items to Owner: (a) funds collected by Broker for Owner under this agreement, less authorized deductions; and (b) a statement of receipts, disbursements, and charges. Owner may instruct Broker in writing to remit the items to another person or address.

C. Security Deposits:

(1) During this agreement, Broker will maintain security deposits received from tenants in a trust account and will account to the tenants for the security deposits in accordance with the leases for the Property.

(2) Except as stated in Paragraph 4(I), after this agreement ends, Broker will deliver to Owner or the Owner's designee the security deposit held by Broker under an effective lease of the Property, less deductions authorized by this agreement, and will send written notice to the tenant that states all of the following:

(a) that this agreement has ended;

(b) the exact dollar amount of the security deposit;

(c) the contact information for the Owner or the Owner's designee; and

(d) that Owner is responsible for accounting for and returning the tenant's security deposit.

(3) If Broker complies with this Paragraph 4C, Owner will indemnify Broker from any claim or loss from a tenant for the return of a security deposit. This Paragraph 4C survives termination of this agreement.

D. Deductions and Offset: Broker may disburse from any funds Broker holds in a trust account for Owner:

(1) any compensation due Broker under this agreement;

(2) any funds Broker is authorized to expend under this agreement; and

(3) any reimbursement Broker is entitled to receive under this agreement.

E. Insurance and Attorneys:

(1) Broker may not file a claim for a casualty loss with the carrier insuring the Property. Broker may communicate with the carrier to facilitate the processing of any claim Owner may file or other matters that Owner instructs Broker to communicate to the carrier.

(2) Broker may not directly or indirectly employ or pay a lawyer to represent Owner. Broker may communicate with Owner's attorney in accordance with Owner's instructions.

F. Information about Trust Accounts, MLS, and Keybox:

DocuSign Envelope ID: 8A2FF8C1-8AA4-47BF-AFA9-81AA545A801A

**6001 Reims**

Leasing & Management Agreement concerning: **Houston, TX   77036**

(1) <u>Trust Accounts</u>: A trust account must be separate from Broker's operating account and must be designated as a trust, property management, or escrow account or other similar name. Broker may maintain one trust account for all properties Broker leases and manages for others.

(2) <u>MLS</u>: MLS rules require Broker to accurately and timely submit all information the MLS requires for participation including leased data. Subscribers to the MLS may use the information for market evaluation or appraisal purposes. Subscribers are other brokers and other real estate professionals such as appraisers and may include the appraisal district. Any information filed with the MLS becomes the property of the MLS for all purposes. *Submission of information to MLS ensures that persons who use and benefit from the MLS also contribute information.*

(3) <u>Keybox</u>: A keybox is a locked container placed on the Property that holds a key to the Property. A keybox makes it more convenient for brokers, their associates, inspectors, appraisers, and contractors to show, inspect, or repair the Property. The keybox is opened by a special combination, key, or programmed device, so that authorized persons may enter the Property. Using a keybox will probably increase the number of showings, but involves risks (for example, unauthorized entry, theft, property damage, or personal injury). *Neither the Association of REALTORS® nor MLS requires the use of a keybox.*

G. <u>Performance Standard</u>: Broker will:
  (1) use reasonable care when exercising Broker's authority and performing under this agreement; and
  (2) exercise discretion when performing under this agreement in a manner that Broker believes to be in Owner's interest, provided that Broker will treat any tenant honestly and fairly.

H. <u>Inability to Contact Owner</u>: If Broker is unable to contact Owner for __14__ days, Broker is authorized to contact the person below for the sole purpose of attempting to reestablish contact with Owner.

Name: _____ **James Raymond Fisher** _____ Phone: ____ **(936)239-1976** ____
Address: _____ **#1 Coralvine Court The Woodlands, TX 77380** _____
E-mail: _____ **jay.fisher@blavesco.com** _____

I. <u>Foreclosure</u>: If Broker receives notice of the Owner's delinquency in the payment of: (1) any mortgage or other encumbrance secured by the Property; (2) property taxes; (3) property insurance; or (4) owners' association fees, Broker may give Owner 15 days to cure the delinquency during which period Owner authorizes Broker to freeze any funds held by Broker and no disbursements will be made to Owner related to this agreement or the Property. If after the 15 day period, the delinquency is not cured and the foreclosure process is initiated, Owner authorizes Broker to deduct from any other funds being held by Broker for Owner any remaining Broker Fees or funds due to Broker related to services performed under this agreement. Additionally, Owner authorizes Broker to return any security deposit being held by Broker to a tenant of the Property in addition to any prorated amount of rent being held by Broker and Broker may terminate this agreement. This paragraph does not preclude the Broker from seeking any other remedies under this agreement or at law that may be available to the Broker.

5. **LEGAL COMPLIANCE:** The parties will comply with all obligations, duties, and responsibilities under the Texas Property Code, fair housing laws, and any other statute, administrative rule, ordinance, or restrictive covenant applicable to the use, leasing, management, or care of the Property.

6. **RESERVES:** Upon execution of this agreement, Owner will deposit the following amount with Broker to be held in a trust account as a reserve for Owner: $ **250.00** _____ for each unit within the Property or Properties managed by Broker under this agreement. Broker may, at Broker's discretion, use the reserve to pay any expense related to the leasing and management of the Property(ies) (including but not limited to Broker's fees). If the balance of the reserve becomes less than the amount stated, at any time, Broker may: (a) deduct an amount that will bring the balance to the amount stated from any subsequent rent received on behalf of Owner and deposit the amount into the reserve; or (b) notify Owner that Owner must promptly deposit additional funds with Broker to bring the balance to the amount stated.

BL          RHL

(TAR-2201) 1-1-14   Initialed for Identification by: Broker/Associate ____ and Owner ____ , ____          Page 4 of 12

DocuSign Envelope ID: 8A2FF8C1-8AA4-47BF-AFA9-81AA545A801A

6001 Reims
Leasing & Management Agreement concerning: <u>Houston, TX  77036</u>

7. **ADVANCES:** Owner will, in advance, provide Broker all funds necessary for the leasing and management of the Property. Broker is not obligated to advance any money to Owner or to any other person.

8. **OWNER'S REPRESENTATIONS:**

   A. <u>General</u>:
      (1) Except as disclosed in Paragraph 20, Owner represents that:
         (a) Owner has fee simple title to and peaceable possession of the Property and all its improvements and fixtures, unless rented, and the legal capacity to lease the Property;
         (b) Owner is not bound by: (i) another agreement with another broker for the sale, exchange, lease, or management of the Property that is or will be in effect during this agreement; or (ii) an agreement or covenant that prohibits owner from leasing the property;
         (c) no person or entity has any right to purchase, lease, or acquire the Property by an option, right of refusal, or other agreement;
         (d) Owner is not delinquent in the payment of any property taxes, owners' association fees, property insurance, mortgage, or any encumbrance on or affecting the Property;
         (e) the Property is not subject to the jurisdiction of any court;
         (f) the optional user fees for the use of common areas (for example, pool or tennis courts) in the Property's subdivision are: <u>n/a</u>                                              ; and
         (g) all information related to the Property that Owner provides to Broker is true and correct to the best of Owner's knowledge.

      (2) Broker may disclose to a tenant or to a prospective tenant any information related to the representations made in this Paragraph 8.

   B. <u>Property Condition</u>: Owner and Broker are obligated under law to disclose to a tenant or to a prospective tenant any known condition that materially and adversely affects the health or safety of an ordinary tenant. Owner is obligated under the Property Code to repair any such condition for a tenant. Owner represents that:
      (1) any pool or spa and any required enclosures, fences, gates, and latches comply with all applicable laws and ordinances; and
      (2) Owner is not aware of a condition concerning the Property that materially affects the health or safety of an ordinary tenant, except as stated below, in this agreement, or in any addendum:
          <u>none</u>
          _____
          _____
          _____ .

   C. <u>Lead-Based Paint</u>: If the Property was built before 1978, Owner will complete and attach to this agreement an addendum regarding lead-based paint and lead-based paint hazards that will be made part of any lease of the Property. If the Property was built before 1978, federal law requires the Owner (before a tenant is obligated under a lease) to: (1) provide the tenant with the federally approved pamphlet on lead poisoning prevention; (2) disclose the presence of any known lead-based paint or hazards in the Property; and (3) deliver all records and reports to the tenant related to such paint or hazards.

9. **OWNER'S COOPERATION:** Owner agrees to:
   A. cooperate with Broker to facilitate the showing, marketing, and lease of the Property;
   B. not rent or lease the Property to anyone without Broker's prior written approval;
   C. not negotiate with any prospective tenant who might contact Owner directly, but refer all prospective tenants to Broker;
   D. not deal with or negotiate with any tenant in the Property concerning any matter related to the management or leasing of the Property but refer all such dealings to Broker;
   E. not enter into a listing agreement or property management agreement with another broker for the rental, leasing, or management of the Property to become effective during this agreement;
   F. provide Broker with copies of any existing leases or rental agreements related to the Property;
   G. provide Broker with keys and access devices to the Property;

(TAR-2201) 1-1-14   Initialed for Identification by: Broker/Associate [BL] and Owner [RHL] , _____      Page 5 of 12

DocuSign Envelope ID: 8A2FF8C1-8AA4-47BF-AFA9-81AA545A801A

**6001 Reims**

Leasing & Management Agreement concerning: **Houston, TX   77036**

H.  provide Broker with copies of all warranties related to the Property or any item in the Property;
I.  tender to Broker any security deposits paid by any existing tenants in the Property;
J.  complete any disclosures or notices required by law or a lease of the Property;
K.  amend applicable notices and disclosures if any material change occurs during this agreement; and
L.  notify Broker if Owner becomes delinquent in the payment of: (1) any mortgage or other encumbrance secured by the Property; (2) property taxes; (3) property insurance; or (4) owners' association fees.

## 10. INSURANCE:

A.  At all times during this agreement, Owner must maintain in effect:
    (1)  a public liability insurance policy that names Broker as a co-insured or additional insured and covers losses related to the Property in an amount of not less than $ **500,000.00** _____ on an occurrence basis; and
    (2)  an insurance policy for the Property in an amount equal to the reasonable replacement cost of the Property's improvements and that contains endorsements which contemplate the leasing of the Property with vacancies between lease terms.

B.  Not later than the 15th day after the Commencement Date, Owner must deliver to Broker copies of certificates of insurance evidencing the coverage required under Paragraph 10A. If the coverage changes at any time during this agreement, Owner must deliver to Broker a copy of the insurance certificate evidencing the change not later than 10 days after the change.

C.  If Owner fails to comply with Paragraphs 10A or 10B, Broker may:
    (1)  purchase insurance that will provide Broker the same coverage as the required insurance under Paragraph 10A(1) and Owner must promptly reimburse Broker for such expense; or
    (2)  exercise Broker's remedies under Paragraph 17.

**11. BROKER'S FEES:** All fees to Broker under this agreement are payable in _____ **Montgomery** _____ County, Texas. This Paragraph 11 survives termination or expiration of this agreement with regard to fees earned during this agreement which are not payable until after its termination. Broker may deduct any fees under this Paragraph 11 from any funds Broker holds in trust for Owner. If more than one property or unit is made part of and subject to this agreement, each of the provisions below will apply to each property or unit separately.

☒  A.  Management Fees: Each month Owner will pay Broker the greater of $ _____ (minimum management fee) or: (Check one box only.)
    ☒  (1)  **5.000** % of the gross monthly rents collected that month.
    ☐  (2)  _____ .
    A vacancy in the Property or failure by a tenant to pay rent does not excuse payment of the minimum management fee. Management fees under this Paragraph 11A are earned daily and are payable not later than the last day of each month.

☒  B.  Leasing Fees for New Tenancies: Each time the Property is leased to a new tenant, Owner will pay Broker a leasing fee equal to: (Check one box only.)
    ☐  (1)  **100.000** % of one full month's rent to be paid under the lease.
    ☐  (2)  _____ % of the gross rents to be paid under the lease.
    ☒  (3)  **50 % paid to Blavesco if no outside agent** _____ .
    The leasing fees under this Paragraph 11B are earned and payable at the time the lease is executed.

☒  C.  Renewal or Extension Fees: Each time a tenant in the Property renews or extends a lease, Owner will pay Broker a renewal or extension fee equal to: (Check one box only.)
    ☐  (1)  _____ % of one full month's rent to be paid under the renewal or extension.
    ☐  (2)  _____ % of the gross rents to be paid under the renewal or extension.
    ☒  (3)  **150** _____ .
    The renewal or extension fees under this Paragraph 11C are earned and payable at the time the renewal or extension is effective. For the purposes of this paragraph, a new lease for the same

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                Property

DocuSign Envelope ID: 8A2FF8C1-8AA4-47BF-AFA9-81AA545A801A

**6001 Reims**

Leasing & Management Agreement concerning: <u>Houston, TX   77036</u> _____

Property with the same tenant then occupying the Property is an extension or renewal. This Paragraph 11C does not apply to month-to-month renewals or month-to-month extensions.

☐ D. <u>Service Fees</u>: Each time Broker arranges for the Property to be repaired, maintained, redecorated, or altered as permitted by this agreement, Owner will pay Broker a service fee equal to: *(Check one box only.)*
  ☐ (1) _____ % of the total cost of each repair, maintenance, alteration, or redecoration.
  ☐ (2) _____ .
  The service fees under this Paragraph 11D are earned at the time the repair, maintenance, redecoration, or alteration is made and are payable upon Owner's receipt of Broker's invoice.

☒ E. <u>Interest on Trust Accounts</u>: Any trust account Broker maintains under this agreement may be an interest-bearing or income producing account. Broker may retain any interest or income from such account as compensation under this agreement. Broker will remove any interest or income payable under this Paragraph 11E from the trust account not later than the 30th day after the interest or income is paid.

☒ F. <u>Administrative Fees</u>: If Broker collects administrative charges from tenants or prospective tenants, including but not limited to, application fees, returned check fees, or late charges (as authorized under Paragraph 4A), Broker will retain such fees as compensation under this agreement. The administrative fees under this Paragraph 11F are earned and payable at the time Broker collects such fees.

☒ G. <u>Fees Related to Insurance and Legal Matters</u>: If Owner requests or instructs Broker to coordinate or communicate with any insurance carrier regarding any casualty to or on the Property or if Owner requests or instructs Broker to appear in any legal proceeding or deposition related to the Property (including, but not limited to, evictions, tenant disputes, security deposit disputes, and suits for damages), Owner will pay Broker $<u>30.00</u>_____ per __<u>hour</u>__ for Broker's time expended in such matters and in preparation of such matters. Fees under this Paragraph 11G are earned at the time the services are rendered and payable upon Owner's receipt of Broker's invoice.

☒ H. <u>Fees in the Event of a Sale</u>:

  (1) <u>Fee if a Tenant Purchases Property</u>: If at any time during this agreement or within _____ days after it ends, Owner sells the Property to a tenant who occupied the Property during the term of this agreement, Owner will pay Broker a fee equal to: *(Check one box only.)*
    ☐ (a) _<u>3.000</u>_ % of the sales price.
    ☐ (b) _____ .
    Fees under this Paragraph 11H(1) are earned at the time Owner agrees to sell the Property and are payable at the time the sale closes. Broker will waive any fees due under Paragraph 12 at the time the sale closes.

  (2) <u>Fee if Buyer is Procured through Broker</u>: If during this agreement, Owner agrees to sell the Property to a person other than a tenant who occupied the Property and Broker procures the buyer, directly or through another broker, Owner will pay Broker a fee equal to: *(Check one box only.)*
    ☒ (a) _<u>3.000</u>_ % of the sales price.
    ☐ (b) _____ .
    Fees under this Paragraph 11H(2) are earned at the time Owner agrees to sell the Property and are payable at the time the sale closes. Broker will waive any fees due under Paragraph 12 at the time the sale closes.

  (3) <u>Sale Coordination Fees</u>: If at any time during this agreement Owner agrees to sell the Property and Broker is not paid a fee under Paragraph 11H(1) or (2), Owner will pay Broker <u>500</u>_____ _____ for Broker's time and services to coordinate showings, inspections, appraisals, repairs, and other related matters. Fees under this Paragraph 11H(3) are earned at the time such services are rendered and payable upon Owner's receipt of Broker's invoice.

  (4) <u>Definition</u>: "Sell" means to agree to sell, convey, transfer or exchange any interest in the Property whether by oral or written agreement or option.

(TAR-2201) 1-1-14   Initialed for Identification by: Broker/Associate |_<u>BL</u>_| and Owner |_<u>RHL</u>_|, _____   Page 7 of 12

DocuSign Envelope ID: 8A2FF8C1-8AA4-47BF-AFA9-81AA545A801A

**6001 Reims**
Leasing & Management Agreement concerning: **Houston, TX   77036**

(5) <u>Separate Listing Agreement Controls</u>: If Owner sells the Property and pays Broker the fee under a separate written listing agreement between Owner and Broker: (a) this Paragraph 11H will not apply; and (b) Broker will waive any fees due under Paragraph 12 at the time the sale closes.

☐ I. <u>Other</u>: _____
_____
_____
_____ .

**12. FEES UPON TERMINATION:** At the time this agreement ends, Owner must pay Broker:
A. all amounts due Broker under this agreement; and
B. if the Property is leased to a tenant on the date this agreement ends and Owner terminates this agreement, an amount equal to the lesser of:
(a) the management fees that would accrue over the remainder of the term of the lease; or
(b) $**none**_____ .
If more than one property or unit is made part of and subject to this agreement, this paragraph applies only to those properties or units then leased and applies to each property or unit separately.

**13. EXPENSE REIMBURSEMENT:** Upon Owner's receipt of Broker's invoice, Owner will reimburse Broker the following expenses that are related to the leasing or management of the Property: (a) copy charges; (b) charges for long distance telephone calls or facsimile transmissions; (c) regular, express, or certified mail charges; (d) notary fees; (e) photos and videos; (f) reasonable travel expenses, including but not limited to mileage reimbursement (at the standard mileage rate published by the IRS), parking expenses, and tolls; and (g) any other expenditures Broker is authorized to make under this agreement for Owner or that Owner otherwise authorizes Broker to make for Owner.

**14. FUNDS RECEIVED AFTER TERMINATION:** Except as provided in Paragraph 4(I), if Broker receives any funds on behalf of Owner after this agreement ends (for example, rent, damages, past due amounts, and others), Broker will deposit those funds in Broker's trust account and will: (a) pay ____**5.000**____ % of the funds received to Broker as compensation for services (for example, research, accounting, communicating, and processing) rendered at that time; and (b) pay the balance of the funds to Owner. This provision survives termination of this agreement.

**15. COOPERATION WITH OTHER BROKERS:** When the Property is marketed for lease, Broker will allow other brokers to show the Property to prospective tenants. If the other broker procures a tenant who leases the Property, Broker will offer to pay the other broker a fee out of the compensation Broker receives under Paragraph 11. As of the date this agreement is signed, Broker's policy is to offer other brokers the following amounts. Broker may change the amounts disclosed below without notice, provided that Broker will offer competitively reasonable amounts to other brokers.

A. <u>MLS Participants</u>: If the other broker is a participant in the MLS in which the listing is filed, Broker will offer to pay the other broker:
(1) if the other broker represents the tenant *(complete only one)*: __**50.000**__ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____; and
(2) if the other broker is a subagent *(complete only one)*:_____ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____ .

B. <u>Non-MLS Brokers</u>: If the other broker is not a participant in the MLS in which the listing is filed, Broker will offer to pay the other broker:
(1) if the other broker represents the tenant *(complete only one)*: __**50.000**__ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____; and
(2) if the other broker is a subagent *(complete only one)*:_____ % of one month's rent to be paid under a lease; _____ % of all rents to be paid under a lease; or $_____ .

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Property

—

DocuSign Envelope ID: 8A2FF8C1-8AA4-47BF-AFA9-81AA545A801A

**6001 Reims**

Leasing & Management Agreement concerning: **Houston, TX   77036**

## 16. LIABILITY AND INDEMNIFICATION:

A. Broker is not responsible or liable in any manner for personal injury to any person or for loss or damage to any person's real or personal property resulting from any act or omission not caused by Broker's negligence, including but not limited to injuries or damages caused by:
   (1) other brokers, their associates, inspectors, appraisers, and contractors who are authorized to access the Property;
   (2) acts of third parties (for example, vandalism, theft, or other criminal acts);
   (3) freezing or leaking water pipes;
   (4) failure to properly water the foundation of the Property;
   (5) a dangerous condition or environmental condition on the Property; or
   (6) the Property's non-compliance with any law or ordinance.

B. Broker is not responsible or liable in any manner for:
   (1) any late fees or other charges Owner incurs to any creditor caused by late or insufficient payments by any tenant in the Property; or
   (2) damages to Owner caused by a tenant's breach of a lease.

C. Owner agrees to protect, defend, indemnify, and hold Broker harmless from any damage, costs, attorney's fees, and expenses that:
   (1) are caused by Owner, negligently or otherwise;
   (2) arise from Owner's failure to disclose any material or relevant information about the Property;
   (3) are caused by Owner giving incorrect information to any person; or
   (4) are related to the management of the Property and are not caused by Broker, negligently or otherwise.

D. Owner is responsible and liable for all contracts and obligations related to the Property (for example, maintenance, service, repair and utility agreements) entered into before or during this agreement by Owner or by Broker under Broker's authority under this agreement. Owner agrees to hold Broker harmless from all claims related to any such contracts.

## 17. DEFAULT:
A party is in default if the party fails to cure a breach within 10 days after receipt of written demand from the other party. If either party is in default, the non-defaulting party may: (a) terminate this agreement by providing at least 10 days written notice; (b) recover all amounts due to the non-defaulting party under this agreement; (c) recover reasonable collection costs and attorney's fees; and (d) exercise any other remedy available at law. Broker is also entitled to recover any compensation Broker would have been entitled to receive if Owner did not breach this agreement.

## 18. MEDIATION:
The parties agree to negotiate in good faith in an effort to resolve any dispute related to this agreement that may arise between the parties. If the dispute cannot be resolved by negotiation, the dispute will be submitted to mediation. The parties to the dispute will choose a mutually acceptable mediator and will share the cost of mediation equally.

## 19. ATTORNEY'S FEES:
If Owner or Broker is a prevailing party in any legal proceeding brought as a result of a dispute under this agreement or any transaction related to or contemplated by this agreement, such party will be entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

## 20. SPECIAL PROVISIONS:

DocuSign Envelope ID: 8A2FF8C1-8AA4-47BF-AFA9-81AA545A801A

6001 Reims

Leasing & Management Agreement concerning: **Houston, TX  77036**

21. **ADDENDA:** Incorporated into this agreement are the following addenda, exhibits, and other information:
☑ A. Information About Brokerage Services
☐ B. Addendum Regarding Lead-Based Paint
☐ C. Multiple Property Addendum
☐ D. Owner's Notice Concerning Condition of Property under Property Management Agreement
☐ E. Property Manager's Inventory and Condition Report
☐ F. Addendum for Authorization to Act for Owner before Owners' Association
☐ G. Copy of Rules and Regulations of an Owners' Association
☐ H. Copy of the Owners' Association Bylaws and Deed Restrictions affecting the Property
☐ I. _____

*Note: Complete and deliver to Broker IRS W-9 Form or similar form. Broker maintains a privacy policy that is available upon request.*

22. **AGREEMENT OF PARTIES:**

A. <u>Entire Agreement</u>: This document contains the entire agreement of the parties and may not be changed except by written agreement.

B. <u>Assignments</u>: Neither party may assign this agreement without the written consent of the other party.

C. <u>Binding Effect</u>: Owner's obligation to pay Broker an earned fee is binding upon Owner and Owner's heirs, administrators, executors, successors, and permitted assignees.

D. <u>Joint and Several</u>: All Owners executing this agreement are jointly and severally liable for the performance of all its terms. Any act or notice to, refund to, or signature of, any one or more of the Owners regarding any term of this agreement, its extension, its renewal, or its termination is binding on all Owners executing this agreement.

E. <u>Governing Law</u>: Texas law governs the interpretation, validity, performance, and enforcement of this agreement.

F. <u>Severability</u>: If a court finds any clause in this agreement invalid or unenforceable, the remainder of this agreement will not be affected and all other provisions of this agreement will remain valid and enforceable.

G. <u>Context</u>: When the context requires, singular nouns and pronouns include the plural.

H. <u>Notices</u>: Notices between the parties must be in writing and are effective when sent to the receiving party's address, fax, or e-mail address specified in Paragraph 1.

I. <u>Copyright</u>: If an active REALTOR® member of the Texas Association of REALTORS® does not negotiate this agreement as a party or for one of the parties, with or without the assistance of an active member of the State Bar of Texas, this agreement is voidable at will by Owner.

23. **INFORMATION:**

A. **Broker's fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested, or maintained by the Association of REALTORS®, MLS, or any listing service.**

B. **In accordance with fair housing laws and the National Association of REALTORS® Code of Ethics, Broker's services must be provided and the Property must be shown and made available to all persons without regard to race, color, religion, national origin, sex, disability, familial status, sexual orientation, or gender identity. Local ordinances may provide for additional protected classes (for example, creed, status as a student, marital status, or age).**

C. **Owner may review the information Broker submits to an MLS or other listing service.**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 8A2FF8C1-8AA4-47BF-AFA9-81AA545A801A

**6001 Reims**
Leasing & Management Agreement concerning: **Houston, TX   77036**

**D.** Broker advises Owner to remove or secure jewelry, prescription drugs, and other valuables.

**E.** The Property Code requires the Property to be equipped with certain types of locks and security devices, including (with some exceptions): (1) window latches on each window; (2) a keyed doorknob lock or keyed deadbolt lock on each exterior door; (3) a sliding door pin lock on each exterior sliding glass door of the dwelling; (4) a sliding door handle latch or a sliding door security bar on each exterior sliding glass door of the dwelling; and (5) a keyless bolting device and a door viewer on each exterior door of the dwelling. The Property Code also requires smoke alarms in certain locations. The Property Code requires the security devices to be rekeyed and the smoke alarms to be tested each time a new tenant occupies the Property.

**F.** Broker cannot give legal advice. READ THIS AGREEMENT CAREFULLY. If you do not understand the effect of this agreement, consult an attorney BEFORE signing.

| | |
|---|---|
| **Blavesco. LTD** | **Reims Holdings, LLC** |
| Broker's Printed Name        **0443914** License No. | Owner's Printed Name |
| *(signature)*    *(signature)* Blavesco LTD 2013 **06/30/2014** | *(signature)* Reims Holdings LLC 2013 **06/30/2014** |
| Broker's Signature   79596BC817D9427   Date | Owner's Signature   Date |
| ☐ Broker's Associate's Signature, as an authorized agent of Broker | |
| **Heather L Carlile** | **Jeff Fisher** |
| Broker's Associate's Printed Name, if applicable | Owner's Printed Name |
| | |
| | Owner's Signature   Date |

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    Property

DocuSign Envelope ID: 8A2FF8C1-8AA4-47BF-AFA9-81AA545A801A

6001 Reims

Leasing & Management Agreement concerning: Houston, TX  77036 _____

## Index to Residential Leasing and Property Management Agreement

| No. | Paragraph Description | Pg. | No. | Paragraph Description | Pg. |
|---|---|---|---|---|---|
| 1. | Parties | 1 | 13. | Expense Reimbursement | 8 |
| 2. | Property | 1 | 14. | Funds Received after Termination | 8 |
| 3. | Term | 1 | 15. | Cooperation with Other Brokers | 8 |
|  | A. Primary Term |  |  |  |  |
|  | B. Automatic Extension |  | 16. | Liability and Indemnification | 9 |
|  | C. Effective Services | 2 |  |  |  |
|  | D. Fees Upon Termination |  | 17. | Default | 9 |
| 4. | Authority of Broker | 2 | 18. | Mediation | 9 |
|  | A. Leasing and Management Authority |  |  |  |  |
|  | B. Record Keeping | 3 | 19. | Attorney's Fees | 9 |
|  | C. Security Deposits |  |  |  |  |
|  | D. Deductions and Offset |  | 20. | Special Provisions | 10 |
|  | E. Insurance and Attorneys |  |  |  |  |
|  | F. Information about Trust Accounts, MLS, and Keybox |  | 21. | Addenda | 10 |
|  | G. Performance Standard | 4 | 22. | Agreement of the Parties | 10 |
|  | H. Inability to Contact Owner |  |  | A. Entire Agreement |  |
|  | I. Foreclosure |  |  | B. Assignments |  |
| 5. | Legal Compliance | 4 |  | C. Binding Effect |  |
|  |  |  |  | D. Joint and Several |  |
| 6. | Reserves | 4 |  | E. Governing Law |  |
|  |  |  |  | F. Severability |  |
| 7. | Advances | 4 |  | G. Context |  |
|  |  |  |  | H. Notices |  |
| 8. | Owner's Representations | 5 |  | I. Copyright | 11 |
|  | A. General |  |  |  |  |
|  | B. Property Condition |  | 23. | Information | 11 |
|  | C. Lead-Based Paint |  |  |  |  |
| 9. | Owner's Cooperation | 5 |  |  |  |
| 10. | Insurance | 6 |  |  |  |
| 11. | Broker's Fees | 6 |  |  |  |
|  | A. Management Fees |  |  |  |  |
|  | B. Leasing Fees for New Tenancies |  |  |  |  |
|  | C. Renewal or Extension Fees | 6 |  |  |  |
|  | D. Service Fees | 7 |  |  |  |
|  | E. Interest on Trust Accounts |  |  |  |  |
|  | F. Administrative Fees |  |  |  |  |
|  | G. Fees Related to Insurance and Legal Matters |  |  |  |  |
|  | H. Fees in the Event of a Sale |  |  |  |  |
|  | I. Other | 8 |  |  |  |
| 12. | Fees Upon Termination | 8 |  |  |  |

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Property



# Property Management Agreement

In consideration of the covenants contained herein:
_____STAUNTON STREET PARTNERS, LLC_____ as Owner and
BLAVESCO, LTD as Agent or Manager agree as follows:

    1.  The Owner hereby employs the Agent exclusively to manage the properties known as:
STAUNTON STREET PARTNERS LLC (68)

Upon the terms and conditions set forth hereinafter for the period commencing on the 10th day of July, 2013, and thereafter for periods of one year at a time.

A.  **COMPENSATION**  Owner agrees to pay Agent each month for property management the amount of 5% of lease amount per month.  All lease renewals will be charged at $150 per transaction.  New leases will be charged at one (1) month lease amount.
B.  **TERMINATION OF CONTRACT**  Either party may terminate this agreement by serving the other party a sixty (60) day written notice prior to the expiration date of this agreement or the expiration date of the most recent renewal if any.
C.  **TERMINATION WITH LEASE STILL IN EFFECT**  Where there is a lease or leases still in effect at the date of termination of this agreement, the Owner agrees to pay the agent the monthly management fee for the unexpired term of the lease or leases.
    2.  The Agent agrees:
        A.  To accept the management of the above described premises and agrees to furnish the services of his organization for the operation and managing of said premises.
        B.  To investigate carefully the references of prospective tenants including performing a credit check on each adult applicant before entering into any rental agreement with said applicant if applicable per leasing agent.
        C.  To deposit all collections in an bank account, separate from the Agent's other personal or business bank accounts.
        D.  To render monthly statements of receipts, charges and expenses and to remit balance of rents to the Owner, less Agent's commission.
        E.  To earnestly obtain for the benefit of the Owner all discounts allowed on purchases of supplies, materials or repairs.
        F.  To care for, place and supervise, subject to Owner's instruction, all insurance coverage.
    3.  The Owner hereby agrees to give the Agent the following authority and powers:
        A.  To collect rents due or to become due and give receipts.
        B.  To hold the Agent harmless from all damage suits in connection with the management of the property and from liability for injuries suffered by any employees or other persons whomsoever, and to carry, at his or her own expense, public liability insurance adequate to protect the interests of all parties hereto.

Residential Homes  |  Commercial Properties  |  Investment Real Estate  |  Property Management



1

DocuSign Envelope ID: D532CE28-1B19-4115-B3F5-2B25EA14B8E1



C.  Owner hereby grants Agent the authority to do whatever acts the Agent deems proper and necessary to the effective management of the property.  Owner gives the Agent the right to institute repairs and maintenance to the property and pay for the same out of owner's funds.  This agreement shall be binding upon the successors, and assigns of the Owner.

Additional Owner Instructions:

_____
_____
_____
_____

THE UNDERSIGNED PARTIES ACKNOWLEDGE RECEIPT OF A COPY HEREOF.

**DATE:** __July___ / __10__ / __2013___

**OWNER (s)** _Jeffry M Fisher_____
74051C2BE7B0482...
Jeff Fisher
Title: _____Member_____

ADDRESS ___#1 Coralvine Court, Spring, TEXAS__
PHONE_____816 646 9819_____
EMAIL____jeff@jefffisher.com_____

**DATE:** __July____/_____10____/_____2013__

**AGENT (s)** __Heather Carlile__
21ED99247091499...
Heather Carlile
Blavesco, LTD
25511 Budde Road Ste 1801
The Woodlands, TX 77380
Direct: 832.850.4849
Fax: 832.381.3768
Email: heather@blavesco.com

Residential Homes   |   Commercial Properties   |   Investment Real Estate   |   Property Management